## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                      No. CR 10-2653 JB

DERRICK IVAN JIM,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for an Order to Vacate the Sentencing and To Allow Defendant to Withdraw His Plea Agreement and to Proceed to Trial, filed September 19, 2011 (Doc. 48)("Motion to Withdraw Plea"). The Court held a hearing on October 3, 2011. The primary issue is whether there is a fair and just reason to permit Defendant Derrick Ivan Jim to withdraw his guilty plea. Because the Court concludes that the seven-factor balancing analysis that the United States Court of Appeals for the Tenth Circuit has outlined counsels in favor of allowing Jim to withdraw his guilty plea, the Court will grant the motion.

## PROCEDURAL BACKGROUND

On August 30, 2011, Jim was arrested for the sexual assault of Krystal Tsosie. See United States Response to Motion for an Order to Vacate the Sentencing and Allow Defendant to Withdraw His Plea Agreement and Proceed to Trial, filed October 1, 2011 (Doc. 50)("Response"). A federal grand jury indicted Jim on one count of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a)(1), and 2246(2)(A). See Redacted Indictment, filed September 16, 2010 (Doc. 13)("Indictment"). On February 8, 2011, Jim and Plaintiff United States of America entered into

a plea agreement and Jim pled guilty to the Indictment in a plea colloquy before the Honorable Richard Puglisi, Chief United States Magistrate Judge.  See Plea Agreement at 1, filed February 8, 2011 (Doc 25); Response at 3.  The Plea Agreement included a provision which states:

> Except under certain circumstances where the Court, acting on its own, fails to accept this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

Plea Agreement ¶ 10(c), at 5.November 22, 2011

At the plea hearing, Jim appeared with his counsel, Assistant Federal Public Defender James Loonam.  See Transcript of the Hearing at 3:8-11 (February 8, 2011)(Loonam)("Feb. 8, 2011 Tr."). Chief Judge Puglisi questioned Jim whether he had read the Plea Agreement, understood it, had any questions about it, and had signed it; Jim responded that he had read and understood the Plea Agreement, had no questions about it, and had signed it.  See Feb. 8, 2011 Tr. at 4:8-21 (Chief Judge Puglisi, Jim).  Jim also asserted that he was satisfied with Mr. Loonam as his attorney.  See Feb. 8, 2011 Tr. at 4:22-24 (Chief Judge Puglisi, Jim).  Chief Judge Puglisi further inquired: (i) whether anyone had attempted to force Jim to plead guilty, to which Jim replied no; and (ii) whether he was pleading guilty of his own free will because he was in fact guilty, to which Jim replied yes.  See Feb. 8, 2011 Tr. at 5:10-15 (Chief Judge Puglisi, Jim).  Jim indicated that he understood that, under the Plea Agreement, he would get a sentence between 151 and 181 months.  See Feb. 8, 2011 Tr. at 6:2-3 (Chief Judge Puglisi, Jim).  He also informed Chief Judge Puglisi that he understood that he would be waiving his rights to appeal.  See Feb. 8, 2011 Tr. at 6:9-17 (Chief Judge Puglisi, Jim).

-2-

When Chief Judge Puglisi asked whether Jim affirmed the facts set forth in the Plea Agreement, Jim informed Chief Judge Puglisi that he thought there was an error in the factual recitation which stated "I went to the house," because he was taken to the house.  See Feb. 8, 2011 Tr. at 6:24-7:12 (Chief Judge Puglisi, Loonam).  With respect to pertinent jurisdictional facts, Jim agreed that he was physically present in Indian Country on August 13, 2010, and that he is a Navajo Indian.  See Feb. 8, 2011 Tr. at 8:5-12 (Chief Judge Puglisi, Jim).  After conferring with counsel, Jim also stated that he did knowingly engage or attempt to engage in a sexual act with Jane Doe.  See Feb. 8, 2011 Tr. at 8:13-16 (Chief Judge Puglisi, Jim).  Jim also admitted that he engaged in that sexual act through use of force.  See Feb. 8, 2011 Tr. at 8:17-19 (Chief Judge Puglisi, Jim).  When asked, however, whether he knew what he was doing on the evening in question, Jim again conferred with counsel.  See Feb. 8, 2011 Tr. at 9:8-12 (Chief Judge Puglisi).  Jim's counsel, Mr. Loonam, then informed Chief Judge Puglisi:

> Your Honor, I think Mr. Jim's hesitation is he had some alcohol blackout for some period of time and we've gone over this extensively -- there were several individuals there besides the individual named in the plea and we've gone over all of the evidence, but he doesn't -- he cannot say that he has specific memory in great detail of what occurred between him and the woman referred to as Jane Doe, but he is -- I -- he is aware that he was there with her when her description of the events took place and there is no doubt it was him, but he has some issue with saying that because of the rather severe alcohol consumption.

Feb. 8, 2011 Tr. at 9:13-23 (Loonam).  Chief Judge Puglisi inquired whether this conduct affects Jim's ability to admit that he knowingly engaged in or attempted to engage in a sexual act with Jane Doe.  Feb. 8, 2011 Tr. at 9:24-10:1 (Chief Judge Puglisi).  Mr. Loonam responded:

> I think he believes that knowingly applies to his behavior and could be proved beyond a reasonable doubt to a jury.  And that is how I have suggested to him he wants to think about the inciden[t].  It's -- there's many -- there are so many statements, they're in great detail . . . that I believe that he does feel that knowingly would apply to the facts as they would go to a jury and could be proven beyond a reasonable doubt.

-3-

Feb. 8, 2011 Tr. at 10:2-12 (Loonam).  Jim stated that he agreed with Mr. Loonam's comments.

See Feb. 8, 2011 Tr. at 10:13-15 (Chief Judge Puglisi, Jim).  After conferring further with counsel,

Jim admitted that alcohol had no effect whether he knowingly acted on August 13, 2010.  See Feb.

8, 2011 Tr. at 10:16-24 (Chief Judge Puglisi, Jim).

      Responding to Jim's earlier objection to the statement that he "went to the house," the United

States agreed to amend the Plea Agreement to reflect that Jim was taken to the house.  Feb. 8, 2011

Tr. at 11:6-11 (Rozzoni).  After the change was made and the parties initialed it, Chief Judge Puglisi

asked how Jim pled to the single count of the Indictment.  See Feb. 8, 2011 Tr. at 12:20-13:5 (Chief

Judge Puglisi, Loonam, Jim).  Jim responded that he pled guilty.  See Feb. 8, 2011 Tr. at 13:6 (Jim).

Chief Judge Puglisi accepted the plea and remanded Jim to the United States Marshal's custody.

See Feb. 8, 2011 Tr. at 13:7- 14:24 (Chief Judge Puglisi, Jim, Rozzoni, Loonam).

      On May 2, 2011, the Court received a letter from Jim stating: "I would like to fire my public

defender.  I feel he does not have my best interest due to my case."  Letter from Derrick Jim to the

Court at 1 (not dated), filed May 2, 2011 (Doc. 30)("May 2 Letter").  On May 9, 2011, Jim filed his

Unopposed Motion to Dismiss Defendant's Counsel, and cited New Mexico provisions relating to

an attorney's competence, communication, and diligence in support of the motion.  See Doc. 32

("Motion to Dismiss Counsel").  On May 10, 2011, the Court received a letter from Jim, further

explaining the reasons behind his Motion to Dismiss Counsel.  See Letter from Derrick Jim to the

Court at 1 (dated May 2, 2011), filed May 10, 2011 (Doc. 33)("May 10 Letter").  In his letter, Jim

states that Mr. Loonam "[has] not helped me as much as he could have done" and asserts that "he

rushed me into signing the plea, which I really did not understand to [sic] well."  May 10 Letter at 1.

Jim informed the Court that he wanted to "pull" his plea the day after he signed it, but that, Mr.

Loonam "told me he could not, he told me to wait until after the presence [sic] report."  May 10

Letter at 1.  Jim also explains that the delay in his request resulted from a transfer from the Regional Correctional Center ("RCC") to the Torrence County Detention Facility.  May 10 Letter at 1.  On June 1, 2011, new counsel, Lawrence E. Chacon, entered an appearance.  See Notice of Attorney Appearance, filed June 1, 2011 (Doc. 35).  On June 2, 2011, Mr. Loonam filed the Federal Public Defender's Motion to Withdraw as Counsel and requested that the allow him to withdraw as appointed counsel.  See Doc. 38.

The Court held a hearing on the Motion to Dismiss Defendant's Counsel and Federal Public Defender's Motion to Withdraw as Counsel on May 24, 2011.  At the May 24, 2011 hearing, the United States informed the Court that it did not take a position on those motions except to say that Mr. Loonam negotiated a very good plea agreement for his client.  See Transcript of Hearing at 3:20-24 (May 24, 2011)(Rozzoni)("May 24, 2011 Tr.").[1]  The Court then requested that the attorneys for the United States and other persons present leave the courtroom so that the Court could discuss the motions with Mr. Loonam and Jim.  See May 24, 2011 Tr. at 4:13-15 (Court).  Mr. Loonam informed the Court that, absent a change in Jim's behavior, it would be best if the Court appointed new counsel for Jim.  See May 24, 2011 Tr. at 5:1-3 (Loonam).  Mr. Loonam asserted that communication between Jim and him broke down in February.  See May 24, 2011 Tr. at 5:3-5 (Loonam).  Mr. Loonam stated that, when the United States Marshals took Jim into custody after his guilty plea, Jim's behavior changed dramatically.  See May 24, 2011 Tr. at 5:14-20 (Loonam).  Mr. Loonam also informed the Court that two private attorneys had inquired about Jim's case and that Jim had indicated he was going to obtain private counsel.  See May 24, 2011 Tr. at 5:20-6:2 (Loonam).  Mr. Loonam further indicated that, when he attempted to meet with Jim, he would be

_____

[1]The Court's citations to the transcripts of the hearings refers to the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers.

unresponsive and Jim would say that he needed to discuss their conversations with his other attorney.  See May 24, 2011 Tr. at 6:11-25 (Loonam).

At the May 24, 2011 hearing, Jim informed the Court that he did not understand the plea agreement when he signed it.  See May 24, 2011 Tr. at 8:7-9 (Jim).  Jim stated that the way he understood the operation of the Plea Agreement was that it would reduce the guidelines range but that he would still appear before a jury.  See May 24, 2011 Tr. at 8:12-16 (Jim).  The Court asked whether Jim thought that he could sign the Plea Agreement, lower the guidelines, and still have a trial.  See May 24, 2011 Tr. at 8:20-21 (Court).  Jim agreed that was his understanding.  See May 24, 2011 Tr. at 8:22-23 (Jim).  In response to further questioning from the Court, Jim stated that, even after speaking with Chief Judge Puglisi, he still thought he would go to trial.  See May 24, 2011 Tr. at 9:10-13 (Court, Jim).  Jim stated that he now knows that his understanding was mistaken.  See May 24, 2011 Tr. at 9:24-10:1 (Court, Jim).  Jim also asserted that he is not guilty.  See May 24, 2011 Tr. at 10:3 (Jim).  Responding to the Court's question about Mr. Loonam, Jim stated that he would try to explain his understanding of the Plea Agreement to Mr. Loonam and that Mr. Loonam would not listen.  See May 24, 2011 Tr. at 10:4-16 (Court, Jim).

The Court stated that it has a great respect for Mr. Loonam, that he does a good job for his clients, and that it was reluctant to change counsel.  See May 24, 2011 Tr. at 11:11-13 (Court).  The Court recognized, however, that if Jim was not going to communicate with Mr. Loonam, then Mr. Loonam could no longer do his job.  See May 24, 2011 Tr. at 11:15-25 (Court).  The Court therefore dismissed Mr. Loonam from the case with some reluctance.  See May 24, 2011 Tr. at 12:2-6 (Court).  On June 7, 2011, the Court filed a Memorandum Opinion and Order ("MOO") granting the motions and recognizing Jim's new counsel, Lawrence Chacon.  See Doc. 39 at 4.

On June 14, 2011 Jim field an Unopposed Motion for an Order to Continue Sentencing.  See

Doc. 40 ("Motion to Continue").  In his Motion to Continue, Jim indicated that he wanted to withdraw his Plea Agreement, but that his new counsel wanted time to investigate whether this would be in his best interest.  See Motion to Continue at 1.  Jim requested that the Court grant a ninety-day continuance to resolve the issues whether he should move to withdraw his plea.  See Motion to Continue at 1.  On June 22, 2011, the Court ordered that the sentencing be rescheduled for October 3, 2011.  See Order Continuing Sentencing, filed June 22, 2011 (Doc. 44).

Jim filed his Motion to Withdraw Plea on September 19, 2011.  In his motion, Jim stated that, on September 10, 2011, he received a previously unavailable DNA report from the United States Attorney's Office ("USAO").  Motion to Withdraw Plea at 2.  Jim asserted that he had new evidence that would impeach the victim.  See Motion to Withdraw Plea at 2.  Jim also reiterated that he had previously written to the Court to state his concerns about the Plea Agreement and his former attorney.  See Motion to Withdraw Plea at 2.  The United States opposes the Motion to Withdraw Plea.  See Response at 5.  The United States noted that Jim benefitted substantially from the Plea Agreement, which brought the potential sentencing range he would have faced at trial, 324 to 405 months imprisonment, down to a range of 151 to 188 months imprisonment.  See Response at 3. The United States pointed out that Jim did not explicitly assert his innocence in his Motion to Withdraw Plea.  See Response at 5.  The United States also emphasized that the DNA report, referenced in the Motion to Withdraw Plea, confirmed that Jim had sexual intercourse with the victim in this case.  See Response at 6.  The United States argued that its case against Jim has become significantly stronger and that a change of heart is not enough to justify a plea withdrawal. See Response at 6.  The United States further asserted that it would be prejudiced if the Court were to allow Jim to withdraw his plea, because the emotional and physical trauma suffered by the victim could mean that she will not want to testify.  See Response at 6.  The United States also stated that

-7-

Jim delayed filing his motion for three months.  <u>See</u> Response at 7.  Addressing whether assistance of counsel was available to Jim, the United States contended that Jim "has been represented by competent counsel at all stages of the proceedings in this case."  Response at 8.  The United States asserted that the plea was knowing and voluntary, as the amendment to the Plea Agreement's recitation of the facts made by Jim evidences.  <u>See</u> Response at 8.  Discussing the other factors the Court must consider in a motion to withdraw a plea, the United States argued that permitting withdrawal would inconvenience the Court and waste judicial resources.  <u>See</u> Response at 7, 9.

On October 3, 2011, the Court held a hearing on the Motion to Withdraw Plea.  Speaking in support of his motion, Jim asserted that he wants to withdraw his plea because he is innocent.  <u>See</u> Transcript of Hearing at 2:23-24 (October 3, 2011)(Chacon)("Oct. 3, 2011 Tr.").  Jim also conceded that the DNA links him to the victim in this case.  <u>See</u> Oct. 3, 2011 Tr. at 4:5-7 (Chacon).  Jim informed the Court that other evidence in support of his motion comes from his girlfriend, Lori Peterson.  <u>See</u> Oct. 3, 2011 Tr. at 4:7 (Chacon).  Jim asserted that he visited Peterson the day after the evening in question and that she would testify that, when they were intimate, she did not view any markings on his body.  <u>See</u> Oct. 3, 2011 Tr. at 4:8-10 (Chacon).  In response to the Court's question, Jim explained that this observation is significant, because the victim alleges that she punched him and maybe scratched him.  <u>See</u> Oct. 3, 2011 Tr. at 4:12-15 (Court, Chacon).  Jim also informed the Court that he would present evidence that the shirt he was wearing on the evening in question is not torn, while the victim would testify that she thought she had torn his shirt that night.  <u>See</u> Oct. 3, 2011 Tr. at 4:18-5:3 (Chacon).  Finally, Jim stated that he would also present the testimony of a juvenile, who was passed out next to the house on the evening in question and who would testify that he did not hear out-of-the-ordinary noises.  <u>See</u> Oct. 3, 2011 Tr. at 5:15-12 (Court, Chacon).  Jim argued that if, his encounter with victim was a forcible rape, there would have been

screaming.  <u>See</u> Oct. 3, 2011 Tr. at 6:15-17 (Chacon).

 The Court informed Jim that, when it has allowed defendants to withdraw their guilty pleas, the trials generally do not go well for those defendants.  <u>See</u> Oct. 3, 2011 Tr. at 7:14-18 (Court). The Court also noted that the United States has begun including provisions, in the plea agreements into which it enters that state that, except when the Court on its own does not accept the plea agreement, the facts to which the defendant admits are admissible in subsequent proceedings, under rule 801(d)(2)(A) of the Federal Rules of Evidence.  <u>See</u> Oct. 3, 2011 Tr. at 7:18-8:5 (Court).  The Court commented that it appears that Jim's case has become significantly more difficult to defend. <u>See</u> Oct. 3, 2011 Tr. at 8:6-11 (Court).  Jim stated that he had discussed that problem with his attorney and that he is aware of the possible consequences of his actions.  <u>See</u> Oct. 3, 2011 Tr. at 9:1-19 (Chacon).  The Court then asked what Jim believes is the fair and just reason for the withdrawal of his plea.  <u>See</u> Oct. 3, 2011 Tr. at 11:14 (Court).  Jim replied that, if this case goes to trial, it would come down to a question whether the sex was consensual, and Tsosie's and Jim's testimony.  <u>See</u> Oct. 3, 2011 Tr. at 12:5-8 (Chacon).  Jim stated that he expects she will testify that she punched or scratched him, and that he now has evidence, in the form of Peterson's testimony, which would contradict her testimony.  <u>See</u> Oct. 3, 2011 Tr. at 12:14-17 (Chacon).  Jim also pointed out that it is only the approximately twenty minutes when he was in the house which will be in dispute.  <u>See</u> Oct. 3, 2011 Tr. at 12:18-13:3 (Chacon).  Jim's attorney, Lawrence Chacon, stated that he had not seen a plea colloquy that was as hasty as the one before Chief Judge Puglisi.  <u>See</u> Oct. 3, 2011 Tr. at 13:22-23 (Chacon).  Jim also asserted that he wrote the Court shortly after his plea colloquy and contested its validity.  <u>See</u> Oct. 3, 2011 Tr. at 14:5-7 (Chacon).  Jim stated that, if this case went to trial, he would have to explain his signature on the Plea Agreement.  <u>See</u> Oct. 3, 2011 Tr. at 14:21-15 (Chacon).

The United States argued that Jim does not have a fair and just reason to withdraw his plea. See Oct. 3, 2011 Tr. at 17:19-21 (Rozzoni). The United States offered to provide the Court with a copy of the plea colloquy transcript. See Oct. 3, 2011 Tr. at 18:1-4 (Rozzoni). Addressing Jim's assertion of his innocence, the United States stated, that under the law of the United States Court of Appeals for the Tenth Circuit, Jim must have a credible defense of innocence and that he does not. See Oct. 3, 2011 Tr. at 18:8-12 (Rozzoni). Furthermore, the United States argued that the new evidence Jim presents covers only impeachment issues and that, even then, they are not strong evidence. See Oct. 3, 2011 at 19:16-18 (Rozzoni). The United States asserted that the victim stated only that she thought she had torn Jim's shirt and, while the victim would testify that she fought back, she would not know whether any visible marks on Jim resulted from her efforts. See Oct. 3, 2011 Tr. at 18:18-19:3 (Rozzoni). On the issue of the juvenile's testimony, the United States contended that, because he would testify that he was passed out, his testimony neither helps nor hurts Jim's defense. See Oct. 3, 2011 Tr. at 19:7-18 (Rozzoni). The United States further asserted that, when law enforcement interviewed Jim, he denied having sex with the victim. See Oct. 3, 2011 Tr. at 19:24-25 (Rozzoni). The Court asked whether the United States has had to use one of the new provisions placed in plea agreements in a subsequent trial. See Oct. 3, 2011 Tr. at 20:9-11 (Court). In response, the United States stated that it was unaware of any cases litigating that particular provision. See Oct. 3, 2011 Tr. at 20:12-18 (Rozzoni).

Addressing the factors that the Court should consider in assessing the Motion to Withdraw Plea, the United States asserted that: (i) withdrawal would be prejudicial to it, because the victim may now be reluctant to testify; (ii) Jim delayed filing his motion; (iii) withdrawal would inconvenience the Court and waste judicial resources; and (iv) close assistance of counsel was available. See Oct. 3, 2011 Tr. at 20:20-22:10 (Rozzoni). The United States also argued that the

plea was knowing and voluntary, as Jim's efforts to correct what he saw as a factual error in the Plea Agreement's language evidenced.  See Oct. 3, 2011 Tr. at 22:10-23 (Rozzoni).  In response to the United States' voluntariness argument, Jim asserted that the breakdown in communication between himself and his attorney undermines the voluntariness of that statement.  See Oct. 3, 2011 Tr. at 24:19-25:2 (Chacon).  Jim also argued that the trial will be short, because of the limited issues in dispute and DNA evidence, judicial resources will not be wasted nor the Court inconvenienced.  See Oct. 3, 2011 Tr. at 25:3-7 (Chacon).

## LAW REGARDING WITHDRAWAL OF PLEAS

Rule 11(d)(2)(B) governs a motion to withdraw a guilty plea before the imposition of a sentence.  Rule 11(d)(2)(B) provides that a defendant may withdraw a plea if "the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B). Defendants do not have an absolute right to withdraw a guilty plea.  See United States v. Siedlik, 231 F.3d 744, 748 (10th Cir. 2000).  District courts, however, have broad discretion in determining whether to grant  motions to withdraw  pleas.  See United States v. Wright, 392 F.App'x 623, 627 (10th Cir. 2010)(unpublished)("We review the district court's denial of a motion to withdraw a guilty plea for an abuse of discretion."); United States v. Garcia, 577 F.3d 1271, 1274 (10th Cir. 2009)("Although a motion to withdraw a plea prior to sentencing should be freely allowed, we will not reverse unless the defendant can show that the court acted unjustly or unfairly.").  The Tenth Circuit has repeatedly held that, when a defendant moves to withdraw a guilty plea before sentencing, the court must assess whether there is a fair and just reason for withdrawal based on the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and, if so, the reason for the delay; (4) whether withdrawal would substantially

inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

United States v. Yazzie, 407 F.3d 1139, 1142 (10th Cir. 2005). The defendant bears the burden of demonstrating a "fair and just reason" for withdrawal of the plea. United States v. Griffin, 191 F.App'x 699, 701 (10th Cir. 2006)(unpublished). In assessing a motion to withdraw a guilty plea, courts should give particular weight to knowing and voluntary statements that the defendant made under oath at the plea hearing. See United States v. Messino, 55 F.3d 1241, 1248 (7th Cir. 1995). In reaching their decisions, courts should also remember that "[t]he plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992). While the right to withdraw a guilty plea before sentencing, therefore, is not absolute, the court should allow relief when the defendant can show a fair and just reason for withdrawal.

## ANALYSIS

The seven factors that the Tenth Circuit has laid out for courts to consider in making the determination whether to allow a plea to be withdraw weigh in favor of allowing Jim to withdraw his plea. Accordingly, the Court finds that Jim has demonstrated a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(1)(B).

Jim specifically asserted his innocence at the October 3, 2011 hearing on his Motion to Withdraw Plea and also asserted his innocence when he came before the Court on his Motion to Dismiss Counsel on May 24, 2011. See May 24, 2011 Tr. at 10:3 (Jim)("Yes, but I'm not guilty, Your Honor."); Oct. 3, 2011 Tr. at 2:23-24 (Chacon). He also points to newly acquired evidence -- Peterson's testimony, the shirt that is not torn, and the juvenile's testimony -- that would allow him to impeach the United States' witnesses and help establish his innocence. See Oct. 3, 2011 Tr. at

-12-

4:8-10,4:18-5:3, 5:15-12 (Chacon).  The United States argues that Jim does not have a credible defense of innocence and that the evidence he now wishes to present is not strong impeachment evidence.  See Oct. 3, 2011 Tr. at 18:8-12, 19:16-18 (Rozzoni).  To satisfy the first factor, the Tenth Circuit has held that a defendant must present a "credible claim of legal innocence," United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007), and that a "defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty," United States v. Hickok, 907 F.2d 983, 985 n.2 (10th Cir. 1990).[2]  This factor means that a defendant must "make a factual argument that supports a legally cognizable defense." United States v. Hamilton, 510 F.3d at 1214 (emphasis in original).  Jim's evidence is not strong proof of his innocence, and it alone would not convince the Court to permit him to withdraw his plea.  Jim's evidence moves, however, his defense of innocence beyond his own subjective belief.  On the other hand, his claim of innocence conflicts with his previous sworn statements.  United States v. Wright, 392 F.App'x 623, 629-30 (10th Cir. 2010)("This assertion of factual innocence also conflicts with Mr. Wright's sworn statements in the petition to plead guilty, the plea agreement, and the plea colloquy.").  In determining whether Jim has a credible claim of innocence, the Court considers not only his new evidence and sworn statements, but how Jim is likely to testify at trial.  Assuming that Jim's testimony is consistent with his and Mr. Loonam's statements at the plea colloquy, then Jim may only be able to testify that he does not remember what happened during the night in question because he was blackout drunk.  See Feb. 8, 2011 Tr. at 9:8-10:15 (Chief Judge Puglisi, Mr.

---

[2]Establishing a credible claim of innocence is one of the seven factors that the Court considers under United States v. Yazzie and is not a prerequisite to permitting withdrawal of the plea.  See United States v. Cervantes, 115 F.App'x 1, 9 (10th Cir. 2004)(unpublished)(relying on a decision from the United States Court of Appeals for the District of Columbia Circuit, which states "whether the movant has asserted his legal innocence is an important factor to be weighed"(citing United States v. Barker, 514 F.2d 208, 221-22 (D.C. Cir. 1975)).

Loonam, Jim).  Although this factor does not strongly favor either side, because Jim's evidence does not make his claim credible, it cuts away from allowing him to withdraw his plea.

The United States contends, and the Court recognizes, that allowing Jim to withdraw his plea could result in prejudice to the United States if the victim is now reluctant to testify.  See Response at 6; Oct. 3, 2011 Tr. at 21:1-4 (Rozzoni).  The United States asserted at the hearing that the victim wanted to move on, and did not want to be at the plea hearing or the sentencing because she had moved on.  See Oct. 3, 2011 Tr. at 21:4-9 (Rozzoni).  The Court understands that the passage of time and the apparent closure of this chapter could make the victim reluctant to testify.  See United States v. Jones, 168 F.3d 1217, 1220 (10th Cir. 1999)(finding that allowing the defendant to withdraw his plea "could also prejudice the government," because the "government will face the presumably difficult task of locating confidential informants").  The United States conceded, in its Response, that its physical evidence against Jim has become stronger, in light of the new DNA evidence linking Jim to the victim.  See Response at 6.  Because the delay in trial and apparent closure of the case may make the victim reluctant to testify, the Court concludes that this factor cuts away from allowing Jim to withdraw his plea.

Jim delayed in filing his Motion to Withdraw Plea.  Jim filed his motion three months after receiving a new attorney and indicating to the Court that he desired to file a motion to withdraw his guilty plea.  See Motion to Continue at 1 ("Mr. Jim has stated that he wishes to withdraw his Plea Agreement.").  Jim argues that his new counsel needed time to review and investigate his case.  See Motion to Withdraw Plea at 1.  He also asserts that the United States Attorney's Office did not disclose the DNA report until September 10, 2011.  At the October 3, 2011 hearing, Jim argued that he needed the results of that DNA before he could logically proceed.  See Oct. 3, 2011 Tr. at 25:8 (Chacon).  The United States, in its Response, contends that Jim "cannot claim that the timing of

his filing was due to the disclosure of the DNA report on September 10, 2011 because the DNA report serves only to inculpate the Defendant further."  Response at 7.  The United States appears to concede that, when analyzing the delay, the Court should not start the clock until Mr. Chacon entered his appearance as new counsel on June 1, 2011.  See Response at 7.  In considering the three-month delay from when Mr. Chacon entered his appearance and first informed the Court of his intent to investigate the possibility of a motion to withdraw the guilty plea, the Court finds that Jim acted reasonably.  That Jim's new counsel required time to become acquainted with his case explains some delay.  Additionally, once the United States agreed to perform DNA analysis on the evidence, see Response at 4, it does not strike the Court as unreasonable for Mr. Chacon to wait to file the motion until he received the DNA results and could confirm that it was his client's DNA.  Once Jim received the DNA report, he filed the Motion to Withdraw Plea in a timely fashion -- within nine days.  The Court cannot say that Jim's delayed filing was "deliberate or for want of care," and finds that "the delayed filing factor does not point away from allowing [Jim] to withdraw his guilty plea."  United States v. Gould, No. 03-2274, 2006 WL 4061159, at *3 (D.N.M. Sept. 23, 2006)(Browning, J.)

Looking at the fourth and seventh factors, whether withdrawal would substantially inconvenience the Court or waste judicial resources, the Court notes that there will almost always be some inconvenience or resource allocation when a case that has settled goes to trial.  The Court does not believe, however, that given the gravity of Jim's circumstances, "the withdrawal of his plea, with all that it implies would substantially inconvenience the Court of waste judicial resources."  United States v. Gould, 2006 WL 4061159, at *3.  Thus, the substantial inconvenience and waste of judicial resources factors point toward allowing Jim to withdraw his plea.

The Court finds that Jim had "close assistance of counsel" before and during his plea

hearing.  Although Jim argues that the Court should consider the breakdown in communication between himself and Mr. Loonam, see Oct. 3, 2011 Tr. at 24:23-25:2 (Chacon), at the May 24, 2011 hearing, the Court noted Mr. Loonam's professionalism and that it was reluctant to allow Jim to change counsel, see May 24, 2011 Tr. at 11:11-13 (Court).  The Court may consider whether a defendant was represented by "skilled and respected counsel."  United States v. Siedlik, 231 F.3d at 750; United States v. Byrum, 567 F.3d 1255, 1265 (10th Cir. 2009).  At the May 24, 2011 hearing, Mr. Loonam represented that it was not until February 2011, after Jim pled guilty and was taken into custody, that communication between himself and Jim broke down.  See May 24, 2011 Tr. at 5:3-5 (Loonam).  Furthermore, at the plea colloquy on February 8, 2010, Jim represented that he was "in all respects" satisfied with Mr. Loonam's performance as his attorney.  Feb. 8, 2011 Tr. at 4:22-24 (Chief Judge Puglisi, Jim).  Thus, the close-assistance-of-counsel factor cuts away from allowing Jim to withdraw his plea of guilt.

The Court gives substantial weight to the sixth factor -- whether the plea was knowing and voluntary.  It is the Court's doubts whether the plea was knowing and voluntary that lead the Court to permit Jim to withdraw his guilty plea and proceed to trial. The Tenth Circuit has recognized that a defendant's guilty plea must be knowing, voluntary, and intelligent.  See United States v. Libretti, 38 F.3d 523, 529 (10th Cir. 1994).  To enter a plea that is knowing and voluntary, a defendant must have "a full understanding of what the plea connotes and of its consequence."  Boykin v. Alabama, 395 U.S. 238, 244 (1969).  A defendant must only understand the "direct consequences" of his plea.  United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002).  The Court was unable to find many cases discussing what deficiencies in taking a plea reach such a level that the knowingness and voluntariness of a guilty plea as to require that a Court permit withdrawal of a guilty plea.  Generally, the Tenth Circuit analyzes the knowing and voluntary nature of a waiver of rights in the

context of a waiver of appellate rights.  See United States v. Sandoval, 427 F.App'x 621, 623 (10th Cir. 2011)(unpublished); United States v. Vidal, 561 F.3d 1113, 1118 (10th Cir. 2009); United States v. Wilken, 498 F.3d 1160, 1167 (10th Cir. 2007).  When looking at whether a waiver of rights is knowing and voluntary, the Tenth Circuit examines two sources: (i) the plea agreement's language; and (ii) the plea colloquy required under rule 11 of the Federal Rules of Criminal Procedure.  See United States v. Sandoval, 427 F.App'x at 622.

In United States v. Vidal, the Tenth Circuit expressed concerns about a plea colloquy where the magistrate judge listed many of the rights that the defendant was entitled to under the Constitution and then stated that she was "giving up most of these rights."  561 F.3d at 1118 (emphasis original).  The Tenth Circuit stated that the phrase "most of these rights" created ambiguity as to which rights were waived, but did not decide whether that ambiguity was sufficient to preclude a knowing and voluntary waiver.  United States v. Vidal, 561 F.3d at 1118.  In United States v. Wilken, the Tenth Circuit examined whether a misstatement during a plea colloquy, which occurred before the plea agreement was signed, impacted the knowingness and voluntariness of the waiver of appellate rights.  See 498 F.3d at 1167.  The Tenth Circuit stated that the defendant could not be faulted for relying upon the court's explanation, rather than his own understanding, and found that the defendant's waiver of his appellate rights was not knowing and voluntary.  See United States v. Wilken, 498 F.3d at 1168-69.  In a habeas case brought under 28 U.S.C. § 2254, Hicks v. Franklin, 546 F.3d 1279 (10th Cir. 2008), the defendant argued that his plea was not knowing and voluntary, because he did not receive notice of the charges against him, and the Tenth Circuit agreed.  See 546 F.3d at 1280.  In that case, there was evidence that defense counsel had not provided adequate advice and that the trial judge misstated the law in relation to the facts of his case.  See Hicks v. Franklin, 546 F.3d at 1285-1287.  In United States v. Hurlich, the Tenth Circuit

recognized that a defendant must understand the direct consequences of his plea, but held that the possibility of a consecutive sentence was not a direct consequence, because it "does not affect the length or nature of the <u>federal</u> sentence."  293 F.3d at 1231 (emphasis original).

Other circuits have addressed similar situations.  In <u>United States v. McCoy</u>, 155 F.App'x 199 (6th Cir. 2005)(unpublished), the United States Court of Appeals for the Sixth Circuit commented: "[W]e doubt that [the defendant's] guilty plea can be considered knowing and voluntary in the absence of an explicit waiver of certain constitutional rights."  155 F.App'x at 204. The Sixth Circuit noted that a guilty plea entails a waiver of: (i) the privilege against self-incrimination; (ii) the right to a jury trial; and (iii) the right to confront one's accusers.  The Sixth Circuit found that the transcript of the plea colloquy contained no evidence that the defendant was advised of those rights or that he waived them.  <u>See</u> <u>United States v. McCoy</u>, 155 F.App'x at 204. In holding that the defendant had presented a "fair and just" reason to withdraw his guilty plea, the Sixth Circuit focused on the deficiencies in the plea colloquy and the defendant's dissatisfaction with his attorney.  In <u>United States v. Bushart</u>, 997 F.2d 1343 (11th Cir. 1993), the United States Court of Appeals for the Eleventh Circuit held that a defendant is unaware of the direct consequences of a plea where "the district court fails to specifically question the defendant concerning the waiver provision of the plea agreement during the Rule 11 colloquy and the record indicates that the defendant did not otherwise understand the full significance of the waiver."  997 F.2d at 1352.  The Eleventh Circuit found that, where a district court did not "specifically address" the issue of an appeal waiver in the rule 11 colloquy, the waiver was not knowing and voluntary. <u>United States v. Bushart</u>, 997 F.2d at 1352.

Although he does not point to specific issues with the plea colloquy, Jim argued that it was deficient, and Mr. Chacon commented that he had never seen a plea that was so "hasty."  Oct. 3 Tr.

at 13:16-17 (Chacon).  Jim also appeared to be arguing that his colloquy was not knowing, because he often had to confer with his attorney before speaking to Chief Judge Puglisi and his communication with Mr. Loonam was already strained at that point.  See Oct. 3 Tr. at 13:25-14:7 (Chacon).  Jim argued that whether there was clear communication between Mr. Loonam and Jim goes directly to the plea's voluntariness.  See Oct. 3 Tr. at 24:20-23 (Chacon).  Jim further argued that he comes from a different culture and suggested that he did not understand the Plea Agreement.  See Oct. 3 Tr. at 14:10-22 (Chacon).  Before the hearing on the Motion to Withdraw Plea, Jim had also made other representations that he did not understand the significance of his actions when he pled guilty.  In the letter he wrote to the Court, Jim stated that Mr. Loonam "rushed me into signing the plea, which I really did not understand to [sic] well."  May 10 Letter at 1.  Jim informed the Court that he wanted to "pull" his plea the day after he signed it, but that Mr. Loonam "told me he could not, he told me to wait until after the presence [sic] report."  May 10 Letter at 1.  At the May 24, 2011 Motion to Dismiss Counsel hearing, Jim stated that the way he understood the Plea Agreement, was that it would reduce the guidelines range, but he would still appear before a jury.  See May 24, 2011 Tr. at 8:12-16 (Jim).  The Court asked whether Jim thought that he could sign the Plea Agreement, lower the guidelines, and still have a trial.  See May 24, 2011 Tr. at 8:20-21 (Court).  Jim agreed that was his understanding.  See May 24, 2011 Tr. at 8:22-23 (Jim).  Jim stated that, even after speaking with Chief Judge Puglisi, he still thought he would go to trial and asserted that he is not guilty.  See May 24, 2011 Tr. at 9:10-13, 10:3 (Court, Jim).  The United States argued that the plea was knowing and voluntary, and that Jim's amendment of the recitation of the facts during the plea colloquy indicated that he knew to what he was pleading.  See Response at 8; Oct. 3, 2011 Tr. at 22:16-23 (Rozzoni).  The United States also argued that Jim did not object to anything else during the plea colloquy.  See Oct. 3, 2011 Tr. at 23:2-8 (Court, Rozzoni).

The Court has two concerns with the plea colloquy. First, the Court notes that Chief Judge Puglisi did not inquire whether Jim understood that he was waiving the right to a jury trial. Chief Judge Puglisi did not use the word trial once throughout the colloquy. Chief Judge Puglisi asked Jim four questions about his rights under the Plea Agreement: (i) whether Jim understood that, if the Court accepted the Plea Agreement, at sentencing he would receive a sentence between 151 and 188 months; (ii) whether Jim understood that the Plea Agreement included stipulations regarding a fine and the period of supervised release; (iii) whether Jim understood that, if the Court accepted the Plea Agreement and sentenced him within the range to which he agreed, he waived his right to appeal; and (iv) whether he understood that he was giving up his right to appeal. See Feb. 8, 2011 Tr. at 6:1-17 (Chief Judge Puglisi, Jim). The Plea Agreement lists, however, the right "to have a trial by jury" under the hearing "Rights of the Defendant." Plea Agreement ¶ 2, at 1. The Plea Agreement, however, contains a more general waiver of rights, stating: "The Defendant agrees to waive these rights and plead guilty to the indictment, charging a violation of 18 U.S.C. § 2241(a), that being aggravated sexual abuse." Plea Agreement ¶ 3, at 2. Second, when Chief Judge Puglisi asked Jim whether he knew what he was doing on the evening in question, Mr. Loonam stated:

> Your Honor, I think Mr. Jim's hesitation is he had some alcohol blackout for some period of time and we've gone over this extensively . . . he cannot say that he has specific memory in great detail of what occurred between him and the woman referred to as Jane Doe, but he is -- I -- he is aware that he was there with her when her description of the events took place and there is no doubt it was him, but he has some issue with saying that because of the rather severe alcohol consumption.

Feb. 8, 2011 Tr. at 9:8-23 (Chief Judge Puglisi, Loonam). When asked whether the alcohol consumption affected Jim's ability to admit that he knowingly engaged in a sexual act with Jane Doe, Mr. Loonam responded:

> I think he believes that knowingly applies to his behavior and could be proved beyond a reasonable doubt to a jury. And that is how I have suggested to him he

-20-

> wants to think about the incidence. . . . there are so many statements, they're in great
> detail . . . that I believe that he does feel that knowingly would apply to the facts as
> they would go to a jury and could be proven beyond a reasonable doubt.

Feb. 8, 2011 Tr. at 9:24-10:12 (Chief Judge Puglisi, Loonam).  Only after conferring further with

Mr. Loonam did Jim admit that alcohol had no effect on whether he knowingly acted on August 13,

2010.  See Feb. 8, 2011 Tr. at 10:16-24 (Chief Judge Puglisi, Jim).

Rule 11(b)(1) of the Federal Rules of Criminal Procedure requires that a court advise a

defendant and determine that he understands "the right to a jury trial."  Fed. R. Crim. P. 11(b)(1).

The Federal Judicial Center recommends that a judge ask:

1. Do you understand?

   (a) that you have a right to plead not guilty to any offense . . . ;

   (b) that you would then have the to a trial by jury;
   . . .

2. Do you further understand that by entering a plea of guilty (nolo contendere),
   if that plea is accepted by the court, there will be no trial and you will have
   waived or given up, your right to a trial as well as those other rights
   associated with a trial as I just described them?

Fed. Jud. Ctr., Benchbook for U.S. District Court Judges, § 2.01(M), at 78 (4th ed. 2007).  The Court

finds that the failure to ask Jim any questions whether he understood that he was waiving his right

to jury trial constitutes a fair and just reason to allow Jim to withdraw his guilty plea.  To enter a

plea that is knowing and voluntary, a defendant must understand what the plea connotes and its

"direct consequence."  United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002).  Waiver of

the right to a jury trial qualifies as a direct consequence of pleading guilty -- avoiding a jury trial is,

in fact, the main purpose of a plea agreement.  Thus, the Court must determine whether Jim's waiver

was knowing and voluntary.  Because the Tenth Circuit has not addressed analogous facts or set a

clear standard for when an action would not be knowing and voluntary, the Court looks to the Sixth

and Eleventh Circuits for persuasive authority.  The Eleventh Circuit has developed a test for determining whether a waiver was knowing and voluntary: (i) a court must fail to specifically question the defendant concerning his waiver during the rule 11 colloquy; and (ii) the record indicates that the defendant did not understand the full significance of the waiver.  See United States v. Bushart, 997 F.2d at 1352.  Under the test's first prong, the transcript of the plea colloquy revealed that the Chief Judge Puglisi asked no questions about Jim's waiver of his right to a jury trial.  Moving to the second prong of the Eleventh Circuit's test, the Court notes that Jim has consistently stated that he did not understand the Plea Agreement and went to great efforts to personally convey this sentiment to the Court, bypassing his court-appointed attorney.  See May 10 Letter at 1; May 24, 2011 Tr. at 8:12-23, 9:10-13, 10:3 (Court, Jim).   The Court also notes that the short time frame between the plea colloquy and Jim's expression of dissatisfaction with Mr. Loonam could also support Jim's argument that he did not understand the Plea Agreement.  The Court thus concludes that there is evidence in the record that indicates that Jim did not understand the significance of his waiver.  Furthermore, this case closely resembles United States v. McCoy, where the Sixth Circuit found that a defendant's guilty plea was not knowing and voluntary, because the transcript of the plea colloquy contained no evidence that the defendant was advised of his trial rights or that he waived them.  See 155 F.App'x at 204.  The Tenth Circuit's decision in United States v. Hurlich also suggests that, where a court fails to warn a defendant about a guilty plea's direct consequence, the plea would not be knowing and voluntary.  See 293 F.3d at 1230-31.  Although the Plea Agreement lists the right to a jury trial as a right that Jim waived, the Court thinks that the plea colloquy casts enough doubt on the knowing and voluntary nature of the plea that Jim has met his burden to establish a fair and just reason to withdraw the plea.

The Court is also concerned that Jim might not have knowingly and voluntarily pled guilty

to "knowingly" engaging in a sexual act through force.  Feb. 8, 2011 Tr. at 9:8-10:24 (Chief Judge Puglisi, Loonam, Jim).  These circumstances, however, mirror the facts of United States v. Vidal, where the Tenth Circuit found that a guilty plea was knowing and voluntary, because, despite refusing to acknowledge intent, the defendant conceded that the United States had enough evidence to establish that she committed the crime.  See 561 F.3d at 1119.  Thus, while Jim's assertions of an alcoholic blackout gives the Court pause, it does not undermine the knowing and voluntary nature of the admission.  The Tenth Circuit analogized such circumstances as similar to an Alford plea.[3] See United States v. Vidal, 561 F.3d at 1119.  The Court further notes that federal courts would be in a difficult position if every plea where the defendant was drunk at the time of the offense was subject to attack based on knowingness and voluntariness.

The factors considering delay, substantial inconvenience to the Court, waste of judicial resources, and the knowing and voluntary nature of the plea thus weigh in favor of allowing the plea withdrawal.  The Court's doubts about Jim's knowing and voluntary waiver of his right to trial weigh heavily in favor of withdrawal.  Although Jim introduced some new evidence for his defense, he does not have a credible defense of innocence, and this factor weighs against permitting withdrawal the plea.  Prejudice to the United States weighs against withdrawal, because the victim may be reluctant to testify at this late date.  The final factor, close assistance of counsel, also weighs against withdrawal.  The force of this factor is lessened, however, because, as early as February 2011, the attorney-client relationship between Jim and Mr. Loonam began to break down. The factors thus weigh in favor of allowing withdrawal.  Accordingly, after examining the totality of

---

[3]The Supreme Court held, in North Carolina v. Alford, 400 U.S. 25 (1970), that a defendant need not necessarily admit every element of the charged offense; a defendant is entitled to plead guilty when he is aware that the prosecution has a strong case against him and does not wish to take the risk of a jury trial and conviction.  See 400 U.S. at 37.

evidence in the record, the Court concludes that it should permit Jim to withdraw his guilty plea based on the: (i) doubts about the knowing and voluntary nature of his guilty plea; (ii) new evidence; (iii) Jim's assertion of innocence; and (iv) deterioration of the lawyer/client relationship between Mr. Loonam and Jim.

The Court has serious reservations about allowing Jim to withdraw his plea of guilty and to withdraw from his Plea Agreement.  The Court has not seen similar scenarios work out well for defendants; indeed, similar scenarios often end up as disastrous for defendants.  Particularly here, where Jim has made admissions at the plea colloquy that may be used against him at his trial, Jim faces poor prospects at trial, and thus may face a guidelines range of 324 to 405 months, rather than the rule 11(c)(1)(C) plea agreement's 151 to 181 months.  See Plea Agreement ¶ 10(a), at 4; Response at 3.  Nevertheless, because the plea colloquy was deficient in explaining fully to him that he was waiving his right to trial, the Court believes that it should allow him to withdraw his plea and exercise his right to trial if he so desires.

**IT IS ORDERED** that Defendant Derrick Jim's Motion for an Order to Vacate the Sentencing and To Allow Defendant to Withdraw His Plea Agreement and to Proceed to Trial, filed September 19, 2011 (Doc. 48), is granted.  The Court will allow Jim to withdraw his guilty plea.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Jennifer M. Rozzoni
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Lawrence E. Chacon
Albuquerque, New Mexico

*Attorney for the Defendant*