# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                      No. CR 10-2653 JB

DERRICK IVAN JIM,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Derrick Ivan Jim's Opposed Motion in Lemini [sic] to Exclude All Admissions and Statements Made by Defendant in the Course of His Change of Plea to Guilty to Judge Paglisi [sic], in His Plea Agreement and to Probation, filed December 20, 2011 (Doc. 72)("Motion"). The Court held a hearing on December 30, 2011. The primary issue is whether the Court should exclude at trial Jim's statements: (i) in the Plea Agreement; (ii) during the plea colloquy; and (iii) to the United States Probation Office ("USPO"). The Court will deny Jim's Motion. The Court finds plea agreement provisions that waive the protections of rule 410 of the Federal Rules of Evidence are permissible. With respect to Jim's waiver, the Court finds that he has not presented an affirmative indication that his plea was unknowing or involuntary. Furthermore, the Court concludes that rule 410 does not apply to statements made to the USPO, such that Jim's acceptance of responsibility statement would not be barred under rule 410 regardless of the validity of Jim's waiver in his plea agreement. Even if rule 410 covers such statements, the Court does not believe, under Supreme Court of the United States and United States Court of Appeals for the Tenth Circuit case precedent, that rule 410 prohibits

these statements because Jim waived rule 410 protections.

## PROCEDURAL BACKGROUND

On August 30, 2011, Jim was arrested for the sexual assault of Krystal Tsosie.  See Memorandum Opinion and Order, filed November 22, 2011 (Doc. 53)("MOO").  A federal grand jury indicted Jim on one count of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a)(1), and 2246(2)(A).  See Redacted Indictment, filed September 16, 2010 (Doc. 13)("Indictment").  On February 8, 2011, Jim and Plaintiff United States of America entered into a plea agreement. See Plea Agreement at 1, filed February 8, 2011 (Doc 25).  The Plea Agreement included a provision which states:

> Except under certain circumstances where the Court, acting on its own, fails to accept this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

Plea Agreement ¶ 10(c), at 5.  Additionally, in the Plea Agreement, Jim asserts that he is pleading guilty because he is, in fact, guilty, and admits several facts explaining his offense.  See Plea Agreement ¶ 8, at 3-4.  Jim states:

> I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:
>
> > I, Derrick Ivan Jim, am an enrolled member of the Navajo Nation and hold myself out as an Indian.  On the evening of August 12, 2010, I [was taken to] the house of Krystal Tsosie to hang out and drink alcohol with Krystal and some of her friends.  Prior to August 12th, I did not know Krystal or her friends.  Krystal's house is located in Fruitland, New Mexico within the exterior boundaries of the Navajo Nation.  At one point in the early morning

> hours of August 13, 2010 Krystal went into the house and I followed her.
> She laid down on the couch in her living room. I then dragged her to a back
> bedroom of her house. I then engaged in both vaginal and anal intercourse
> with Krystal against her will and by using force. She fought me off and I left
> the house.

Plea Agreement ¶ 8, at 3-4 (the word "went" struck and replaced with "was taken to," and initialed).

Jim then pled guilty to the Indictment in a plea colloquy before the Honorable Richard

Puglisi, Chief United States Magistrate Judge. At the plea colloquy on February 8, 2011, Jim

appeared with his counsel, Assistant Federal Public Defender James Loonam. See Transcript of the

Hearing at 3:8-11 (February 8, 2011)(Loonam)("Feb. 8, 2011 Tr."). At the plea colloquy, after Jim

was sworn in, Chief Judge Puglisi had the following exchange with Jim:

> Court: Mr. Jim, Mr. Loonam has provided me with a number of documents. First
> is the consent to proceed here this morning and next is the nine-page Plea
> Agreement. Did you go over these documents with Mr. Loonam?
>
> Defendant:   Yes, sir.
>
> Court:       And did you read them yourself?
>
> Defendant:   Yes, sir.
>
> Court:       And after you did all that do you feel that you understand these
>              documents?
>
> Defendant:   Yes, sir.
>
> Court:       Do you have any questions about anything?
>
> Defendant:    No, sir.
>
> Court:       Did you sign the documents?
>
> Defendant:   Yes, sir.

Feb. 8, 2011 Tr. at 4:8-21 (Chief Judge Puglisi, Jim). Jim also asserted that he was satisfied with

Mr. Loonam as his attorney. See Feb. 8, 2011 Tr. at 4:22-24 (Chief Judge Puglisi, Jim). Chief

Judge Puglisi further inquired: (i) whether anyone had attempted to force Jim to plead guilty, to which Jim replied no; and (ii) whether he was pleading guilty of his own free will because he was in fact guilty, to which Jim replied yes.  See Feb. 8, 2011 Tr. at 5:10-15 (Chief Judge Puglisi, Jim). Jim indicated that he understood that, under the Plea Agreement, he would get a sentence between 151 and 181 months.  See Feb. 8, 2011 Tr. at 6:2-3 (Chief Judge Puglisi, Jim).  He also informed Chief Judge Puglisi that he understood that he would be waiving his rights to appeal.  See Feb. 8, 2011 Tr. at 6:9-17 (Chief Judge Puglisi, Jim).

When Chief Judge Puglisi asked whether Jim affirmed the facts set forth in the Plea Agreement, Jim informed Chief Judge Puglisi that he thought there was an error in the factual recitation which stated  "I went to the house," because he was taken to the house.  Feb. 8, 2011 Tr. at 6:24-7:12 (Chief Judge Puglisi, Loonam).  As Chief Judge Puglisi asked Jim about the factual basis for his plea, Jim admitted to the elements of the offense.  See Feb. 8, 2011 Tr. at 8:5-25 (Chief Judge Puglisi, Jim). With respect to pertinent jurisdictional facts, Jim agreed that he was physically present in Indian Country on August 13, 2010, and that he is a Navajo Indian.  See Feb. 8, 2011 Tr. at 8:5-12 (Chief Judge Puglisi, Jim).   After conferring with counsel, Jim also stated that he knowingly engaged or attempted to engage in a sexual act with Jane Doe.  See Feb. 8, 2011 Tr. at 8:13-16 (Chief Judge Puglisi, Jim).  Jim also admitted that he engaged in that sexual act through the use of force.  See Feb. 8, 2011 Tr. at 8:17-19 (Chief Judge Puglisi, Jim).  When asked whether he knew what he was doing on the evening in question, Jim again conferred with counsel.  See Feb. 8, 2011 Tr. at 9:8-12 (Chief Judge Puglisi).  Jim's counsel, Mr. Loonam, then informed Chief Judge Puglisi:

> Your Honor, I think Mr. Jim's hesitation is he had some alcohol blackout for some period of time and we've gone over this extensively -- there were several individuals

> there besides the individual named in the plea and we've gone over all of the evidence, but he doesn't -- he cannot say that he has specific memory in great detail of what occurred between him and the woman referred to as Jane Doe, but he is -- I -- he is aware that he was there with her when her description of the events took place and there is no doubt it was him, but he has some issue with saying that because of the rather severe alcohol consumption.

Feb. 8, 2011 Tr. at 9:13-23 (Loonam).  Chief Judge Puglisi inquired whether this conduct affects Jim's ability to admit that he knowingly engaged in or attempted to engage in a sexual act with Jane Doe.  Feb. 8, 2011 Tr. at 9:24-10:1 (Chief Judge Puglisi).  Mr. Loonam responded:

> I think he believes that knowingly applies to his behavior and could be proved beyond a reasonable doubt to a jury.  And that is how I have suggested to him he wants to think about the inciden[t].  It's -- there's many -- there are so many statements, they're in great detail . . . that I believe that he does feel that knowingly would apply to the facts as they would go to a jury and could be proven beyond a reasonable doubt.

Feb. 8, 2011 Tr. at 10:2-12 (Loonam).  Jim stated that he agreed with Mr. Loonam's comments.  See Feb. 8, 2011 Tr. at 10:13-15 (Chief Judge Puglisi, Jim).  After conferring further with counsel, Jim admitted that alcohol had no effect whether he knowingly acted on August 13, 2010.  See Feb. 8, 2011 Tr. at 10:16-24 (Chief Judge Puglisi, Jim).

Responding to Jim's earlier objection to the statement that he "went to the house," the United States agreed to amend the Plea Agreement to reflect that Jim was taken to the house.  Feb. 8, 2011 Tr. at 11:6-11 (Rozzoni).  After the change was made and the parties initialed it, Chief Judge Puglisi asked how Jim pled to the single count of the Indictment.  See Feb. 8, 2011 Tr. at 12:20-13:5 (Chief Judge Puglisi, Loonam, Jim).  Jim responded that he pled guilty.  See Feb. 8, 2011 Tr. at 13:6 (Jim).  Chief Judge Puglisi accepted the plea, finding that it was knowingly and voluntarily made.  See Feb. 8, 2011 Tr. at 13:7- 14:24 (Chief Judge Puglisi, Jim, Rozzoni, Loonam).  Chief Judge Puglisi did not use the word trial once throughout the colloquy.

On May 2, 2011, the Court received a letter from Jim stating: "I would like to fire my public defender. I feel he does not have my best interest due to my case." Letter from Derrick Jim to the Court at 1 (not dated), filed May 2, 2011 (Doc. 30)("May 2, 2011 Letter"). On May 9, 2011, Jim filed his Unopposed Motion to Dismiss Defendant's Counsel, and cited New Mexico provisions relating to an attorney's competence, communication, and diligence in support of the motion. See Doc. 32 ("Motion to Dismiss Counsel"). On May 10, 2011, the Court received a letter from Jim, further explaining the reasons behind his Motion to Dismiss Counsel. See Letter from Derrick Jim to the Court at 1 (dated May 2, 2011), filed May 10, 2011 (Doc. 33)("May 10, 2011 Letter"). In his letter, Jim states that Mr. Loonam "[has] not helped me as much as he could have done" and asserts that "he rushed me into signing the plea, which I really did not understand to [sic] well." May 10, 2011 Letter at 1.

The Court held a hearing on the Motion to Dismiss Counsel on May 24, 2011. At the May 24, 2011 hearing, the United States informed the Court that it did not take a position on those motions. See Transcript of Hearing at 3:20-24 (May 24, 2011)(Rozzoni)("May 24, 2011 Tr.").[1] The Court then requested that the attorneys for the United States to leave the courtroom. See May 24, 2011 Tr. at 4:13-15 (Court). Jim informed the Court that he did not understand the plea agreement when he signed it. See May 24, 2011 Tr. at 8:7-9 (Jim). Jim stated that the way he understood the operation of the Plea Agreement was that it would reduce the guidelines range but that he would still appear before a jury. See May 24, 2011 Tr. at 8:12-16 (Jim). The Court asked whether Jim thought that he could sign the Plea Agreement, lower the guidelines, and still have a trial. See May

---

[1]The Court's citations to the May 24, 2011, and December 30, 2011, transcripts are to the Court Reporter's original, unedited versions. Final versions may have slightly different line or page numbers.

24, 2011 Tr. at 8:20-21 (Court).  Jim agreed that was his understanding.  See May 24, 2011 Tr. at

8:22-23 (Jim).  In response to further questioning from the Court, Jim stated that, even after speaking

with Chief Judge Puglisi, he still thought he would go to trial.  See May 24, 2011 Tr. at 9:10-13

(Court, Jim).  Jim stated that he now knows that his understanding was mistaken.  See May 24, 2011

Tr. at 9:24-10:1 (Court, Jim).  The Court stated that it has a great respect for Mr. Loonam, that he

does a good job for his clients, and that it was reluctant to change counsel.  See May 24, 2011 Tr.

at 11:11-13 (Court).  The Court recognized, however, that if Jim was not going to communicate with

Mr. Loonam, then Mr. Loonam could no longer do his job.  See May 24, 2011 Tr. at 11:15-25

(Court).  The Court therefore dismissed Mr. Loonam from the case with some reluctance.  See May

24, 2011 Tr. at 12:2-6 (Court).

On September 19, 2011, Jim filed his Motion for an Order to Vacate the Sentencing and to

Allow Defendant to Withdraw His Plea Agreement and to Proceed to Trial.  See Doc. 48 (Motion

to Withdraw Plea").  In his motion, Jim stated that, on September 10, 2011, he received a previously

unavailable DNA report from the United States Attorney's Office ("USAO").  Motion to Withdraw

Plea at 2.  Jim asserted that he had new evidence that would impeach the victim.  See Motion to

Withdraw Plea at 2.  Jim also reiterated that he had previously written to the Court to state his

concerns about the Plea Agreement and his former attorney, Federal Assistant Public Defender Jim

Loonam.  See Motion to Withdraw Plea at 2.  The United States opposed the Motion to Withdraw

Plea.  See United States' Response to Motion for an Order to Vacate the Sentencing and to Allow

Defendant to Withdraw His Plea Agreement and Proceed to Trial, filed October 1, 2011 (Doc. 50).

On October 3, 2011, the Court held a hearing on the Motion to Withdraw Plea.  At the hearing, Jim

informed the Court that other evidence in support of his motion comes from his girlfriend, Lori

Peterson.  <u>See</u> Transcript of Hearing at 4:7 (October 3, 2011)(Chacon)("Oct. 3, 2011 Tr.").  Jim asserted that he visited Peterson the day after the evening in question and that she would testify that, when they were intimate, she did not view any markings on his body.  <u>See</u> Oct. 3, 2011 Tr. at 4:8-10 (Chacon).  In response to the Court's question, Jim explained that this observation is significant, because the victim alleges that she punched him and maybe scratched him.  <u>See</u> Oct. 3, 2011 Tr. at 4:12-15 (Court, Chacon).  Jim also informed the Court that he would present evidence that the shirt he was wearing on the evening in question is not torn, while the victim would testify that she thought she had torn his shirt that night.  <u>See</u> Oct. 3, 2011 Tr. at 4:18-5:3 (Chacon).  The Court expressed concern that Jim waived his rights under rule 410 of the Federal Rules of Evidence and that "his case has gotten considerably worse in the sense that he's going to be looking at . . . not just the facts before he pled it, [but] he's now going to have the jury hearing his admissions at a plea colloquy."  Oct. 3, 2011 Tr. at 7:15-20 (Court).  Jim's counsel, Lawrence Chacon, conceded: "But I think when -- if he takes the stand in his own defense and the U.S. Attorney asks him, 'Well, isn't this your signature? Didn't you say this?'  He will have to explain that, and that is -- that could be very damaging."  Oct. 3, 2011 Tr. at 14:11-15 (Chacon).  Jim's attorney, Lawrence Chacon, stated that he had not seen a plea colloquy that was as hasty as the one before Chief Judge Puglisi.  <u>See</u> Oct. 3, 2011 Tr. at 13:22-23 (Chacon).

        In its MOO, the Court determined that it should permit Jim to withdraw his guilty plea.  <u>See</u> MOO at 1.  The Court found that the United States Court of Appeals for the Tenth Circuit's seven-factor test, explained in <u>United States v. Yazzie</u>, 407 F.3d 1139, 1142 (10th Cir. 2005), weighed in favor of allowing withdrawal.  <u>See</u> MOO at 12.  In its MOO, the Court noted that Jim did "not point to specific issues with the plea colloquy," but generally "argued that it was deficient."

MOO at 19.  The Court's decision relied on flaws in the plea colloquy before Chief Judge Puglisi and the Court stated that it had doubts whether the plea entered during the plea colloquy represented a knowing and voluntary waiver of Jim's rights.  See MOO at 17 ("It is the Court's doubts whether the plea was knowing and voluntary that lead the Court to permit Jim to withdraw his guilty plea and proceed to trial."); MOO at 23 ("[T]he Court thinks that the plea colloquy casts enough doubt on the knowing and voluntary nature of the plea that Jim has met his burden to establish a fair and just reason to withdraw his plea.").  In its MOO, the Court noted that "Chief Judge Puglisi did not inquire whether Jim understood theat he was waiving th right to a jury trial" and "did not use the word trial once throughout the colloquy."  MOO at 20. Additionally, the Court noted in its MOO that Jim's admissions during the plea colloquy might be admissible and used against him at trial. See MOO at 24.

On December 20, 2011, Jim filed his Motion.  See Doc. 72.  Jim moves the Court for an order to exclude "HIS prior statements of guilt and factual basis in the Government's Case in Chief." Motion at 1 (emphasis original).  Jim asserts that he did not violate the terms of his Plea Agreement, but moved the Court to permit the withdrawal of his guilty plea.  See Motion ¶ 3, at 1.  Jim argues that rule 404(b) of the Federal Rules of Evidence bars the United States' use of these statements in its case-in-chief, because admitting such statements would result in an unfair trial.  See Motion ¶ 6, at 2.  Jim contends that admitting his statements would confuse the jury and waste the Court's time.  See Motion ¶ 6, at 2.  Jim concedes that the Plea Agreement provides that such statements will be admissible under rule 801(d)(2)(A) of the Federal Rules of Evidence, but argues that the Court should nonetheless exclude his statements.  See Motion ¶ 6, at 2.  Jim emphasizes that, if these statements are admitted, he will not receive a fair trial.  See Motion ¶ 6, at 2.  He asserts that such

language in a plea agreement is "unconstitutional and is objectionable when a defendant is allowed to withdraw his previous plea of guilty."  Motion ¶ 6, at 2.  Jim further asserts that such language is "objectionable even when a defendant does not move to withdraw his plea" and is designed to deter defendants from later seeking to withdraw their guilty plea.  Motion ¶ 6, at 2.  Jim argues that, when the Court allowed Jim to withdraw his guilty plea, the Plea Agreement became null and void the same as any other contract.  See Motion ¶ 6, at 2.  Additionally, Jim argues that the USPO's investigation would be part of the Plea Agreement and should be excluded.  See Motion ¶ 6, at 2.

On December 27, 2011, the United States filed the United States' Response to Defendant's Motion in Limine to Suppress Admissions in Plea Agreement, Plea Colloquy, and to United States Probation.  See Doc. 78 ("Response").  The United States asserts that Jim has made several sworn statements admitting that he forcibly raped the victim in this case.  See Response at 1.  The United States represents that Jim swore that his attorney reviewed every provision with him and that Jim understood the agreement, including the express waiver which provides that his statements may be admissible in a subsequent proceeding initiated at his request.  See Response at 1.  Additionally, the United States asserts that, at the Court's October 3, 2011, hearing on Jim's Motion to Withdraw Plea, Jim "acknowledged in open court that, if permitted to withdraw the plea, he would have to explain his admissions about the rape at trial."  Response at 1.  The United States argues that allowing Jim to "backtrack[]" would allow him to perpetrate a fraud on the Court.  Response at 2. It further asserts that Jim intends to pursue a consent defense and that the "only person who could spin such a yarn is Jim himself, and doing so would be exceedingly difficult unless he is permitted to entirely walk away from his past sworn admissions."  Response at 2.  The United States contends that Jim makes no colorable argument to support his position and that the waiver of the right to

challenge the admission of his statements is fully enforceable.  See Response at 2.

The United States argues that a "straightforward reading of the plea colloquy transcript reveals a defendant who directly acknowledged that he is guilty of committing every act necessary to prove aggravated sexual abuse." Response at 7.  The United States points out that this case is not Jim's first time pleading guilty in an American courtroom.  See Response at 7.  The United States emphasizes that Jim has twice pled guilty to driving while intoxicated, once without the benefit of counsel, and that Jim has a high-school diploma as well as a limited college education.  See Response at 7.  The United States also points out that, on March 22, 2011, six weeks after his plea, Jim provided USPO Officer Traci Montoya with an "acceptance of responsibility" statement reiterating his admissions and expressing remorse for raping the victim.  Response at 8.

The United States contends that Jim has presented no colorable arguments for suppressing his statements.  See Response at 10.  The United States asserts that Jim's reliance on rule 404(b) of the Federal Rules of Evidence is "puzzling," because his admissions are not evidence of "other crimes, wrongs, or acts."  Response at 11.  Rather, the United States asserts Jim's admissions are evidence of the very crimes charged.  See Response at 11.  The United States contends that Jim's assertion that admitting his statements will confuse the jury and waste the Court's time is "unsupported and unexplained." Response at 11.  The United States points out that, for "some 230 years, juries in the United States have managed quite nicely when confronted with a defendant's full-scale confession to a crime."  Response at 11.  Turning to Jim's argument that the rule 410 waiver provision in his Plea Agreement is unconstitutional, the United States argues that the "motion leaves the Court and government to wonder which constitutional provision the waiver purportedly violates," and that "the United States should not be forced to wander through the United States

Constitution hoping to identify a provision that might support a challenge to the express terms of Jim's plea agreement."  Response at 11 (citing United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).  The United States contends that the Supreme Court of the United States has upheld the enforceability of waivers insofar as they relate to rebuttal evidence and that the Tenth Circuit has extended that reasoning to the United States' case-in-chief.  See Response at 12 (citing United States v. Mezzanatto, 513 U.S. 106 (1995); United States v. Mitchell, 633 F.3d 997, 1004-05 (10th Cir. 2011)).  It argues that waivers which permit the United States to use a defendant's admissions against him may only be successfully challenged where there is an "affirmative indication that the agreement was entered into unknowingly or involuntarily."  Response at 12 (citing United States v. Mezzanatto, 513 U.S. at 210).  The United States asserts that Jim has not argued that the waiver or the Plea Agreement were unknowing or involuntary.  See Response at 12.  The United States also points out that this question is different from the one before the Court on the Motion to Withdraw Plea, because the Court only found that there was a "fair and just" reason to permit withdrawal of the plea.  Response at 12.  The United States asserts: "Unlike resolution of that discretionary issue through the relevant balancing test, Jim could only prevail on his current motion if the Court resolve[s] a binary question -- a question Jim has never raised -- in Jim's favor."  Response at 13. Furthermore, the United States argues that, because rule 410 of the Federal Rules of Evidence interferes with the Court's truth-seeking function, it is narrowly construed.  See Response at 13 (citing United States v. Barrow, 400 F.3d 109, 116 (2d Cir. 2005)).

Furthermore, the United States argues that suppressing Jim's statements would invite him to perpetrate a fraud on the Court.  See Response at 14.  The United States should "be under no illusion as to the sequence of events that will follow if it grants this motion."  Response at 14.  The

United States hypothesizes that, as part of his consent defense, Jim will likely take the stand and tell the jury that the victim wanted to have sex with him.  <u>See</u> Response at 15.  The United States asserts that such testimony would directly contradict his previous sworn statements.  <u>See</u> Response at 15. The United States argues that, "even if Jim stopped short of fabricating a consent defense, his only other options would be to admit the rape . . . or claim he was too drunk to remember what happened."  Response at 15.  The United States contends that neither of these options are likely, given the steps that Jim took to withdraw his guilty plea.  <u>See</u> Response at 15.  It asserts that, if Jim's testimony contradicts his sworn statements and the United States is unable to offer competent evidence of those statements, then the Court and the United States "will be forced to sit idly by while Jim brushes aside the truth-seeking mission of a trial."  Response at 16.

On December 30, 2011, the Court held a hearing on the several motions in limine filed in this case.  With respect to this Motion, Jim conceded that he should not have addressed rule 404(b) of the Federal Rules of Evidence in his Motion, because rule 410 of the Federal Rules of Evidence is the more appropriate rule.  <u>See</u> Transcript of Hearing at 28:23-29:1 (December 30, 2011)(Chacon)("Dec. 30, 2011 Tr.").  Jim stated that his main objection was that his investigator had discovered that there were twice as many photographs taken of the scene as Jim's former counsel, Mr. Loonam, tendered to Mr. Chacon.  <u>See</u> Dec. 30, 2011 Tr. at 29:2-7 (Chacon).  Jim argued that he did not enter into the Plea Agreement with all of the information available.  <u>See</u> Dec. 30, 2011 Tr. at 29:15-16 (Chacon).  Jim also asserted that rule 410 of the Federal Rules of Evidence reflects a variety of policy concerns and it is routine that, if a defendant withdraws his plea, his statements will not be used against him at trial.  <u>See</u> Doc. 30, 2011 Tr. at 29:17-21 (Chacon).  Jim contended that Mr. Loonam did not have all the evidence, and could not give him all the evidence

so that he could wholly and voluntarily enter into the Plea Agreement.  See Dec. 30, 2011 Tr. at 30:10-14 (Chacon).

The United States asserted that it had substantial concerns about Jim's Motion.  See Dec. 30, 2011 Tr. at 30:18 (Baker).  The United States argued that a defendant has no right to have complete discovery before entering into a plea agreement.  See Dec. 30, 2011 Tr. at 30:23-25 (Baker).  It emphasized that Mr. Loonam wisely decided not to wait until the eve of trial to enter into a plea agreement.  See Dec. 30, 2011 Tr. at 30:25-31:3 (Baker).  The United States reiterated that Jim has admitted to raping the victim on three occasions: (i) in the Plea Agreement; (ii) during the plea colloquy with Chief Judge Puglisi; and (iii) some weeks later in his acceptance of responsibility statement for the USPO.  See Dec. 30, 2011 Tr. at 31:6-20 (Baker).  The United States also pointed out that Jim made his statements to the USPO after he began complaining about Mr. Loonam's representation and in it he expressed his remorse for his conduct.  See Dec. 30, 2011 Tr. at 31:20-23 (Baker).  The United States argued that Jim's statements that he was pleading guilty because he was guilty during the plea colloquy were under oath and that he swore that the Plea Agreement was accurate.  See Dec. 30, 2011 Tr. at 31:23-32:7 (Baker).  It contended that Jim's Motion runs against the truth-seeking function of a trial, and asserted that Jim presented no argument either in his oral argument or in his briefing which gives the Court a reason to allow him to walk away from his sworn statements.  See Dec. 30, 2011 Tr. at 32:8-15 (Baker).  The United States asserted that rule 404(b), which Jim cited in his Motion, does not apply, because the statements that Jim seeks to exclude do not relate to other bad acts.  See Dec. 30, 2011 Tr. at 32:16-18 (Baker).  The United States argued that Jim's statements will not confuse the jury and that his admissions are probative of his guilt.  See Dec. 30, 2011 Tr. at 32:19-22 (Baker).  It contended that the Plea Agreement

-14-

waived his rights under rule 410 of the Federal Rules of Evidence, and that Jim has not, to date, said that his plea was not knowing and voluntary. See Dec. 30, 2011 Tr. at 32:23-33:3 (Baker).

The Court then asked the United States whether the Court needed to make a determination about the knowing and voluntary nature of the plea to resolve this Motion. See Dec. 30, 2011 Tr. at 33:4-8 (Court). The United States responded that it did not believe the Court needed to make that determination, because Jim has not raised it. See Dec. 30, 2011 Tr. at 33:9-10 (Baker). The Court then asked whether waiver might be a factor in the Court's determination, but that the Court would still need to decide the knowing and voluntary nature of plea to uphold the waiver. See Dec. 30, 2011 Tr. at 33:11-13 (Court). The United States asserted that it believed that Jim's failure to raise this argument would weigh heavily against a resolution that he did not knowingly and voluntarily enter the plea. See Dec. 30, 2011 Tr. at 33:14-16 (Baker). The United States further asserted that Jim has had ample opportunity to raise this issue, especially after the Court flagged the problems with the plea colloquy in its MOO. See Dec. 30, 2011 Tr. at 33:16-21 (Baker). The United States also pointed out that the Court has not yet resolved the question whether the plea was voluntarily and knowingly made. See Dec. 30, 2011 Tr. at 33:21 (Baker). The United States noted that, if the Court chose to analyze this issue, the Court's focus would be whether there is an affirmative indication that the plea was not knowing and voluntary. See Dec. 30, 2011 Tr. at 33:23-25 (Baker).

The Court then asked the United States, in the absence of the waiver provision, how these statements would be treated under rule 410 of the Federal Rules of Evidence. See Dec. 30, 2011 Tr. at 34:3-17 (Court). The United States responded that it did not believe that the statements could be lumped together, because Jim made his acceptance of responsibility statement after the plea was made and accepted. See Dec. 30, 2011 Tr. at 34:18-25 (Court, Baker). The United States argued

that the statements to the USPO would not be covered under rule 410.  <u>See</u> Dec. 30, 2011 Tr. at

35:3-4 (Baker).  The United States conceded that rule 410 squarely covers the plea colloquy, but

stated that the Plea Agreement is not so clearly covered.  <u>See</u> Dec. 30, 2011 Tr. at 35:5-7 (Baker).

The United States also conceded that the plea of guilty, in the plea colloquy, would be covered under

the rule.  <u>See</u> Dec. 30, 2011 Tr. at 35:8-11 (Court, Baker).  The United States argued that it does not

believe that the Plea Agreement would fall within the language in rule 410 covering any statement

made in the course of any proceedings under rule 11 of the Federal Rules of Criminal Procedure.

<u>See</u> Dec. 30, 2011 Tr. at 35:20-36:3 (Court, Baker).  The Court expressed concern that the

statements in the Plea Agreement would be a statement in the course of a proceeding under rule 11.

<u>See</u> Dec. 30, 2011 Tr. at 36:7-9 (Court).  The United States asserted that it had not fully researched

that issue and did not wish to concede that point until it had done so.  <u>See</u> Dec. 30, 2011 Tr. at

36:10-14.  In response to further Court questioning, the United States conceded that the two

exceptions to rule 410 would not be applicable.  <u>See</u> Dec. 30, 2011 Tr. at 36:15-38:14 (Court,

Baker).

With respect to the authority the United States referenced, the Court asked whether those

were federal cases, and the United States responded that <u>United States v. Mitchell</u> was.  <u>See</u> Dec.

30, 2011 Tr. at 38:15-21 (Court, Baker).  The United States asserted that those cases held that rule

410 is a waivable provision like any other right.  <u>See</u> Dec. 30, 2011 Tr. at 38:22-39:4 (Court, Baker).

The United States further asserted that the Tenth Circuit, in <u>United States v. Mitchell</u>, extended the

Supreme Court's reasoning, and held that statements in a plea agreement or colloquy are also

admissible in the United States' case-in-chief if there is a waiver.  <u>See</u> Dec. 30, 2011 Tr. at 39:5-9

(Baker).  The United States represented that the Tenth Circuit held that such statements are

-16-

admissible if waived, because rule 410 runs counter to a trial's truth-seeking function.  <u>See</u> Dec. 30, 2011 Tr. at 39:9-19 (Baker).  It argued that it would be an affront to the trial process to have a defendant testify, after making sworn statements in a plea agreement and withdrawing his plea, and only face a perjury prosecution if he chooses to lie.  <u>See</u> Dec. 30, 2011 Tr. at 40:14-21 (Baker).  The United States reiterated that the Court has not yet resolved the knowing and voluntary question, and that addressing that question here would be fundamentally different than addressing it in the Motion to Withdraw Plea.  <u>See</u> Dec. 30, 2011 Tr. at 41:4-13 (Court, Baker).  The United States asserted that, in the Motion to Withdraw Plea, the Court was considering whether there was a fair-and-just reason to permit withdrawal, but that here the Court faces a binary choice of whether the plea was knowing and voluntary.  <u>See</u> Dec. 30, 2011 Tr. at 41:13-18 (Baker).  The United States also contended that it believes it has the right to use this evidence both for rebuttal purposes and in its case-in-chief.  <u>See</u> Dec. 30, 2011 Tr. at 41:19-42:1 (Court, Baker).

Turning to Jim's discovery argument, the United States asserted that this argument was new, that Jim raised the argument for the first time at the hearing, and that Jim cited no authority to support his argument.  <u>See</u> Dec. 30, 2011 Tr. at 42:19-22 (Baker).  The United States then offered to provide the Court with the photographs, but stated that they were mostly pictures of beer bottles.  <u>See</u> Dec. 30, 2011 Tr. at 42:22-43:19 (Baker).  The United States emphasized that Jim had no right to full discovery before his guilty plea and that such a rule would operate to the detriment of defendants.  <u>See</u> Dec. 30, 2011 Tr. at 43:20-44:12 (Baker).  The Court then asked Jim whether he agreed with the description that the photographs were mostly of beer bottles.  <u>See</u> Dec. 30, 2011 Tr. at 44:14-17 (Court).  Jim responded that he did not mind if the Court examined the photographs and suggested that some of the things in the photographs are subtle.  <u>See</u> Dec. 30, 2011 Tr. at 44:19-21

(Chacon). Jim also suggested that it looks like the photographs are staged. <u>See</u> Dec. 30, 2011 Tr. at 44:21-23 (Chacon). Jim stated that he believes that the Court has to look at all of the photographs. <u>See</u> Dec. 30, 2011 Tr. at 44:24-45:8 (Chacon). The Court then suggested that the United States should send the Court the photographs, so that it could review them. <u>See</u> Dec. 30, 2011 Tr. at 46:6-8 (Court). The Court then asked Jim whether he also asks that the Court exclude his statements from rebuttal, because his motion focused on excluding his statements from the United States' case-in-chief. <u>See</u> Dec. 30, 2011 Tr. at 46:9-16 (Court). Jim asserted that he would like to amend his brief to exclude the statements from the case. <u>See</u> Dec. 30, 2011 Tr. at 46:17-18 (Chacon). Jim also expressed concern that Mr. Loonam's statements during plea discussions would be admitted. <u>See</u> Dec. 30, 2011 Tr. at 46:17-47:23 (Chacon). Jim argued that he wanted to avoid allowing the United States introducing all of his statements through the guise of rebuttal or impeachment evidence. <u>See</u> Dec. 30, 2011 Tr. at 46:17-47:13 (Chacon). Jim contended that, because he was allowed to withdraw his guilty plea, the plea agreement should be null and void. <u>See</u> Dec. 30, 2011 Tr. at 47:13-15 (Chacon). Jim argued that, having withdrawn his plea, he should be back to square one and presumed innocent, but that in discussing these statements, the United States wants the jury to believe that he already plead guilty he because is guilty. <u>See</u> Dec. 30, 2011 Tr. at 48:1-5 (Chacon).

The United States represented that it does not intend to present any evidence of plea discussions that took place between Jim or his counsel and the USAO. <u>See</u> Dec. 30, 2011 Tr. at 48:19-49:9 (Court, Baker). The United States also emphasized that the statements to the USPO are on separate footing from the plea colloquy and the Plea Agreement. <u>See</u> Dec. 30, 2011 Tr. at 48:25-5:9 (Court, Baker). The United States asserted that a Presentence Investigation Report ("PSR") was

prepared for Jim, which includes his admissions, and that the United States also has a stand-alone copy of Jim's acceptance-of-responsibility statement.  See Dec. 30, 2011 Tr. at 49:10-12 (Baker). The United States conceded that it did not have a case that mirrored the facts of this case, where the Court has expressed doubts about the knowing and voluntary nature of the defendant's guilty plea. See Dec. 30, 2011 Tr. at 50:12-17 (Court, Baker).  The United States argued, however, that this case remains within the holdings of United States v. Mezzanatto and United States v. Mitchell.  See Dec. 30, 2011 Tr. at 50:18-22 (Baker).

        After the December 30, 2011 hearing, pursuant to the parties' agreement, the United States Attorney's Office hand-delivered two disks of photographs to the Court.  The Court reviewed both disks of photographs, as Jim requested at the December 30, 2011 hearing.  See Dec. 30, 2011 Tr. at 44:24-45:8 (Chacon).  In a letter included with the disks, the United States informed the Court that the first disk, which includes 78 photographs, contained the set of photographs that it originally produced for Mr. Loonam.  See Letter from Assistant United States Attorney Mark T. Baker to the Court at 1 (dated December 30, 2011)("USAO Letter").   The United States informed the Court that the second disk, which includes 156 photographs, contained the set of photographs that it produced for Mr. Chacon.  See USAO Letter at 1.

        On January 2, 2012, the United States filed the United States' Notice of Supplemental Authority in Opposition to Defendant's Motion in Limine to Exclude His Prior Admissions of Guilt. See Doc. 88 ("Supplemental Authority").  The United States explains that the photographs to which Jim referred at the December 30, 2011 hearing did not open up any new defense to the charges. See Supplemental Authority at 1.  It represents that the images captured: (i) the interior and exterior of the victim's home; (ii) alcohol bottles; (iii) inculpatory images of feces on the victim's bed; and

-19-

(iv) a few images of the victim, documenting her bruises.  See Supplemental Authority at 1.  The United States argues that none of these images were exculpatory and that some of them were inculpatory.  See Supplemental Authority at 1.  The United States also represents that some of the photographs of the victim were turned over to the defense as part of the initial discovery along with the victim's medical record.  See Supplemental Authority at 1.  The United States argues that, under Brady v. United States, 397 U.S. 742 (1970), the Supreme Court addressed "in clear terms the enforceability of a defendant's guilty plea even when it is entered without full knowledge of the strength of the prosecution's case."  Supplemental Authority at 2 (citing Brady v. United States, 397 U.S. at 756-57).  The United States quotes the Supreme Court as explaining: "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action."  Supplemental Authority at 2 (quoting Brady v. United States, 397 U.S. at 756-57).  The United States also notes that the Tenth Circuit recently held that a defendant could not be excused from his guilty plea because new information related to fire science became available after his plea.  See Supplemental Authority at 2 (citing Green v. Koerner, 312 F.App'x 105, 109 (10th Cir. 2009)(unpublished)).

## LAW REGARDING RULE 410 WAIVERS

The general rule is that evidence of a guilty plea or statements made in plea negotiations are inadmissible evidence.  See Fed. R. Evid. 410.  Accord United States v. Mitchell, 633 F.3d at 1002 ("As a general matter, evidence of a guilty plea or statements made in plea negotiations are inadmissible."). Rule 410 provides:

**Pleas Plea Discussions, and Related Statements**

(a) **Prohibited Uses.**  In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:

(1) a guilty plea that was later withdrawn;

(2) a nolo contendere plea;

(3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or

(4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410.

The Supreme Court, in United States v. Mezzanatto, addressed a challenge to a waiver that allowed the United States to use the defendant's statements during plea negotiations to impeach any contradictory testimony that could arise if the case proceeded to trial.  See 513 U.S. at 198.  The Supreme Court held that, "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable."  513 U.S. at 210.  The Supreme Court stated that, while there "may be some evidentiary provisions that are so fundamental to the reliability of the factfinding process that they may never be waived without irreparably 'discrediting the federal courts.' . . . enforcement of agreements like respondent's plainly will not have that effect."  United States v. Mezzanatto, 513 U.S. at 204.  Instead, the Supreme Court noted that admitting the plea statements for impeachment purposes enhanced the truth-seeking function of trials and would result in more accurate verdicts.  See United States v. Mezzanatto, 513 U.S. at 204 (Thomas, J.)("The admission of plea statements for impeachment purposes enhances the truth-seeking function of trials

and will result in more accurate verdicts.").  In so holding, the Supreme Court rejected the following

arguments that rule 410 should be unwaivable: (i) that rule 410 must be enforced to guarantee a fair

procedure; (ii) that waivability would undermine the goal of voluntary settlement; and (iii) that

waivability would invite prosecutorial reaching and abuse.  See United States v. Mezzanatto, 513

U.S. at 204-10.  A three-justice concurrence advocated that courts should narrowly construe the

holding's scope and emphasized that the case dealt only with an impeachment waiver.  See United

States v. Mezzanatto, 513 U.S. at 211 (Ginsburg, J., concurring).

In United States v. Mitchell, however, the Tenth Circuit extended the Supreme Court's

reasoning in United States v. Mezzanatto to case-in-chief waivers.  There the Tenth Circuit upheld

the following provision, in which the defendant agreed:

> [I]f I withdraw my plea of guilty, I shall assert no claim under the United States
> Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of
> the Federal Rules of Criminal Procedure, or any other federal rule, that the
> defendant's statements pursuant to this agreement, or any leads derived therefrom,
> should be suppressed or are inadmissible at any trial, hearing, or other proceeding.

United States v. Mitchell, 633 F.3d at 999.  The Tenth Circuit commented: "We see no analytical

distinction between Rule 410's application to impeachment waivers and case-in-chief waivers.  The

same reasoning for the former compels the latter."  United States v. Mitchell, 633 F.3d at 1004.  It

further explained its decision and stated: "Even if the district court determines a guilty plea should

be withdrawn, a waiver of Rule 410 only means a trial will contain more evidence -- both the

evidence of the original guilty plea and evidence the plea was withdrawn."  United States v.

Mitchell, 633 F.3d at 1005 (emphasis added).  The Tenth Circuit noted that its conclusion was in line

with the other circuits who have considered expanding the rationale of United States v. Mezzanatto.

See 633 F.3d at 1006 (citing United States v. Sylvester, 583 F.3d 285, 289 (5th Cir. 2009); United

States v. Young, 223 F.3d 905, 910-11 (8th Cir. 2000); United States v. Burch, 156 F.3d 1315, 1321 (D.C. Cir. 1998)).  The Tenth Circuit also stated that the facts of United States v. Mezzanatto supported its decision, because the defendant in that case received only an opportunity to discuss cooperation with the United States, while the United States made promises to Mitchell in the plea agreement.  See United States v. Mitchell, 633 F.3d at 1006.  Before reaching the rule 410 question, the Tenth Circuit determined that the defendant's guilty plea was knowing and voluntary.  See United States v. Mitchell, 633 F.3d at 1001.  Although the district court noted that the defendant's counsel may have exerted undue influence, the Tenth Circuit concluded that his counsel's influence did not render the plea involuntary.  See United States v. Mitchell, 633 F.3d at 1002.

The Tenth Circuit's analysis in United States v. Mitchell began with its determination that the plea agreement was enforceable.  See 633 F.3d at 1002.  Although the Tenth Circuit stated at the outset that it was considering whether the rule 410 waiver was knowing and voluntary, it analyzed the plea as a whole instead.  See United States v. Mitchell, 633 F.3d at 1002 ("Based on a careful review of the record, we agree with the district court that Mitchell's plea was knowing and voluntary.").  The United States Court of Appeals for the District of Columbia Circuit similarly analyzed the validity of the rule 410 waiver in the context of the validity of the plea as whole.  See United States v. Burch, 156 F.3d at 1322.  The D.C. Circuit commented:

> Appellant's specific contention that he involuntarily waived the protections of Rules 11(e)(6) and 410 derives from his broader claim that he did not enter into the plea agreement voluntarily.  He makes no attempt to deconstruct the plea agreement into individual components, nor to claim that acceded to a particular provision involuntarily, independent of his intention with his respect to the entire plea.  Therefore, we can only review whether his waiver was knowing and voluntary through examining, as the trial court did, the nature of the plea agreement that subsumes it.

United States v. Burch, 156 F.3d at 1322 n.5.

## LAW REGARDING KNOWING AND VOLUNTARY STANDARD
## FOR GUILTY PLEAS

A defendant's guilty plea must be knowing and voluntary.  See United States v. Libretti, 38 F.3d 523, 529 (10th Cir. 1994).  To enter a plea that is knowing and voluntary, a defendant must have "a full understanding of what the plea connotes and of its consequence."  Boykin v. Alabama, 395 U.S. 238, 244 (1969).  A defendant must only understand the "direct consequences" of his plea.  United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002).  If a guilty plea is not knowing and voluntary, it is void, and any additional waivers in the plea agreement generally are unenforceable.  See United States v. Mitchell, 633 F.3d at 1001 (citing United States v. Gigley, 213 F.3d 509, 516 (10th Cir. 2000)).  The Tenth Circuit has had more frequent opportunities to analyze the knowing and voluntary nature of a waiver of rights in the context of a waiver of appellate rights.  See United States v. Sandoval, 427 F.App'x 621, 623 (10th Cir. 2011)(unpublished); United States v. Vidal, 561 F.3d 1113, 1118 (10th Cir. 2009); United States v. Wilken, 498 F.3d 1160, 1167 (10th Cir. 2007).

The defendant in United States v. Mitchell argued that the district court's statements that his counsel may have exerted "undue influence" over him rendered his plea involuntary.  633 F.3d at 1001.  The Tenth Circuit held that the fact that his counsel used "colorful language" -- telling the defendant "'you would be a fool not to take this plea offer!!'" -- did not approach a constitutionally suspect level of coercion.  633 F.3d at 1002.  The Tenth Circuit stated that, even when pressure from counsel may be "palpable" and a defendant claimed he was "hounded, browbeaten, and yelled at," such pressures do not "vitiate the voluntariness of his plea."  633 F.3d at 1002 (citing United States v. Carr, 80 F.3d 413, 417 (10th Cir. 1996)(analyzing voluntariness where counsel called the defendant "stupid" and "a f***ing idiot").  The defendant in United States v. Mitchell also pointed

to the breakdown in communication between himself and his attorney to establish that his plea was not knowing and involuntary.  See 633 F.3d at 1001.  The Tenth Circuit found this argument similarly unavailing, and held that the guilty plea and accompanying plea agreement, were knowing and voluntary.  See United States v. Mitchell, 633 F.3d at 1002.

In the United States District Court for the District of New Mexico, if a defendant consents to plead guilty before a United States Magistrate Judge, then the Magistrate Judge will conduct the plea colloquy and accept the plea.  See United States v. Ciapponi, 77 F.3d 1247, 1349-50 (10th Cir. 1996)).  "With a defendant's express consent, the broad residuary 'additional duties' clause of the Magistrate Act authorizes a magistrate judge to conduct a Rule 11 felony plea proceeding, and such does not violate the defendant's constitutional rights."  United States v. Ciapponi, 77 F.3d at 1251. A District Judge will sentence the defendant, and under the local rules, the "Court will defer a decision on the acceptance or rejection of the plea agreement until the Court has reviewed the presentence report, even in instances where the Court has accepted the guilty plea."  D.N.M.LR-Cr. 11.2.

## ANALYSIS

The Court concludes that, under Supreme Court and Tenth Circuit precedent, a defendant may waive his rights under rule 410 of the Federal Rules of Evidence.  With respect to Jim's waiver, the Court finds that Jim has not met his burden to present an affirmative indication that his plea was unknowing and involuntary.  Furthermore, the Court determines that, regardless of the validity of Jim's waiver, Jim's statements to the USPO would be admissible because rule 410 does not cover such statements.  Even if rule 410 covers statements to the USPO after the guilty plea is accepted, Jim has waived his rule 410 protections.

-25-

I.     **THE RULE 410 WAIVER IN JIM'S PLEA AGREEMENT IS NOT
UNCONSTITUTIONAL ON ITS FACE.**

Jim asserts, in his Motion, that the waiver of his rights under rule 410 is unconstitutional.

See Motion ¶ 6, at 2.  The United States argues that the Supreme Court has upheld the enforceability

of waivers insofar as they relate to rebuttal evidence and that the Tenth Circuit has extended that

reasoning to the United States' case-in-chief.   See Response at 12 (citing United States v.

Mezzanatto, 513 U.S. 106; United States v. Mitchell, 633 F.3d at 1004-05).  Furthermore, the United

States contends that the Motion "leaves the Court and government to wonder which constitutional

provision the waiver purportedly violates."  Response at 11.

Jim's Plea Agreement contains the following provision:

> Except under certain circumstances where the Court, acting on its own, fails to
> accept this plea agreement, the Defendant agrees that, upon the Defendant's signing
> of this plea agreement, the facts that the Defendant has admitted under this plea
> agreement as set forth above, as well as any facts to which the Defendant admits in
> open court at the Defendant's plea hearing, shall be admissible against the Defendant
> under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding,
> including a criminal trial, and the Defendant expressly waives the Defendant's rights
> under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410
> with regard to the facts the Defendant admits in conjunction with this plea
> agreement.

Plea Agreement ¶ 10(c), at 5.  This provision is substantially similar to the provision that the Tenth

Circuit upheld in United States v. Mitchell, in which the defendant agreed:

> [I]f I withdraw my plea of guilty, I shall assert no claim under the United States
> Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of
> the Federal Rules of Criminal Procedure, or any other federal rule, that the
> defendant's statements pursuant to this agreement, or any leads derived therefrom,
> should be suppressed or are inadmissible at any trial, hearing, or other proceeding.

633 F.3d at 999.  Both provisions establish the admissibility of the defendant's plea-related

statements in a subsequent proceeding or trial without limiting admissibility to impeachment or

rebuttal.  Accordingly, given the Tenth Circuit's decision in <u>United States v. Mitchell</u>, the Court concludes that paragraph 10(c) of the Plea Agreement is not unconstitutional on its face.

## II.   <u>JIM KNOWINGLY AND VOLUNTARILY ENTERED HIS GUILTY PLEA.</u>

In his Motion, Jim does not address whether his plea was made knowingly and voluntarily. <u>See</u> Motion at 2.  The United States, in its Response, points out that "Jim did not assert the waiver, his plea agreement more generally, were unknowingly or involuntarily made when he sought to withdraw his guilty plea.  He makes no such claim in his motion to suppress his admissions of guilt." Response at 12.  The United States argues that, throughout this case, Jim "only has argued communication with [Federal Public Defender] Loonam broke down -- an argument <u>Mitchell</u> squarely rejected."  Response at 12.  The United States emphasizes that the Court independently identified concerns about the knowing and voluntary nature of the guilty plea.  <u>See</u> Response at 13.  The United States asserts that the inquiry at this point in the case, however, does not involve a balancing of interests or wide district court discretion.  <u>See</u> Response at 13.

At the December 30, 2011 hearing, Jim stated that his main objection was that his investigator had discovered that there were twice as many photographs taken of the scene as Jim's former counsel, Mr. Loonam, tendered to Mr. Chacon.  <u>See</u> Dec. 30, 2011 Tr. at 29:2-7 (Chacon). Jim contended that Mr. Loonam did not have all the evidence and could not give him all the evidence, so that he could wholly and voluntarily enter into the Plea Agreement.  <u>See</u> Dec. 30, 2011 Tr. at 30:10-14 (Chacon).  The United States argued that a defendant has no right to have complete discovery before entering into a plea agreement.  <u>See</u> Dec. 30, 2011 Tr. at 30:23-25 (Baker).  The United States asserted that Jim's statements that he was pleading guilty because he was guilty during the plea colloquy were under oath and that he swore that the Plea Agreement was accurate.  <u>See</u> Dec.

30, 2011 Tr. at 31:23-32:7 (Baker).  It contended that Jim's Motion runs directly against a trial's truth-seeking function and asserted that Jim presented no argument either in his oral argument or in his briefing which gives the Court a reason to allow him to walk away from his sworn statements. See Dec. 30, 2011 Tr. at 32:8-15 (Baker).  It further asserted that the Plea Agreement expressly waived Jim's rights under rule 410 and that Jim has not, to date, said that his plea was not knowing and voluntary.  See Dec. 30, 2011 Tr. at 32:23-33:3 (Baker).  The United States argued that it did not believe that the Court needed to decide the knowing and voluntary question because Jim has not raised it.  See Dec. 30, 2011 Tr. at 33:9-10 (Baker).  Turning to Jim's discovery argument, the United States asserted that this argument was new, that Jim raised the argument for the first time at the hearing, and that Jim cited no law to support his argument.  See Dec. 30, 2011 Tr. at 42:19-22 (Baker).  The United States then offered to provide the Court with the photographs, but stated that they were mostly pictures of beer bottles.  See Dec. 30, 2011 Tr. at 42:22-43:19 (Baker).

The Tenth Circuit's analysis in United States v. Mitchell began with its determination that the plea agreement was enforceable.  See 633 F.3d at 1002.  Although the Tenth Circuit stated at the outset that it was considering whether the rule 410 waiver was knowing and voluntary, it analyzed the plea as a whole instead.  See United States v. Mitchell, 633 F.3d at 1002 ("Based on a careful review of the record, we agree with the district court that Mitchell's plea was knowing and voluntary.").  The District of Columbia Circuit similarly analyzed the validity of the rule 410 waiver in the context of the validity of the plea as whole.  See United States v. Burch, 156 F.3d at 1322 n.5 (holding that the because the defendant made "no attempt to deconstruct the plea agreement into individual components" it could only review whether his waiver was voluntary through examining "the nature of the plea agreement that subsumes it").   Here, other than challenging the

constitutionality of the rule 410 waiver provision, Jim does not separate his argument about knowingly and voluntarily making a plea generally, and knowingly and voluntarily making the rule 410 waiver.  The United States also focused its knowing and voluntary analysis, although it mentioned that Jim also could not establish that the rule 410 waiver was unknowing and involuntary. See Response at 12-14.  Accordingly, the Court will determine whether the plea itself was knowing and voluntary.[2]

The Court notes that Jim's Motion and oral argument at the December 30, 2011 hearing raised only two challenges to the admissibility of his statements.[3]  The Court has already addressed Jim's first argument that the Plea Agreement provision containing the waiver is unconstitutional. The second argument Jim raised at the December 30, 2011 hearing, was that his plea was not knowing and voluntary, because he did not have all of the photographs taken at the scene of the alleged sexual assault.  See Dec. 30, 2011 Tr. at 30:10-14 (Chacon).[4]  The Court must first address

_____

[2]The Supreme Court in United States v. Mezzanatto analyzed a rule 410 waiver as a pre-condition to negotiations in a situation where the defendant later failed to reach a plea agreement with the United States.  See 513 U.S. at 198-99.  In United States v. Mitchell, the Tenth Circuit more generally analyzed whether the plea was knowing and voluntary.  See United States v. Mitchell, 633 F.3d at 1002.  The Tenth Circuit also noted that, if a guilty plea is not knowing and voluntary, it is void, and any additional waivers in the plea agreement are unenforceable.  See United States v. Mitchell, 633 F.3d at 1001.  The D.C. Circuit has also focused on the broader question whether the plea was knowing and voluntary where a defendant did not more specifically attack the knowing and voluntary nature of a rule 410 waiver.  See United States v. Burch, 156 F.3d at 1322 n.5.

[3]At the December 30, 2011, hearing, Jim conceded that he should not have addressed rule 404(b) in his Motion, see Motion ¶ 6 at 2, because rule 410 is the more appropriate rule.  See Dec. 30, 2011 Tr. at 28:23-29:1 (Chacon).  The Court notes that Jim may not have adequately presented arguments concerning the knowing and voluntary nature of his plea in his Motion to avoid their waiver.  See United States v. Rodriguez, No. 11-2158,  2011 WL 6739498, at *25 n. 10 (D.N.M. Dec. 8, 2011)(Browning, J.).

[4]At the hearing on his Motion to Withdraw Plea, Jim raised a different knowing and voluntary argument.  At the October 3, 2011 hearing, Jim's attorney stated that he had not seen a plea colloquy that was as hasty as the one before Chief Judge Puglisi.  See Oct. 3, 2011 Tr. at 13:22-

which party bears the burden of proof on the issues of whether the plea was knowing and voluntary. The Court will then analyze Jim's argument regarding the effect of the lack of 80 photographs of the scene on the knowing and voluntary nature of the plea.  The Court will also discuss the concerns it raised in its MOO about the knowing and voluntary nature of the plea.

### A.    JIM BEARS THE BURDEN OF PROOF TO SHOW THAT HIS RULE 410 WAIVER AND HIS PLEA WERE NOT KNOWING AND VOLUNTARY.

Neither party discussed, in their briefing or at the December 30, 2011 hearing, who bears the burden of proof on the knowing-and-voluntary question.  Additionally, the Tenth Circuit did not explicitly determine who bears this burden in United States v. Mitchell.  United States v. Mitchell might be read to imply, however, that the burden is on the defendant, because the Tenth Circuit focused its analysis exclusively on the arguments that the defendant raised.  See 633 F.3d at 1001-02 ("Mitchell claims on appeal, as he did below, that his guilty plea was not knowing and voluntary . . . .  Mitchell argues that the district court's factual findings that his trial counsel exerted 'undue influence' cannot be reconciled with its ruling that his plea was voluntary . . . .").  In the context of appellate waivers, the Tenth Circuit has repeatedly held that it is the defendant's burden to prove that his plea was not knowing and voluntary.  See United States v. Rangel, 377 F.App'x 775, 777 (10th Cir. 2010)(unpublished)("Defendant bears the burden of showing that his plea was not knowing and voluntary."); United States v. Johnson, 369 F.App'x 905, 906 (10th Cir. 2010)(unpublished)("Mr. Johnson bears the burden of showing that his plea was not knowing and voluntary."); United States v. Frierson, No. 08-6254, 2009 WL 766533, at *2 (10th Cir. Mar. 24, 2009)(unpublished)("Accordingly, he has not shouldered his burden to show that his plea, including

---

23 (Chacon).  Jim also asserted that the breakdown in communication between himself and his attorney undermines the voluntariness of his plea.  See Oct. 3, 2011 Tr. at 24:19-25:2 (Chacon).

the waiver, was not knowing and voluntary."); United States v. Akers, 317 F.App'x 798, 802 (10th Cir. 2009)(unpublished)(citing Hicks v. Franklin, 546 F.3d 1279, 1284 (10th Cir. 2008))(holding that the defendant had not established that the plea was not knowing and voluntary and citing a writ of habeas corpus case).

Other federal courts disagree whether the burden is on the defendant or the United States. The United States Court of Appeals for the Eighth Circuit held that a proffer agreement, in which the defendant agreed that statements made during negotiations could be used at sentencing, was valid and that "[t]o succeed Sanders must show more than he misunderstood the extent of his waiver of its ramifications." United States v. Sanders, 341 F.3d 809, 818 (8th Cir. 2003). The United States District Court for the Eastern District of New York also held that the burden rests on the defendant to establish that his proffer agreement, which waived his protections under rules 11(e)(6) and 410, was not knowing and voluntary. See United States v. Morrison, 515 F.Supp.2d 340, 348-49 (E.D.N.Y. 2007). The United States Court of Appeals for the Fourth Circuit, like the Tenth Circuit, focused its analysis on the defendant's arguments against admitting his statements, but did not specifically address which party bears the burden of proof. See United States v. Stevens, No. 11-4019, 2011 WL 5925327, at *2 (4th Cir. Nov. 29, 2011)(unpublished). The Fourth Circuit stated:

> On appeal, Stevens does not suggest the presence of any fraud or coercion and makes no claim that he entered into the plea agreement involuntarily. Rather, he suggests that his agreement to waive Rule 410 was not made knowingly because he did not know at the time he entered into the plea agreement that the Government would be required to prove that the law enforcement officials with whom the victim cooperated were federal officials.
>
> We reject this argument because Stevens utterly fails to explain how any such lack of knowledge affected his ability to enter into the plea agreement in a knowing fashion.

United States v. Stevens, 2011 WL 5925327, at *2. On the other hand, the United States Court of

Appeals for the Third Circuit has held that the burden is on the United States to show that a defendant waived the provisions of rule 410 knowingly and voluntarily.  See United States v. Mayfield, 361 F.App'x 425, 431 (3d Cir. 2010)(unpublished)(citing Colorado v. Connelly, 479 U.S. 157, 168 (1986)).  The Third Circuit did not analyze why the burden should fall on the United States, see United States v. Mayfield, 361 F.App'x at 431, but cites Colorado v. Connelly, a Supreme Court case, which held that the government bears the burden of proof to show by a preponderance of evidence that a defendant knowingly and voluntarily waived his Miranda[5] rights, see Colorado v. Connelly, 479 U.S. at 168-69.  The United States District Court for the District of Connecticut and United States District Court for the Southern District of New York have similarly held that the burden is on the United States and cited Colorado v. Connelly for support without discussion.  See United States v. Paris, No. 3:06-cr-0064, 2007 WL 1158118, at *4 (D.Conn. Apr. 18, 2007)(citing Colorado v. Connelly, 479 U.S. at 168-69); United States v. Parra, 302 F.Supp.2d 226 (S.D.N.Y. 2004)(citing Colorado v. Connelly, 479 U.S. at 168-69).

    The Court does not find the circumstances surrounding the plea colloquy, Plea Agreement, and acceptance-of-responsibility statement analogous to the custodial waiver of a defendant's rights under Miranda v. Arizona.  In Miranda v. Arizona, the Supreme Court held that, because "the State is responsible for establishing the isolated circumstances under which the interrogation takes place

---

[5]Miranda v. Arizona, 384 U.S. 436, 478-79 (1966)(holding that, "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized," and stating that "[p]rocedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored," law enforcement officers must warn the individual that he has the right to remain silent, that he has the right to the presence of an attorney, and that, if he cannot afford an attorney, one will be appointed for him).

and has the only means of making available corroborated of evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." 384 U.S. at 475.[6]  In the case of a plea agreement, the defendant ordinarily has the assistance of counsel and waives his rights in exchange for a promised benefit.  A plea agreement's wording is carefully weighed and negotiated and not closely akin to an incriminating statement obtained in the custodial interrogation context. Generally, the proponent of evidence must demonstrate that evidence is admissible.  See United States v. McClinton, 432 F.App'x 166, 168 (3d Cir. 2011)(unpublished)(holding that the proponent of evidence otherwise barred under hearsay rules has the burden of establishing admissibility). Here, however, the question that the Court addresses is not a typical evidentiary question, although it will impact the admissibility of evidence, because the resolution of this question does not rely on the Federal Rules of Evidence.[7]  The defendant's statements, if there is a rule 410 waiver, are admissible, unless it is affirmatively shown that the plea was not knowingly and voluntarily made. So the evidence is admissible unless something affecting the knowing and voluntary nature of the plea occurred.  The question is whether a waiver of rule 410 rights in a plea agreement is valid.  The Court's inquiry focuses on whether the plea was knowing and voluntary such that the waiver contained within it is valid.  The answer to this question will determine whether these statements

---

[6]The Tenth Circuit Pattern Jury Instructions provide that the prosecution has the burden of proving by a preponderance of the evidence that a defendant's statement "not made in court" was voluntary.  See Tenth Circuit Pattern Jury Instructions Criminal § 1.25 & cmt., at 40 (2011)(citing United States v. McCullah, 76 F.3d 1087, 1100 (10th Cir. 1996)).  There again, however, the Tenth Circuit refers to statements made while the defendant is under "interrogation."  Tenth Circuit Pattern Jury Instructions Criminal § 1.25.

[7]Jim's Motion more closely resembles a motion to suppress evidence, than a typical evidentiary motion.  The Tenth Circuit has held that the proponent of a motion to suppress bears the burden of proof.  See United States v. Clarkson, 551 F.3d 1196, 1200 (10th Cir. 2009)(citing United States v. Moore, 22 F.3d 241, 243 (10th Cir. 1994)).

are admissible.

The Tenth Circuit's language in the context of other plea agreement waivers, <u>see</u> <u>United States v. Rangel</u>, 377 F.App'x at 777, and its analysis in <u>United States v. Mitchell</u> support a finding that the burden is on the defendant, <u>see</u> 633 F.3d at 1001-02.  Additionally, the language that the Supreme Court used in <u>United States v. Mezzanatto</u> to describe the circumstances in which a rule 410 waiver may be valid appears to place the burden of proof on the defendant.  In <u>United States v. Mezzanatto</u>, the Supreme Court explained that "absent some <u>affirmative</u> indication that the agreement was entered into <u>unknowingly or involuntarily</u>, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." 513 U.S. at 210 (emphasis added).  Requiring an "affirmative indication" showing that the agreement was "unknowing or involuntary" appears to place the burden on the defendant to come forward with some evidence that the plea was unknowing or involuntary.  <u>United States v. Mezzanatto</u>, 513 U.S. at 210.  There would be no incentive for the government to come forward with "affirmative" evidence that the plea, agreement, or waiver was unknowing or involuntary.  If the Supreme Court meant to place the burden on the United States, it would be more likely to require an affirmative indication that the plea was <u>knowing</u> and <u>voluntary</u>.

While it makes sense to place the burden of proof on the government to show the voluntariness of an out-of-court statement, once the defendant has pled guilty under oath, it makes sense to place the burden on the defendant to show that the defendant did not do so knowingly and voluntarily.  A guilty plea is a court process, and while mistakes can and will be made, a defendant has counsel and a court trying to ensure that the plea is knowing and voluntary.  It makes sense, after a court has accepted the plea as knowing and voluntary, to place the burden on the defendant to

-34-

show why it is not.  Even when the court has allowed the defendant to withdraw the guilty plea for a fair and just reason, the burden should remain on the defendant to show he or she did not know what he or she was doing, or that there was undue influence.  Accordingly, the Court finds that the burden is on Jim to establish an affirmative indication that his plea was unknowing or involuntary.[8]

### B.    NOT HAVING A COMPLETE SET OF PHOTOGRAPHS BEFORE ENTERING THE PLEA DOES NOT RENDER JIM'S PLEA UNKNOWING AND INVOLUNTARY.

At the December 30, 2011 hearing, Jim argued that Mr. Loonam did not have all the evidence, because he was missing half of the photographs taken at the scene, and therefore could not give Jim all the evidence so that he could wholly and voluntarily enter into the Plea Agreement. See Dec. 30, 2011 Tr. at 30:10-14 (Chacon).  The United States argued that a defendant has no right to have complete discovery before entering into a plea agreement.  See Dec. 30, 2011 Tr. at 30:23-25 (Baker).  The United States also asserted that this was a new argument raised for the first time at the hearing and that Jim cited no authority to support it.  See Dec. 30, 2011 Tr. at 42:19-22 (Baker).

After the December 30, 2011 hearing, pursuant to the parties' agreement, the United States Attorney's Office hand-delivered two disks of photographs to the Court.  The Court reviewed both disks of photographs, as Jim requested at the December 30, 2011 hearing.  See Dec. 30, 2011 Tr. at 44:24-45:8 (Chacon).[9]  In a letter included with the disks, the United States informed the Court

---

[8]The burden of "affirmative indication" does not appear heavy.  With motions to suppress, disputes about the voluntariness of confessions, and other evidentiary issues, the burden of proof is a preponderance of the evidence.  See United States v. Johnson, 132 F.App'x 201, 208 (10th Cir. 2005)(stating that burden to admit statements under rule 801(d)(2)(E) is a preponderance of the evidence); United States v. McCullah, 76 F.3d at 1100 (holding that voluntariness of a confession is analyzed under preponderance of the evidence).

[9]Jim also alleged that the photographs were "staged."  Dec. 30, 2011 Tr. at 44:21-23 (Chacon).  Having examined the photographs, the Court concludes that the only way in which the

that the first disk, which includes 78 photographs, contained the set of photographs that it originally produced for Mr. Loonam.  See USAO Letter at 1.   The United States informed the Court that the second disk, which includes 156 photographs, contained the set of photographs that it produced for Mr. Chacon.  See USAO Letter at 1.  On January 2, 2012, the United States filed its Supplemental Authority.  See Doc. 88.  The United States argued that the photographs were not exculpatory and that some of them were inculpatory.  See Supplemental Authority at 1.

Although Jim argued that his plea was not voluntary, because he did not have the entire set of photographs at the time of his plea, Jim did not fully explain why the absence of these photographs from the evidence originally produced undermines the knowing or voluntary nature of his plea.  While Jim raised this issue in terms of voluntariness, the Court believes that the absence of evidence is more relevant to whether the decision to plead guilty was knowing.  Voluntariness ordinarily deals with claims that the plea was coerced, which Jim does not allege, or that the defendant's counsel was not within the range of competence demanded of attorneys in criminal cases, which Jim does not allege.  See United States v. Carr, 80 F.3d 413, 416 (10th Cir. 1996).  There is no contention, such as in United States v. Mitchell, and in United States v. Carr, that counsel yelled at his client, told Jim that he is stupid or an idiot, or that counsel cursed out Jim.  Even when counsel exhibit such extreme behavior, the Tenth Circuit has held that such pressures do not vitiate the voluntariness of the plea.  See United States v. Mitchell, 633 F.3d at 1002 (holding

---

photographs were in any way manipulated was: (i) after taking a photograph establishing the position of several beer bottles, the case agent would turn the bottle so that the label was visible, and then take a second picture; and (ii) after taking photographs establishing the positioning of several pieces of furniture, the case agent removed the pillows so that he could photograph the seat cushions.  The Court does not believe that this argument goes to whether the plea is knowing and voluntary.  This alteration to the positioning of objects in the photographs goes to the weight of the evidence, and is best reserved for trial and for cross-examination.

that the defendant's counsel used "colorful language" -"'you would be a fool not to take this plea offer!!'" -- to convince the defendant to accept a plea did not render the plea involuntary); United States v. Carr, 80 F.3d at 417 (holding that, although his counsel's pressures may have been "palpable" and the defendant alleged that he was "hounded, browbeaten, and yelled at" these pressures did not undermine the voluntariness of his plea). There is no evidence that Jim pled guilty involuntarily, and the issue is whether his plea was knowing. The absence of this photographic evidence did not affect whether the decision was "still his choice to make"; accordingly, the Court will address this issue in terms of whether the lack of photographs affected Jim's knowing entry into the Plea Agreement. See United States v. Carr, 80 F.3d at 417. The Court examined the photographs and, while the second disk contains additional photographs of the house where the alleged offense took place and of the victim, the Court does not believe that the absence of these 78 photographs impacted the knowing or voluntary nature of Jim's plea. The Court found one case from the Tenth Circuit discussing the impact of discovery on whether a plea is knowing and voluntary. In United States v. Ohiri, 133 F.App'x 555 (10th Cir. 2005), the Tenth Circuit held that the district court abused its discretion when it denied an amendment of the defendant's petition under 28 U.S.C. § 2255 to allege a Brady v. Maryland violation.[10] The Tenth Circuit distinguished United States v. Ruiz, 536 U.S. 622 (2002), which held that prosecutors were not required to disclose impeachment evidence before a defendant entered a guilty plea, and held that "the Supreme Court did not imply that the government may avoid the consequence of a Brady violation if the

---

[10]In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court explained that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession." United States v. Ohiri, 133 F.App'x at 562.  Here, Jim has not alleged that these photographs are exculpatory or that the photographs would have impacted his decision to plead guilty.[11]  The plea was not an eleventh-hour plea agreement.  On January 20, 2011, a hearing was set for Jim's change of plea, see Notice of Hearing, filed January 20, 2011 (Doc. 20), twenty-five days before Jim's trial, scheduled for February 14, 2011, see Order to Continue at 1, filed November 4, 2010 (Doc. 19).[12]  Jim does not argue that the absence of the photographs affected "a full understanding of what the plea connotes and of its consequence," the understanding necessary to enter a knowing plea.  Boykin v. Alabama, 395 U.S. 238, 244 (1969).  Furthermore, Jim has not established that he had a right to the photographs, as under Brady v. Maryland a defendant is only entitled to evidence that is exculpatory and material.  See United States v. Smith, 534 F.3d 1211, 1222 (10th Cir. 2008); United States v. Gould, No. 03-2274, 2011 WL 1103805, at *8 (D.N.M. Mar. 16, 2011)(Browning, J.)(holding that, under Brady v. Maryland, "evidence must be exculpatory or favorable to the defendant" and evidence is material if "the result of the proceeding would have been

----

[11]The United States asserts that some of the photographs are exculpatory and that others of the photographs were disclosed with the victim's medical record.  See Supplemental Authority at 1.  It does appear that the photographs of the feces on the bed and photographs of the victim would tend to be more inculpatory than exculpatory.  The Supreme Court has held that a defendant's guilty plea is still enforceable "even when it is entered without full knowledge of the strength of the prosecution's case."  Brady v. United States, 397 U.S. at 756-57.  Here, at least some of the photographs would appear to go to the prosecution's case, and do not implicate the knowing and voluntary nature of the plea.

[12]Jim's change of plea hearing was originally set for January 27, 2011, see Notice of Hearing (Doc. 20); however, it was changed to February 8, 2011, see Amended Notice of Hearing, filed January 24, 2011 (Doc. 21).  Presumably the details of the Plea Agreement had been worked out on January 20, 2011 when Jim had the Court set a hearing for his change of plea, but Jim did not sign the agreement until February 8, 2011.  See Plea Agreement at 9.

different" had the evidence been disclosed ).  The Court does not believe that the presence or absence of these photographs substantially impacted whether Jim's plea was knowing and voluntary.

### C.  THE DEFECTS IN THE PLEA COLLOQUY, DISCUSSED IN THE COURT'S MOO, DO NOT RENDER JIM'S PLEA UNKNOWING AND INVOLUNTARY.

Jim did not argue, either in his Motion or at the December 30, 2011, that the doubts the Court expressed in its MOO provide grounds for finding his plea unknowing and involuntary.  The United States contends that Jim makes no colorable argument to exclude his statements and that the waiver of the right to challenge the admission of his statements is fully enforceable.  See Response at 2. The United States further asserts that Jim swore that his attorney reviewed every provision with him and that Jim understood the agreement, including the express waiver which provides that his statements may be admissible in a subsequent proceeding initiated at his request.  See Response at 1.  Additionally, the United States argues that a "straightforward reading of the plea colloquy transcript reveals a defendant who directly acknowledged that he is guilty of committing every act necessary to prove aggravated sexual abuse."  Response at 7.  It argues that waivers which permit the United States to use a defendant's admissions against him may only be successfully challenged where there is an "affirmative indication that the agreement was entered into unknowingly or involuntarily."  Response at 12 (citing United States v. Mezzanatto, 513 U.S. at 210).  The United States asserts that Jim has not argued that the waiver or the Plea Agreement were unknowing or involuntary.  See Response at 12.  The United States also points out that this question is different from the one before the Court on the Motion to Withdraw Plea, because the Court found only that there was a "fair and just" reason to permit withdrawal of the plea.  Response at 12.  Furthermore, the United States argues that suppressing Jim's statements would invite him to perpetrate a fraud

on the Court.  See Response at 14.  At the December 30, 2011 hearing, the United States reiterated many of its arguments.  It contended that Jim's Motion runs against a trial's truth-seeking function and asserted that Jim presented no argument either in his oral argument or in his briefing which gives the Court a reason to allow him to walk away from his sworn statements.  See Dec. 30, 2011 Tr. at 32:8-15 (Baker).  The United States further asserted that Jim has had ample opportunity to raise this issue, especially after the Court flagged the problems with the plea colloquy in its MOO. See Dec. 30, 2011 Tr. at 33:16-21 (Baker).  The United States argued that, in the Motion to Withdraw Plea, the Court was considering whether there was a fair-and-just reason to permit withdrawal, but that here, the Court faces a binary choice whether the plea was knowing and voluntary.  See Dec. 30, 2011 Tr. at 41:13-18 (Baker).

In its MOO, the Court stated that it had "doubts" about the knowing and voluntary nature of the plea, because of a defect in the plea colloquy, and that its doubts were sufficient to establish a "fair and just reason" to permit Jim to withdraw his plea.  MOO at 17, 22-23.  The Court permitted Jim to withdraw his plea, because Chief Judge Puglisi never mentioned the word "trial" during the plea colloquy, and Jim stated, with some plausibility, that he did not know he was waiving his right to proceed to trial.  MOO at 22-23.  The question whether to permit a defendant to withdraw his plea is one of broad district court discretion and based on a balancing of several factors.  See MOO at 11-12.  The Court still has concerns about Jim's plea and the nature of the plea colloquy.  In its MOO, the Court expressed doubts about how informed Jim was; he stated that he thought he could accept the Plea Agreement, get a high-low limitation on his sentence, and still proceed to trial.  See MOO at 20.  High-low limitations are sometimes used in civil cases; the parties limit the risks, but proceed to trial to see what happens.  The Court cannot say Jim's thoughts were completely implausible.  The

-40-

Court is not convinced, however, that Jim's conversation with the Court, which was not under oath, is the "affirmative indication" that he needs to show that his plea was not knowing and voluntary. There is considerably more evidence that suggests that the Court's conclusion that Jim made a knowing and intelligent decision has a firm basis in fact.  In the end, the evidence in favor of a knowing and voluntary plea outweighs considerably the evidence of an unknowing plea, and is more weighty and more credible.  In other words, Jim has not met his burden of presenting an "affirmative indication" that the plea was not knowing and voluntary.

At the October 3, 2011 hearing on the Motion to Withdraw Plea, Mr. Chacon did not lay out in a detailed manner that Jim did not understand that he was waiving his right to trial; instead the Court got some idea of what Jim may have thought on its own.  See MOO at 19 ("Although Jim does not point to specific issues with the plea colloquy, Jim argued that it was deficient, and Mr. Chacon commented that he had never seen a plea that was so hasty.").   Jim argued that the plea colloquy was hasty, and that the breakdown in communication between himself and his attorney[13] undermined the voluntariness of his plea.  See Oct. 3, 2011 Tr. at 13:22-23, 24:19-25:2 (Chacon). Additionally, the brief exchange that the Court had with Jim at the May 24, 2011 hearing, on Jim's Motion to Dismiss Counsel, was not subject to cross-examination and the United States was not

---

[13]The defendant in United States v. Mitchell also pointed to the breakdown in communication between himself and his attorney to establish that his plea was not knowing and involuntary. See 633 F.3d at 1001.  The Tenth Circuit found this argument unavailing, and held that the guilty plea and accompanying plea agreement, were knowing and voluntary.  See United States v. Mitchell, 633 F.3d at 1002.  The breakdown in communication asserted in United States v. Mitchell went more to whether the plea was made voluntarily than knowingly.  There, as here, the district court allowed a defendant to withdraw his plea under the "fair and just" standard, but found the plea was "knowing and voluntary."  United States v. Mitchell, 633 F.3d at 1001-02.  The Tenth Circuit has thus not found it unjust or unconstitutional for a district court to allow a defendant to withdraw his or her plea, but find that the plea was knowing and voluntary.

present for Jim's statements.  See MOO at 5-6.  The exchange at the May 24, 2011 was also not

under oath.  It is even possible that the Court put a theory forward and Jim, in his eagerness to get

out of his plea, merely agreed with it.  He and his attorney never fully articulated thoroughly the

issues that concern  the Court.  Jim did not mention the conversation that he had with the Court at

the May 24, 2011 hearing, in: (i) his Motion to Withdraw Plea; (ii) at the October 3, 2011 hearing;

or (iii) at the December 30, 2011 hearing.  Additionally, in his earlier hearings, Jim did not argue

that his rule 410 waiver would be unenforceable.  Instead, Jim conceded that he would need to deal

with his statements in the plea colloquy and in the Plea Agreement.  See Oct. 3, 2011 Tr. at 14:6-15

(Chacon) ("But I think when -- if he takes the stand in his own defense and the U.S. Attorney asks

him, 'Well isn't this your signature? Didn't you say this' he will have to explain that, and that is --

that could be very damaging.").

    In his Motion, Jim focuses on the constitutionality of the rule 410 waiver.  See Motion ¶ 6,

at 2.  At the December 30, 2011 hearing, Jim argued that his plea was not voluntary because he did

not have all of the available photographs.  See Dec. 30, 2011 Tr. at 30:10-14 (Chacon).  Jim did not

discuss the Court's decision in its MOO at the hearing.  Thus, neither Jim nor his attorney took the

Court's doubts and concerns, and did anything to build on them to make an "affirmative indication"

that the plea was not knowing and voluntary.

    In its MOO, the Court warned:

> The Court has not seen similar scenarios work out well for defendants; indeed,
> similar scenarios often end up disastrous for defendants.  Particularly here, where
> Jim has made admissions at the plea colloquy that may be used against him at his
> trial, Jim faces poor prospects at trial, and thus may face a guideline range of 324 to
> 405 months, rather than the rule 11(c)(1)(C) plea agreement's 151 to 181 months.

MOO at 25.  The Court was also careful to discuss this possibility with Jim at the October 3, 2011

hearing.  The Court noted that the United States has begun including provisions, in the plea agreements into which it enters, which state that the facts to which the defendant admits are admissible in subsequent proceedings.  See Oct. 3, 2011 Tr. at 7:18-8:5 (Court).  Jim stated that he had discussed that problem with his attorney and that he is aware of the possible consequences of his actions.  See Oct. 3, 2011 Tr. at 9:1-19 (Chacon).  Jim stated that, if this case went to trial, he would have to explain his signature on the Plea Agreement.  See Oct. 3, 2011 Tr. at 14:21-15 (Chacon).[14]  Jim did not come forward with evidence, a sworn statement or testimony or other evidence, suggesting that the Court's concerns and doubts were correct, or that the Court's doubts should preclude a finding that the plea was knowing and voluntary.  So the record remains where it was after the October 3, 2011 hearing, on Jim's Motion to Withdraw Plea.  And in the end, the Court's doubts and concerns remain doubts and concerns, and do not rise to an "affirmative indication."

In the absence of new sworn evidence or argument in support of the Court's doubts and concerns, the Court is left with a multitude of Jim's statements attesting to the knowing and voluntary nature of his plea, made under oath and in court.  In the Plea Agreement, Jim states that he has thoroughly reviewed all aspects of this case with his attorney and is satisfied with his attorney's representation.  See Plea Agreement ¶ 1, at 1.  The Plea Agreements sets forth that:

The Defendant further understands the Defendant's rights:

  a.  to plead not guilty, or having already so pleaded, to persist in that

---

[14]The United States suggests that the Court should hold Jim to that concession. See Response at 1-2.  While the concession is a factor in the Court's analysis whether Jim's plea was knowing and voluntary, the Court does not believe it should be determinative.  The Court's judicial task remains to decide whether the plea was knowing and voluntary.

plea;

b.      to have a trial by jury; and

c.      at a trial:

    1)      to confront and cross-examine adverse witnesses,

    2)      to be protected from compelled self-incrimination,

    3)      to testify and present evidence on the Defendant's own behalf, and

    4)      to compel the attendance of witnesses for the defense.

Plea Agreement ¶ 2, at 1-2. Jim then agreed to waive all of those rights. See Plea Agreement ¶ 3, at 2 ("The Defendant agrees to waive these rights and plead guilty to the indictment, charging a violation of 18 U.S.C. § 2241(a), that being aggravated sexual abuse."). While it now might be desirous that Jim explicitly waive his right to trial in the paragraph titled "Waiver of Rights and Plea of Guilty," Plea Agreement at 2, the Court believes that the Plea Agreement is clear enough. Jim asserts that he is pleading guilty because he is, in fact, guilty, and admits several facts explaining his offense. See Plea Agreement ¶ 8, at 3-4. Jim states:

> I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:
>
>> I, Derrick Ivan Jim, am an enrolled member of the Navajo Nation and hold myself out as an Indian. On the evening of August 12, 2010, I [was taken to] the house of Krystal Tsosie to hang out and drink alcohol with Krystal and some of her friends. Prior to August 12th, I did not know Krystal or her friends. Krystal's house is located in Fruitland, New Mexico within the exterior boundaries of the Navajo Nation. At one point in the early morning hours of August 13, 2010 Krystal went into the house and I followed her. She laid down on the couch in her living room. I then dragged her to a back bedroom of her house. I then engaged in both vaginal and anal intercourse with Krystal against her will and by using force. She fought me off and I left the house.

-44-

Plea Agreement ¶ 8, at 3-4 (the word "went" struck and replaced with "was taken to," and initialed).

Jim stipulated that he waived his rights under rule 11(f) of the Federal Rules of Criminal Procedure and rule 410 of the Federal Rules of Evidence.  <u>See</u> Plea Agreement ¶ 10(c), at 5 ("[T]he Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with his plea agreement.").  Jim also stated that he agreed that his guilty plea was "freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement)."  Plea Agreement ¶ 17, at 7-8.  Finally, above Jim's signature, he stated "I have read this agreement and carefully reviewed every part of it with my attorney.  I understand the agreement and voluntarily sign it."  Plea Agreement at 9.  At the plea colloquy, after Jim was sworn in, Chief Judge Puglisi had the following exchange with Jim:

| | |
|---|---|
| Court: | Mr. Jim, Mr. Loonam has provided me with a number of documents.  First is the consent to proceed here this morning and next is the nine-page Plea Agreement.  Did you go over these documents with Mr. Loonam? |
| Defendant: | Yes, sir. |
| Court: | And did you read them yourself? |
| Defendant: | Yes, sir. |
| Court: | And after you did all that do you feel that you understand these documents? |
| Defendant: | Yes, sir. |
| Court: | Do you have any questions about anything? |
| Defendant: |  No, sir. |
| Court: | Did you sign the documents? |

Defendant:      Yes, sir.

Feb. 8, 2011 Tr. at 4:8-21 (Chief Judge Puglisi, Jim).  As Chief Judge Puglisi asked Jim about the

factual basis for his plea, Jim admitted to the elements of the offense.  See Feb. 8, 2011 Tr. at 8:5-25

(Chief Judge Puglisi, Jim).  Chief Judge Puglisi, going over the Indictment, had the following

exchange with Jim:

Court:          On August 13, 2010 were you physically present in Indian Country
                located in San Juan County, State and District of New Mexico?

Defendant:      Yes, sir.

Court:          And Mr. Jim, are you Indian?

Defendant:      Yes, I'm Navajo.

Court:          Okay.  And on that date did you knowingly engage in or attempt to
                engage in a sexual act with Jane Doe?

(Defendant confers with counsel)

Defendant:      Yes, sir.

Court:          All right.  And did you engage in this sexual act with Jane Doe by
                using force on Jane Doe?

Defendant:      Yes, Sir.

Court:          And was this sexual act, did this consist of contact between your
                penis and the vulva of Jane Doe?

Defendant:      Yes, sir.

Court:          All right.  And this all took place within Indian Country, is that
                correct?

Defendant:      Yes, sir.

Jim paused when asked if he knowingly raped the victim.  Mr. Loonam stated:

Your Honor, I think Mr. Jim's hesitation is he had some alcohol blackout for some

-46-

> period of time and we've gone over this extensively . . . he cannot say that he has
> specific memory in great detail of what occurred between him and the woman
> referred to as Jane Doe, but he is -- I -- he is aware that he was there with her when
> her description of the events took place and there is no doubt it was him, but he has
> some issue with saying that because of the rather severe alcohol consumption.

Feb. 8, 2011 Tr. at 9:8-23 (Chief Judge Puglisi, Loonam).   When asked whether the alcohol

consumption affected Jim's ability to admit that he knowingly engaged in a sexual act with Jane

Doe, Mr. Loonam responded:

> I think he believes that knowingly applies to his behavior and could be proved
> beyond a reasonable doubt to a jury.  And that is how I have suggested to him he
> wants to think about the inciden[t]. . . . there are so many statements, they're in great
> detail . . . that I believe that he does feel that knowingly would apply to the facts as
> they would go to a jury and could be proven beyond a reasonable doubt.

Feb. 8, 2011 Tr. at 9:24-10:12 (Chief Judge Puglisi, Loonam).  After further conferring with counsel,

Jim admitted that alcohol had no effect on whether he knowingly acted on the night in question.  See

Feb. 8, 2011 Tr. at 10:20-24 (Court, Jim).[15]   The Court also notes that Jim was not afraid to object

to the language of the Plea Agreement at the colloquy when he disagreed with it, and had Chief

Judge Puglisi and the United States alter the paragraph 8 so that it said he "was taken to" the

victim's house rather than he "went to" the victim's house.  Feb. 8, 2011 Tr. at 6:24-8:2, 11:2-13:1

(Court, Loonam, Jim, Rozzoni).  Chief Judge Puglisi found:

> It is the finding of the Court in the case of United States versus Derrick Jim that the
> Defendant is fully competent and capable of entering an informed plea, he is aware
> of the nature of the charge and the consequences of his plea, his plea of guilty is

---

[15]The Court noted in its MOO that this exchange does not undermine the knowing nature of
Jim's plea.  See MOO at 23-24.  The Court noted that these circumstances mirror the facts of United
States v. Vidal, where the Tenth Circuit found that a guilty plea was knowing and voluntary,
because, despite refusing to acknowledge intent, the defendant conceded that the United States had
enough evidence to establish that she committed the crime.  See 561 F.3d at 1119.  Accordingly the
Court held that Jim's assertions of an alcoholic blackout do not undermine the knowing and
voluntary nature of the admission.  See MOO at 23.

knowing and voluntary and supported by an independent basis in fact containing each of the essential elements of the offense.

Feb. 8, 2011 Tr. at 13:7-13 (Chief Judge Puglisi).  On March 22, 2011, Jim submitted an acceptance of responsibility statement which admits:

> On the evening on [sic] August 12, 2010, I, Derrick Ivan Jim, was brought to the house of Krystal T. by a friend of mine.  We went there to hang out and drink alcohol with Krystal and some of her friends.  Prior to August 12th, I did not know Krystal or her friends.  At one point in the early morning hours of August 13, 2010 Krystal went into the house and I followed her.  She laid down on the couch in her living room.  I then used physical force to engage in a sexual act with Krystal against her will.
> I was very intoxicated at the time and I am deeply sorry for my actions.  I take full responsibility for my actions in this matter.

Presentence Investigation Report ¶ 29, at 10 (disclosed April 1, 2011).

The three statements that Jim has made, in his two letters and at the May 24, 2011 hearing, contradicting his admissions have been unsworn and not subject to cross-examination.  On May 10, 2011, the Court received a letter from Jim, explaining the reasons behind his Unopposed Motion to Dismiss Defendant's Counsel, filed May 9, 2011 (Doc. 32).  See May 10, 2011 Letter at 1.  In his letter, Jim states that Mr. Loonam "[has] not helped me as much as he could have done" and asserts that "he rushed me into signing the plea, which I really did not understand to [sic] well."  May 10, 2011 Letter at 1.  At the May 24, 2011 hearing on Jim's Unopposed Motion to Dismiss Defendant's Counsel, Jim informed the Court that he did not understand the plea agreement when he signed it.  See May 24, 2011 Tr. at 8:7-9 (Jim).  Jim stated that the way he understood the operation of the Plea Agreement was that it would reduce the guideline range but  that he would still appear before a jury.  See May 24, 2011 Tr. at 8:12-16 (Jim).  The Court asked whether Jim thought that he could "sign a plea agreement, lower the guidelines, and still have a trial."  May 24, 2011 Tr. at 8:20-21 (Court).  Jim agreed that was his understanding.  See May 24, 2011 Tr. at 8:22-23 (Jim)("That's the way I

understood it, Your Honor.  That's what I told Mr. Loonam there at Torrance.").  In response to

further questioning from the Court, Jim stated that, even after speaking with Chief Judge Puglisi,

he still thought he would go to trial.  See May 24, 2011 Tr. at 9:10-13 (Court, Jim).  Jim stated that

he now knows that his understanding was mistaken.  See May 24, 2011 Tr. at 9:24-10:1 (Court,

Jim).  It is this exchange, in conjunction with the defect in the plea colloquy, that led the Court to

permit Jim to withdraw his plea.  Jim was, however, never sworn in.

      Jim does not raise these arguments in support of his Motion.  While the Court maintains

doubts and concerns about whether Jim's plea was knowing, Jim has not argued that the reasons set

forth in the Court's MOO establish that his plea was unknowing and involuntary.  In the absence of

argument or evidence on this issue and with the burden resting on Jim, the Court will not invalidate

the rule 410 waiver and exclude Jim's statements on this ground.  In United States v. Sandoval, the

Tenth Circuit, in the context of an appellate waiver, addressed a similar situation as the one before

the Court.  There, the Tenth Circuit stated:

> [D]efendant contends the waiver of appellate rights within the plea agreement is
> unenforceable because the district court did not discuss the waiver with him and
> ascertain that he understood it.  Notably, defendant does not contend that the waiver
> was not in fact knowing and voluntary, just that the district court failed to address it
> in the plea colloquy.  Defendant 'has the burden to present evidence from the record
> establishing that he did not understand the waiver' . . . .

United States v. Sandoval, 427 F.App'x at 623.  While waiver of a right to trial is a key issue, and

different from the right to appeal, here, Jim ignores this defect as a basis for asserting that his plea

and waiver are unknowing and involuntary, after the Court specifically relied on it for its MOO.

Furthermore, rule 11(h) incorporates a harmless error concept, which provides that a "variance from

the requirements of this rule is harmless error if it does not affect substantial rights."  Fed. R. Crim.

P. 11(h).  The Tenth Circuit has held that this language requires that the "defendant show the

knowledge of the omission or variance from Rule 11 would have changed his decision to plead guilty." McMahon v. United States, 242 F.3d 389, 2000 WL 1869451, at *5 (10th Cir. 2000)(unpublished table decision)(quoting United States v. Wright, 930 F.2d 808, 810 (10th Cir. 1991))(discussing rule 11 violation in context of a writ of habeas corpus petition under 28 U.S.C. § 2255). In United States v. Wright, the Tenth Circuit addressed a rule 11 violation in the context of a post-sentencing motion to vacate the sentence or withdraw the plea. See 930 F.2d at 809.

Accordingly, the Court rejects Jim's argument that the absence of half of the photographs taken at the scene renders his plea unknowing or involuntary. As to the Courts concerns and doubts, there is an absence of argument or evidence contradicting Jim's sworn statements. In the end, while there was a fair and just reason to allow Jim to withdraw his plea, the Court will not hold that the defect in the plea colloquy rendered the plea unknowing and involuntary. The Court will thus deny Jim's Motion. Jim has not affirmatively indicated that his plea was unknowing or involuntary.

With respect to the scope of the waiver, the Court determines that the United States may use Jim's admissions and statements in any phase of the trial. Under the waiver to which Jim stipulated, the United States may use his statements in a subsequent "criminal trial." Plea Agreement ¶ 10(c), at 5. This broad waiver does not limit at what phase of the trial the United States may use his statements. Furthermore, as the Tenth Circuit noted in United States v. Mitchell, "a waiver of Rule 410 only means that a trial will contain more evidence -- both the evidence of the original guilty plea and evidence the plea was withdrawn," and aids the truth-seeking function of a trial. 633 F.3d at 1005 (emphasis original). The Court notes that, like the defendant in United States v. Mitchell, Jim had a promise from the United States limiting the sentencing range, whereas the defendant in United States v. Mezzanatto received only an opportunity to discuss cooperation with the United States in

exchange for his waiver.  See United States v. Mitchell, 633 F.3d at 1006.  Because the Plea Agreement contains a broad waiver of Jim's rights under rule 410 and because the Tenth Circuit has held that the United States may use such statements in its case-in-chief, the Court determines that the United States may use these statements and admissions during any phase of the trial.

While the Court's ruling makes Jim's trial difficult, it is the trial he expected when he told the Court that he wanted to withdraw his plea.  While the Court must look at the plea as a whole, he has never said that he did not understand that, if he withdrew his guilty plea, he would see the statements at trial.  As the Supreme Court in United States v. Mezzanatto and the Tenth Circuit in United States v. Mitchell note, the Court's decision adds information, rather than takes it away.  Jim can explain his theory to the jury; he can use the Court's doubts and concerns or some other.  He can explain that the Court did not accept his plea agreement, but only his plea.  In the end, however, the statements were knowingly and voluntarily made, and Jim should have to explain them if he wants to proceed to trial.

## III.    RULE 410 DOES NOT COVER JIM'S STATEMENTS TO THE USPO.

In his Motion, Jim argues that the "Probation investigation would likewise be part of that plea agreement and it also should be null and void" under rule 410.  Motion ¶ 6, at 2.  At the December 30, 2011 hearing, the United States argued that rule 410 does not cover the statements to the USPO.  See Dec. 30, 2011 Tr. at 35:3-4 (Baker).  The United States emphasized that the statements to the USPO were on separate footing from the plea colloquy and the Plea Agreement. See Dec. 30, 2011 Tr. at 48:25-5:9 (Court, Baker).  The United States asserted that the USPO prepared a PSR for Jim, which includes his admissions, and that the United States also has a stand-alone copy of Jim's acceptance of responsibility statement.  See Dec. 30, 2011 Tr. at 49:10-12

(Baker). The United States conceded that it did not have a case that mirrored the facts of this case, where the Court has expressed doubts about the knowing and voluntary nature of the defendant's guilty plea. See Dec. 30, 2011 Tr. at 50:12-17 (Court, Baker). Jim did not separately argue the admissibility of the statements to the USPO at the December 30, 2011 hearing.

Rule 410 provides:

**Pleas Plea Discussions, and Related Statements**

> **(a) Prohibited Uses.** In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
>> **(1)** a guilty plea that was later withdrawn;
>>
>> **(2)** a nolo contendere plea;
>>
>> **(3)** a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
>>
>> **(4)** a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410. Statements to the USPO would not fall within either the first or second category. Additionally, these statements would not fall within the fourth category because they were not made during plea discussions and were not to an attorney to for the prosecuting authority. See United States v. Perez-Franco, 973 F.2d 445, 461 (1st Cir. 1989)("This rule has been consistently interpreted by the courts to interpret only those statements made by a defendant to the prosecuting attorney himself."); United States v. Porter, 821 F.2d 968, 977 (4th Cir. 1989)("Plea negotiations, in order to be inadmissible, must be made in the negotiations with a government attorney or with that attorney's express authority."); United States v. Coverson, No. 3:9-CR-00075, 2011 WL

1044632, at *7 (D. Alaska Mar. 22, 2011)("The probation officer works on behalf of the court and not on behalf of the prosecutorial arm of the government."). See also United States v. Raifsnider, 145 F.App'x 292, 294 (10th Cir. 2005)(unpublished)("[W]e have held that '[a]s an Officer of the Court, the Probation Officer may be considered as being a reliable source.")(citation omitted). Also, the United States has represented that it does not intend to present any evidence of plea discussions that took place between Jim or his counsel and the USAO. See Dec. 30, 2011 Tr. at 48:19-49:9 (Court, Baker). Accordingly, the Court must determine whether the statements to the USPO fall within the third category.

Rule 410 prohibits admitting statements made in a "proceeding . . . under Federal Rule of Criminal Procedure 11." Fed. R. Evid. 410. The Court then looks to rule 11. Rule 11 generally covers the means of entering a plea, considering and accepting a plea, plea agreement procedures, and withdrawing a plea. See Fed. R. Crim. P. 11(a)-(d). Rule 11(f) also provides that "the admissibility of or inadmissibility of a plea, plea discussion, and any related statements is governed by Federal Rule of Evidence 410." Fed. R. Evid. 410. This provision does not appear to give the defendant additional rights to protect "related statements," but is meant to incorporate the rights already listed in rule 410. Rule 11(f) mirrors the title of rule 410 which is "Pleas, Plea Discussions, and Related Statements." Fed. R. Evid. 410. A plain language reading of "any related statements" in rule 11(f) would seem to focus on the word "statement" in rule 410(a)(3), which deals with "any" statements at the plea hearing. Accordingly, if the language of rule 410 would exclude the statement, rule 11(f) would also exclude it. There is no reason to interpret rule 11(f) as expanding on rule 410. Looking to rule 11(f) to define the scope of rule 410 would be circular, because rule 11(f) refers the Court back to rule 410. Furthermore, neither rule 410 nor rule 11 refer to the USPO or probation

officers.  Because the USPO is not mentioned in rule 11, the Court cannot say that the acceptance of responsibility statements is made "under" or pursuant to rule 11 as rule 410 requires.  See Fruitt v. Astrue, 604 F.3d 1217, 1220 (10th Cir. 2010)(finding that "under" is an "on-point definition" for "pursuant to"); New Oxford American Dictionary 1882 (A. Stevenson & C. A. Lindberg eds. 3d. ed. 2010)(defining under as "as provided for by the rules of" or "in accordance with").  Thus, looking at the language of and interaction between rule 11 and rule 410, the Court finds that rule 410 would not apply to Jim's acceptance of responsibility statement

Two other courts have addressed whether a statement made to the USPO is inadmissible under rule 410, and both held that rule 410 does not apply.  In United States v. Perez-Franco, the United States Court of Appeals for the First Circuit stated "we must inquire whether statements made to a probation officer in preparation for a presentence report are admissible" and held that "Fed.R.Evid. 410 does not offer protection to the defendant under such circumstances."  873 F.3d at 461.  The First Circuit focused on the fourth category of exclusions under rule 410, a statement made during plea discussions with an attorney for the prosecuting authority.  See United States v. Perez-Franco, 873 F.3d at 461.  Because the First Circuit found that rule 410 "has been consistently interpreted by the courts to protect only those statements made by the defendant to the prosecuting attorney himself," it found that rule 410 "would appear to offer a defendant no automatic protection from self-incriminating statements made to a probation officer . . . should the plea agreement fall through."  United States v. Perez-Franco, 873 F.3d at 461.  In United States v. Coverson, the United States District Court for the District of Alaska addressed circumstances similar to those before the Court.  There, the USPO prepared a PSR after the defendant entered a guilty plea, which he later withdrew.  See United States v. Coverson, 2011 WL 1044632, at *6.  The United States sought to

use three sentences from the PSR in a suppression hearing, and the defendant argued that rule 410 barred the use of such statements.  See United States v. Coverson, 2011 WL 1044632, at *6.  The District Court of Alaska held that "Rule 410 does not apply to the statements Coverson made to the probation officer," because those statements were not made: (i) at a change of plea hearing; (ii) during discussion of the plea agreement; or (iii) to the prosecutorial arm of the government.  United States v. Coverson, 2011 WL 1044632, at *7 (emphasis original).  The District Court of Alaska also noted that the defendant argued that, because his plea was withdrawn, the PSR should be withdrawn as well, but cited no authority in support.  See United States v. Coverson, 2011 WL 1044632, at *7.  These decisions support the Court's conclusion that rule 410 does not apply.

Furthermore, rule 11 governs pleas, not sentencing.  Rule 32 of the Federal Rules of Criminal Procedure governs sentencing and the USPO's presentence investigation.  The PSR is prepared for sentencing.  While the PSR may help the Court decide whether to accept a plea agreement, the plea was already accepted at the plea colloquy.  See Feb. 8, 2011 Tr. at 13:7-13 (Chief Judge Puglisi)("It is the finding of the Court in the case of United States versus Derrick Jim that the Defendant is fully competent and capable of entering an informed plea, he is aware of the nature of the charge and the consequences of his plea, his plea of guilty is knowing and voluntary and supported by an independent basis in fact containing each of the essential elements of the offense.").  The Court is not convinced that a statement to the USPO in preparing the PSR is "related" to the rule 11 process, which relates to pleas and which can be done before Magistrate Judges, and not to sentencing, which in felony cases, are done only by District Judges.

To expand rule 410 to cover statements other than those expressly listed in the rule's language could create mischief.  After a plea is accepted, defendants make statements in motions

to withdraw, in motions to withdraw counsel, in letters to the Court, and in statements to other prisoners, victims, or court personnel. The Court is reluctant to read rule 410 as covering some post-plea statements and not others. The Court therefore finds that the protections of rule 410 do not extend to statements made to the USPO. Although perhaps a consequence of pleading guilty, such statements are not part of the plea negotiations, plea colloquy, or plea agreement which rule 410 seeks to protect.

**IT IS ORDERED** that Defendant Derrick Ivan Jim's Opposed Motion in Lemini [sic] to Exclude All Admissions and Statements Made by Defendant in the Course of His Change of Plea to Guilty to Judge Paglisi [sic], in His Plea Agreement and to Probation, filed December 20, 2011 (Doc. 72), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Jack Burkhead
Mark T. Baker
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Lawrence E. Chacon
Albuquerque, New Mexico

  *Attorney for the Defendant*