# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                             No. CR 10-2653 JB

DERRICK IVAN JIM,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United States' Sentencing Memorandum, filed April 5, 2012 (Doc. 149)("USA Memorandum"); and (ii) the Defendant's Sentencing Memorandum and Objections and Comments to the Presentence Report, filed May 1, 2012 (Doc. 151)("Objections"). The primary issues are: (i) whether Defendant Derrick Ivan Jim inflicted serious bodily injury, under U.S.S.G. § 2A3.1(b)(4), on Jane Doe; (ii) whether the Court should modify the Presentence Investigation Report's, disclosed March 9, 2012 ("PSR"), factual section, because it reflects only Plaintiff United States of America's version of events; (iii) whether the Court should modify Jim's criminal history category, because one of his previous convictions was based on a guilty plea where Jim was unrepresented by counsel; (iv) whether the Court should depart downward on Jim's criminal history category under U.S.S.G. § 4A1.3; and (v) whether the Court should vary downward to a sentence of 5-years imprisonment. The Court will grant in part and deny in part the requests in the USA Memorandum and the Objections. The Court will overrule the United States' objection to the USPO's failure to apply an enhancement for serious bodily injury. The Court also will not sentence Jim to a lifetime sentence, because the 18 U.S.C. § 3553(a) factors do not support such a high sentence. The Court will grant the United States' request that it not vary

below the guideline range.  The Court will sustain in part and overrule in part Jim's objections to the factual allegations in paragraphs 8 to 33 of the PSR.  The Court will overrule Jim's objections to the USPO's calculation of his offense level and to his criminal history.  The Court will decline to exercise its discretion to depart downwards regarding Jim's criminal history category.  The Court will not vary downward and will sentence Jim to 360-months imprisonment.

## FACTUAL BACKGROUND

In 2003, Jim was convicted for driving under the influence of liquor or drug, as well as a traffic violation, and sentenced to 90 days jail suspended.  See PSR ¶ 52, at 14.  In 2004, Jim was convicted of driving while intoxicated ("DWI"), and abandonment or abuse of a child, and sentenced to 364 days in jail, with 320 days suspended.  See PSR ¶ 53, at 14.

Jim first met Doe on August 12, 2010 at her home.  See PSR ¶ 11, at 4.  Jim, Doe, and Doe's friends gathered outside her home socializing and drinking alcohol.  See PSR ¶ 11, at 4.  As the night progressed, Doe's friends noticed that Jim was following Doe as she went in and out of her home.  See PSR ¶ 12, at 4.  Sometime shortly after 1:00 a.m., Doe went inside her home and vomited.  See PSR ¶ 13, at 4.  When she emerged from the bathroom, she noticed Jim standing outside the bathroom door and then went to the couch to go to sleep.  See PSR ¶ 13, at 4.  She later opened her eyes, saw that the outside door was closed, and saw Jim standing over her.  See PSR ¶ 14, at 4.  Jim grabbed Doe's ankles and dragged her down the hall to her bedroom.  See PSR ¶ 14, at 5.  He removed her clothes, forced himself on her, and penetrated her vaginally and anally with his penis.  See PSR ¶ 14, at 5.  Doe testified that Jim caused her overwhelming pain, that she tried to fight him off, and that the struggle moved from her bedroom to the laundry room.  See PSR ¶ 15, at 5.  Jim fled out the laundry room door and headed north.  See PSR ¶ 16, at 5.

-2-

## PROCEDURAL BACKGROUND

On August 30, 2011, Jim was arrested for the sexual assault of Doe.  See Memorandum Opinion and Order at 1, filed November 22, 2011 (Doc. 53)("MOO").  A federal grand jury indicted Jim on one count of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a)(1), and 2246(2)(A).  See Redacted Indictment at 1, filed September 16, 2010 (Doc. 13)("Indictment").  On February 8, 2011, Jim and Plaintiff United States of America entered into a plea agreement, and Jim pled guilty to the Indictment in a plea colloquy before the Honorable Richard Puglisi, Chief United States Magistrate Judge.  See Plea Agreement at 1, filed February 8, 2011 (Doc. 25).

On September 19, 2011, Jim filed his Motion for an Order to Vacate the Sentencing and to Allow Defendant to Withdraw His Plea Agreement and to Proceed to Trial.  See Doc. 48 ("Motion to Withdraw Plea").  In his motion, Jim stated that, on September 10, 2011, he received a previously unavailable DNA report from the United States Attorney's Office ("USAO").  Motion to Withdraw Plea at 2. Jim asserted that he had new evidence that would impeach the alleged victim.  See Motion to Withdraw Plea at 2.  Jim also reiterated that he had previously written to the Court to state his concerns about the Plea Agreement and his former attorney, Federal Assistant Public Defender Jim Loonam.  See Motion to Withdraw Plea at 2.  The United States opposed the Motion to Withdraw Plea.  See United States' Response to Motion for an Order to Vacate the Sentencing and to Allow Defendant to Withdraw His Plea Agreement and Proceed to Trial, filed October 1, 2011 (Doc. 50). In its MOO, the Court determined that it should permit Jim to withdraw his guilty plea.  See MOO at 1.  The Court found that the United States Court of Appeals for the Tenth Circuit's seven-factor test, explained in United States v. Yazzie, 407 F.3d 1139 (10th Cir. 2005), weighed in favor of allowing withdrawal.  See MOO at 12.  The Court's decision relied on flaws in the plea colloquy before Chief Judge Puglisi, and the Court stated that it had doubts whether the plea entered during

-3-

the plea colloquy represented a knowing and voluntary waiver of Jim's rights.  See MOO at 22 ("[T]he Court thinks that the plea colloquy casts enough doubt on the knowing and voluntary nature of the plea that Jim has met his burden to establish a fair and just reason to withdraw his plea."). Additionally, the Court noted, in its MOO, that Jim's admissions during the plea colloquy might be admissible and used against him at trial.  See MOO at 24.

On December 1, 2011, a federal grand jury returned a Superseding Indictment charging Jim with two counts: (i) violations of 18 U.S.C. §§ 1153, 2241(a)(1), and 2246(2)(A), that Jim did knowingly engage in, or attempt to engage in, a sexual act with Doe, that being contact between his penis and her vulva, by using force; and (ii) violations of 18 U.S.C. §§ 1153, 2241(a)(1), and 2246(2)(A), that Jim did knowingly engage in, or attempt to engage in, a sexual act with Doe, that being contact between his penis and her anus, by using force.  See Doc. 58.  The Court held a jury trial from January 10, 2012 to January 13, 2012.  On January 13, 2012, the jury returned its verdict and found Jim guilty on both counts.  See Verdict at 1, filed January 13, 2012 (Doc. 136).

On March 9, 2012, the United States Probation Office ("USPO") disclosed a PSR for Jim. The USPO calculates a base offense level of 30 pursuant to U.S.S.G. § 2A3.1(a)(2).  See PSR ¶ 42, at 12.  The PSR then applies a 4-level enhancement, pursuant to U.S.S.G. § 2A3.1(b)(1), based on the offense involving conduct described in 18 U.S.C. § 2241(a).  See PSR ¶ 43, at 12.  The PSR also applies a 4-level enhancement, pursuant to U.S.S.G. § 2A3.1(b)(5), based on Jim abducting Doe. See PSR ¶ 44, at 12.  The USPO further enhances Jim's offense level 2 levels, pursuant to U.S.S.G. § 3A1.1(b)(1), because Doe was intoxicated and a vulnerable victim.  See PSR ¶ 45, at 12.  The USPO applies a 2-level enhancement, pursuant to U.S.S.G. § 3C1.1, based on Jim obstructing justice.  See PSR ¶ 47, at 13.  Because Jim put the United States to its burden of proof at trial, the USPO does not reduce his offense level for acceptance of responsibility.  See PSR ¶ 49, at 13.

Accordingly, Jim has a total offense level of 42.  See PSR ¶ 50, at 14.  The USPO calculates that Jim has a criminal history category of II, based on 2 criminal history points.  See PSR ¶ 54, at 15.  A total offense level of 42 and a criminal history category of II establishes a guideline imprisonment range of 360 months to life imprisonment.  See PSR ¶ 85, at 20.

On April 5, 2012, the United States filed its USA Memorandum.  See Doc. 149.  The United States first asserts that the USPO correctly determined that Jim falls in criminal history category II and that his base offense level is 30.  See USA Memorandum at 6.  It asserts that "Jim's convictions reflect a jury finding that he used force during the rape, the facts establish that he abducted Jane Doe during the course of that rape, and the record reflects that Jim caused Jane Doe to suffer serious bodily injury."  USA Memorandum at 7.  The United States contends that Jim's offense level must be increased 4-levels, pursuant to U.S.S.G. § 2A3.1(b)(1), because Jim was convicted of a violation 18 U.S.C. § 2241(a).  See USA Memorandum at 7.

The United States next argues that, although the USPO's guideline calculations were otherwise correct, the Court should increase Jim's offense level an additional 2 levels, because Jim caused Doe to suffer serious bodily injury.  See USA Memorandum at 8.  It notes that U.S.S.G. § 2A3.1(b)(4) provides that a defendant who causes serious bodily injury is subject to a 2-level enhancement.  See USA Memorandum at 8.  It asserts that, in applying this subsection, the United States Court of Appeals for the Tenth Circuit has held that a 2-level enhancement for serious bodily injury is appropriate where a rape victim suffers bruises and abrasions all over her body.  See USA Memorandum at 8 (citing United States v. Chee, 173 F.3d 864, 1999 WL 261017, at *7 (10th Cir. May 3, 1999)(unpublished table decision)).  It argues that evidence of serious bodily injury to Doe is considerably stronger, because: (i) Doe testified at trial that she was "overwhelmed by pain immediately after the rape"; (ii) the sexual assault nurse testified that Doe suffered from twenty-five

lacerations in an area covering 3.5 centimeters between her vaginal area and her anus; and (iii) she suffered bruising to her arms, legs, and back. USA Memorandum at 8-9. It asserts that the emergency room doctor who examined Doe testified that she was in severe distress when she came to the hospital that night. See USA Memorandum at 9.

The United States argues that the definition of serious bodily injury "makes it clear that the conduct a rape involves is so detrimental that it appropriately is deemed to have caused a victim serious bodily injury even in a case where the prosecution otherwise could not prove the harm satisfies the rest of the definition." USA Memorandum at 10. It points out that the application notes to U.S.S.G. § 2A3.1 provide that, "for the purposes of this guideline, 'serious bodily injury' means conduct other than criminal sexual abuse, which is taken into account in the base offense level under subsection (a)." USA Memorandum at 10 (citing U.S.S.G. § 2A3.1)(emphasis original). The United States contends that the United States Court of Appeals for the Eighth Circuit has interpreted this provision as follows:

> "'Serious bodily injury' means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, comment. (n.1)(i)). When the crime is sexual abuse, however, "'serious bodily injury' means conduct other than criminal sexual abuse, which already is taken into account in the base offense level." U.S.S.G. § 2A3.1, comment. (n.1). This does not mean that any injuries resulting from an episode of criminal sexual abuse are excluded -- only that the act of sexual abuse is insufficient by itself to support a § 2A3.1(b)(4)(B) enhancement.

USA Memorandum at 11 (citing United States v. Long Turkey, 342 F.3d 856, 858-59 (8th Cir. 2003))(emphasis original). The United States notes that the Court has previously addressed this issue in United States v. Peshlakai, 618 F.Supp.2d 1295 (D.N.M. 2007)(Browning, J.), and found that "the enhancement does not apply if the serious bodily injury arises out of the rape." USA Memorandum at 11. The United States argues that the Eighth Circuit's interpretation is more

consistent with the language and structure of the guidelines, as well as the relevant Tenth Circuit law, than the Court's decision in <u>United States v. Peshlakai</u>.  <u>See</u> USA Memorandum at 12.  It contends that the correct interpretation of the application note to U.S.S.G. § 2A3.1 prevents a defendant's conduct from "triggering the enhancement in every case involving convictions under § 2241 or § 2242, and instead limits the enhancement to those cases where the victim suffers 'serious bodily injury' that independently may be proved by a preponderance of the evidence." USA Memorandum at 12.  It asserts that the "strange use of the word 'conduct' only is appropriate in this context because 'conduct' alone is enough to cause courts generally to deem that a rape victim suffered serious bodily injury."  USA Memorandum at 13.

The United States argues that "[e]xperience and common sense teach that a rapist who . . . has caused his victim to suffer visible injuries that resulted in extreme, documented pain, should receive a longer sentence than a rapist who causes a lesser injury."  USA Memorandum at 13.  It further asserts that, "while there is every reason to believe that the base offense level under § 2A3.1(a) takes into account the conduct underlying a rape conviction, there is no reason to believe that it takes into account the actual injury to the victim." USA Memorandum at 14.  It contends that, because the trial evidence demonstrates that Doe suffered "serious bodily injury," the Court should apply a 2-level enhancement pursuant to U.S.S.G. § 2A3.1(b)(4)(B).  USA Memorandum at 17.

The United States asserts that, because Jim grabbed Doe and dragged her from her living room to the bedroom, he abducted her and is subject to a 4-level enhancement pursuant to U.S.S.G. § 2A1.3(b)(5).  <u>See</u> USA Memorandum at 17.  It also argues that Jim's offense level must be further increased under U.S.S.G. § 3A1.1(b), because Doe was a vulnerable victim as a result of her intoxication.  <u>See</u> USA Memorandum at 19.  The United States further contends that Jim perjured himself at trial and is therefore subject to a 2-level enhancement under U.S.S.G. § 3C1.1.  <u>See</u> USA

Memorandum at 20.  It asserts that "[m]ost of Jim's testimony about the night he raped the victim was demonstrably false and directly contradicts his prior sworn statements about the rape."  USA Memorandum at 20.  It argues that the obstruction-of-justice enhancement is applicable where a defendant perjures himself.  See USA Memorandum at 21 (citing U.S.S.G. § 3C1.1 cmt. n.4(b); United States v. Dunnigan, 507 U.S. 87, 96 (1993)).  It contends that there are no mitigating factors in this case and that only a prison term consistent with the sentencing guidelines will satisfy the purposes of sentencing.  See USA Memorandum at 27.  The United States asks that the Court sentence Jim to life imprisonment.  See USA Memorandum at 28.

On April 12, 2012, the USPO disclosed an Addendum to the Presentence Report ("Addendum to PSR").  In the Addendum to PSR, the USPO responds to the USA Memorandum and asserts that, under the application notes to U.S.S.G. § 2A3.1, the base offense level takes into consideration the violent nature of the rape.  See Addendum to PSR at 1.  The USPO argues that "serious bodily injury" means conduct other than criminal sexual abuse and that "[a]n enhancement may be appropriate if the victim's injuries are beyond what would normally be sustained from a forcible rape."  Addendum to PSR at 1.  It concludes that, because the injuries sustained were a result of and consistent with a forcible rape, the enhancement should not apply.  See Addendum to PSR at 1.

On April 5, 2012, Jim filed his Objections.  See Doc. 151.  Jim first argues that the Court should depart downward, pursuant to U.S.S.G. § 4A1.3, based on his criminal history category over-stating the seriousness of his criminal conduct or the likelihood that he will commit other crimes.  See Objections at 5 (citing U.S.S.G. § 4A1.3).  He asserts that his 2 criminal history points resulted from two misdemeanor convictions for driving under the influence of alcohol.  See Objection at 7-8.  He argues that a criminal history category of I more accurately reflects his convictions for relatively

minor infractions.  See Objections at 8 (citing United States v. Lacy, 99 F.Supp.2d 108, 119 (D. Mass. 2000)).  Jim next contends that he does not belong in the "'aggravating factors' category." Objections at 9.  He notes that both he and the victim were intoxicated at the time of the offense, and asserts that most of the evidence at the scene was not tested.  See Objections at 9.  He argues that, while he admits the seriousness of his conduct, what he did does not rise to the level of a violent forcible rape.  See Objection at 10.

With respect to his objections, Jim first objects to the USPO's notation that his education includes "some college," and asserts that he attended four semesters at Dine College before withdrawing because of transportation and financial problems.  Objections at 10.  Jim then objects to paragraphs 8 through 33, because they contain "representations that are different from what defendant and undersigned counsel recall the testimony to have been at trial."  Objections at 11.  He asserts that his general objections to these paragraphs are "that they are stated from the perspective of the government."  Objections at 11.  He contends that he testified truthfully and that he did not drag Doe from the living room to the bedroom.  See Objections at 11.  Jim next notes that Doe's victim impact statement is taken from the original PSR disclosed before he withdrew his guilty plea and argues that "the fact that she has not responded [to this PSR] appears to be a weak statement for a long jail term."  Objections at 12.  He generally objects to paragraphs 41 to 50, and specifically objects to paragraph 43, because he states that he did not drag Doe to her bedroom.  See Objections at 12.  With respect to paragraphs 52 and 53, Jim objects that, in case number M-147-DR-2003-0075, he had a blood alcohol content of .07 or .06, and that he entered his guilty plea without counsel.  See Objections at 13.  In answer to a series of questions which his attorney posed to him, Jim asserts that he did nothing wrong when he had sex with Doe and that the Court should be lenient with him because of his problem with alcohol.  See Objections at 15-16.  He asks that the Court vary

to an offense level of 24 and to sentence him to a 5-year prison term.  <u>See</u> Objections at 20.

On May 8, 2012, the United States filed the United States' Response to Defendant's Sentencing Memorandum and Objections and Comments to the Presentence Report.  <u>See</u> Doc. 152 ("USA Response").  The United States asserts that Jim's request for a sentence of five years is one-sixth of the term of imprisonment at the low end of the guidelines range and that "[s]uch a sentence would be a miscarriage of justice."  USA Response at 1.  It argues that there is no basis to vary downward.  <u>See</u> USA Response at 1.  It points out that, whether Jim's criminal history category is a I or a II, his guideline range remains the same.  <u>See</u> USA Response at 2.  It contends that there is no basis for the Court to depart downward pursuant to U.S.S.G. § 4A1.3(b), because "[n]o serious argument can be made that drunk driving is anything other than a serious misdemeanor," and because Jim committed his second conviction while on probation for the first and with two juveniles in the case.  USA Response at 2.

The United States then addresses Jim's argument that his offense should not be treated as a violent rape.  <u>See</u> USA Response at 3.  It argues that "this suggestion is outrageous and reveals a remarkable ability to cling to a lie even in the face of contrary proof."  USA Response at 3.  It asserts that "a rapist need not pull over bookcases, break bottles, upend couches, or even tear the sheets off of a bed to complete the crime."  USA Response at 3.  It argues that Jim tries to globally object to paragraphs 8 to 33, but that he fails to make the "specific allegations of factual inaccuracy" he must make to trigger the Court's fact-finding obligation under rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure.  USA Response at 4 (citing <u>United States v. Rodriguez-Delma</u>, 456 F.3d 1246, 1254 (10th Cir. 2006)).  The United States contends that the Court has both Doe's testimony at trial and Jim's prior sworn statements to establish that Jim dragged Doe from her living room to the bedroom.  <u>See</u> USA Response at 4.  It asserts that "Jim cannot avoid the fact that the

jury believed the victim's description of the rape and found him guilty beyond a reasonable doubt." USA Response at 5.

With regards to the calculation of Jim's objections to his offense level, the United States asserts that the only specific objection Jim makes is to paragraph 43 and that such objection fails as a matter of law.  See USA Response at 5.  It argues that the jury found Jim guilty of violating 18 U.S.C. § 2241(a), which makes a 4-level increase pursuant to U.S.S.G. § 2A3.1(b)(1) mandatory. See USA Response at 5-6 (citing United States v. Talk, 13 F.3d 369, 371-72 (10th Cir. 1993)).  It notes that Jim fails to "provide a specific allegation of factual inaccuracy for any of the other enhancements set forth in the PSR that would trigger the Court's obligation to resolve a factual dispute" and that he offers no response to the case law that the United States supplied to support each enhancement.  USA Response at 6 (citing United States v. Rodriguez-Delma, 456 F.3d at 1254).

The United States next argues that Jim's answers in his "four page question and answer session" are revealing, and demonstrate that the Court should not vary downward.  USA Response at 6.  It argues that Jim is not acknowledging any wrongdoing and that he continues to argue that he "somehow finds himself on the wrong end of a guilty verdict for forcible rape."  USA Response at 6.  It points out that Jim's statement that he "never tell[s] anything if its not true" is out of line with his inconsistent versions of what happened between him and Doe.  USA Response at 6-7.  The United States argues that "Jim never articulates how the Court could end up at the offense level of 24 in this case," and that "it appears that he simply cherry-picked the offense level that results in a guideline range extending just below and just above five years."  USA Response at 7.  It contends that the Court "could not grant a variance below 360 months without wholly ignoring one or more [of the] aggravating factors that make Jim's crimes as shocking as they are."  USA Response at 8.

On May 10, 2012, the USPO disclosed a Second Addendum to the Presentence Report ("Second Addendum") addressing Jim's Objections. The USPO first notes that, because Jim only completed eighteen hours of college credits at Dine College, "it is fair to state that he completed 'some college.'" Second Addendum at 1. With respect to Jim's objections to paragraphs 8 through 33, the USPO asserts that the information was derived from a summary of Jim's, Doe's, and other witnesses' testimony. See Second Addendum at 1. It argues that the Court heard Jim's testimony at trial and can assess Jim's statements in its consideration of an appropriate sentence. See Second Addendum at 1-2. The USPO contends that, when Jim was awaiting sentencing pursuant to his guilty plea, Doe stated that a prison sentence would be an appropriate sentence and that the victim's recommendation for a prison sentence is an opinion stated by the victim. See Second Addendum at 2. It asserts that a 4-level enhancement pursuant to U.S.S.G. § 2A3.1(b)(1) is mandatory, because Jim was convicted of violating 18 U.S.C. § 2241(a). See Second Addendum at 2. The USPO also argues that a 4-level enhancement for abduction, pursuant to U.S.S.G. § 2A3.1(b)(5), was appropriately applied, because Doe was forced to accompany Jim to a different location. See Second Addendum at 3. With respect to Jim's unrepresented conviction, the USPO asserts that the background note to U.S.S.G. § 4A1.3 provides that prior convictions, including unrepresented misdemeanors for which no prison time is served, should be counted in a defendant's criminal history score. See Second Addendum at 3.

The USPO then addresses Jim's request for a downward departure, pursuant to U.S.S.G. § 4A1.3, based on his criminal history category over-representing his criminal history and his likelihood of re-offending. See Second Addendum at 3. It argues that DWI infractions are serious and that such conduct is potentially dangerous. See Second Addendum at 4. It contends that, "[t]he defendant not only placed his life in danger, on at least two occasions, but he placed the lives of his

juvenile passengers in danger as well as endangering the community." Second Addendum at 4.  It notes that each arrest, including the crime for which he is being sentenced, was the result of Jim's intoxication.  See Second Addendum at 4.  Finally, the USPO argues that there is no reliable information which indicates that Jim's criminal history category substantially over-represents the seriousness of his criminal history.  See Second Addendum at 4.

The Court held a sentencing hearing on May 16, 2012.  The Court first took up the United States' objection to the USPO's failure to apply a 2-level enhancement for serious bodily injury. See Transcript of Hearing at 3:6-11 (May 16, 2012)(Court)("Tr.").[1]  The United States asserted that it was asking the Court to revisit an issue it previously decided in United States v. Peshlakai and stated that it did not do so lightly.  See Tr. at 3:13-4:2 (Baker).  It argued that the bodily injury in this case was serious and that nothing in the sentencing guidelines requires that a serious bodily injury be separate and apart from the rape.  See Tr. at 4:3-8 (Baker).  It contended that, where a serious bodily injury has independently occurred, the enhancement must still apply.  See Tr. at 4:9-20 (Baker).  The United States further asserted that, when the Court takes the guidelines' plain language, the Tenth Circuit's holding in United States v. Chee, and the Eighth Circuit's reasoning, the Court should reach the conclusion that, where a serious bodily injury can be independently proved, the enhancement must apply.  See Tr. at 5:4-11 (Baker).  Jim asserted that the USPO had examined this issue and determined that the enhancement was not applicable.  See Tr. at 5:17-19 (Chacon).  He stated that he agreed with the USPO's position.  See Tr. at 5:19 (Chacon).

The Court then turned to Jim's Objections.  See Tr. at 20:12-15 (Court).  The Court stated that it appeared the best way to address Jim's factual objections to paragraphs 8 to 33 would be to

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

say that the Court relied on its interpretation of the trial testimony, but recognizes that Jim recalls the night as he testified at trial. See Tr. at 20:17-21:1 (Court). Jim agreed that this solution would state his position accurately and address his objections to the PSR's recitation of his offense conduct. See Tr. at 21:2-4 (Chacon). The United States and the USPO agreed that this solution was acceptable. See Tr. at 21:9-10 (Court, Baker, Probation Officer). The Court then turned to Jim's argument that it should depart downward on his criminal history category. See Tr. at 21:15-19 (Court). Jim asserted that both of his convictions were for DWI, and that for the first conviction he had a low breath score and for the second he did not have an attorney present. See Tr. at 21:20-23 (Chacon). He argued that together his convictions do not amount to criminal history category of II and he asked that the Court depart downward to a criminal history category of I. See Tr. at 22:2-8 (Chacon). The United States contended that the standard for a departure pursuant to U.S.S.G. § 4A1.3 requires that the criminal history category substantially over-represent the defendant's criminal history. See Tr. at 22:13-15 (Baker). It asserted that there is no colorable argument that a criminal history category of II over-represents Jim's criminal history and that the sentencing proceeding was not the appropriate forum to collaterally attack his underlying convictions. See Tr. at 22:15-19 (Baker). It argued that it is difficult to see how a drunk driving offense is anything other than a very serious offense and that it should carry consequences, such as a higher criminal history score. See Tr. at 23:4-11 (Baker). Jim asserted that the Court has to ask whether Jim was really impaired with a blood alcohol content of .06 and .07, and argued that, if he had counsel present, he would not have been found guilty. See Tr. at 27:22-28:6 (Chacon). The United States responded that Jim admitted his guilt and he would be the person most likely to know whether he was impaired. See Tr. at 28:10-18 (Baker). It argued that it was not in a position to relitigate the DWI conviction and that Jim should not be able to back-pedal from his guilty plea to that offense at this time. See

Tr. at 28:19-22 (Baker).

With respect to Jim's objection to Doe's victim impact statement, the Court asked whether it would be appropriate for the Court to overrule the objection without prejudice to him using that argument in support of a variance. See Tr. at 33:15-24 (Court). Jim and the United States agreed that this approach was appropriate. See Tr. at 33:25-34:2 (Court, Chacon, Baker). Turning to Jim's objections to paragraphs 41 through 50, the Court stated that Jim did not state any specific objections to those paragraphs, other than to paragraph 43, and that the Court was inclined to overrule those objections. See Tr. at 34:6-12 (Court). The Court also stated that it was inclined to overrule Jim's objection to paragraph 43, because the enhancement is mandatory based on Jim's conviction for violating 18 U.S.C. § 2241(a). See Tr. at 34:8-9 (Court). Neither Jim nor the United States had any argument regarding those objections, and Jim did not object to the Court overruling those objections. See Tr. at 34:13-17 (Court, Chacon, Baker).

Jim then argued in support of a variance. See Tr. at 35:3-7 (Court, Chacon). Jim asserted that he did not want to "nitpick" the facts as the USPO has stated them, but noted that he disagrees with most of the USPO's interpretation of the facts. Tr. at 35:15-21 (Chacon). He stated that the biggest point of disagreement was the factual assertion that he dragged Doe from the living room to the bedroom. See Tr. at 35:21-24 (Chacon). He argued that the testimony regarding those facts was puzzling, because nothing in the house was disturbed, and suggested that the identity of the person who locked the door never became clear. See Tr. at 35:25-36:5 (Chacon). Jim argued that the Court should not impose a guideline sentence and asked that the Court vary downward from the guidelines. See Tr. at 36:14-16 (Chacon). He asserted that he withdrew from the Plea Agreement which would have put him in a 13 to 15 year guideline range. See Tr. at 36:17-21 (Chacon). He contended that he testified truthfully, that he is a decent man, and that the sentence which the United

States requests is excessive.  See Tr. at 36:22-37:2 (Chacon).  The Court then asked how Jim arrived at a variance to a sentence of five years.  See Tr. at 37:3-5 (Court).  Jim responded that he asked for a sentence of five years, because he would then do five years in prison and be subject to another five years of supervised release, which would subject him to the Court's jurisdiction for a total of ten years.  See Tr. at 37:6-10 (Chacon).  He asserted that his days of drinking are over and that alcohol was the root of his problems.  See Tr. at 37:10-16 (Chacon).  He argued that he stood before the Court remorseful, but maintained that he had a different interpretation of what happened on the night in question.  See Tr. at 38:9-12 (Chacon).  He contended that the supervision provided on supervised release was sufficient to correct his behavior.  See Tr. at 38:12-17 (Chacon).  Jim asked that the Court vary to a total offense level of 24 to achieve a sentence of five years.  See Tr. at 38:18-20 (Chacon).  He argued that Doe did not suffer permanent physical injuries and that, although she may suffer some emotional injuries, it does not appear that she has pursued counseling.  See Tr. at 38:20-39:1 (Chacon).  He admitted that the jury convicted him, and convicted him of using force, but contended that it is unclear where on the spectrum that force lies.  See Tr. at 39:6-19 (Chacon).

Doe then allocuted before the Court.  See Tr. at 41:13-15 (Baker).  Doe stated that she still has nightmares about what happened to her and that the events of that night have effected her whole life.  See Tr. at 41:18-42:8 (Doe).  She asserted that she has struggled to speak about the rape and that the rape is always going to be something in the back of her mind -- it is not something she can get just get over.  See Tr. at 42:8-19 (Doe).

The United States admitted that there are some cases where it is a good thing that the guidelines are no longer mandatory, but asserted that this case is not one where a variance is appropriate.  See Tr. at 42:23-43:1 (Baker).  It argued that the crime of rape is second in seriousness only to murder and that this crime is a young woman's nightmare.  See Tr. at 43:5-7 (Baker).  It

contended that the Court needed to take the seriousness of this crime into consideration when it imposes a sentence.  See Tr. at 43:17-21 (Baker).  It further requested that the Court look at the injuries Doe suffered in determining whether any sentence less than 360 months would be sufficient and argued that it is not.  See Tr. at 44:1-5 (Baker).  The United States asserted that each of the enhancements that the USPO has applied, and the injuries that Doe suffered, make this case a serious one, even if the guidelines had never existed.  See Tr. at 44:5-10 (Bakes).  It contended that Jim used force and that the images of the damage to Doe's body make clear what happened to her.  See Tr. at 44:10-18 (Baker).  It asserted that the idea that Jim would continue to state that his crime was victim-initiated consensual sex is "beyond the pale" and demonstrates that he feels no remorse.  Tr. at 44:18-21 (Baker).  It further asserted that Doe suffered serious injuries, that Jim lied at trial, and that Jim cannot run away from the evidence that proved his guilt beyond a reasonable doubt.  See Tr. at 46:2-16 (Baker).  The United States argued that the Court should not vary downward and that it would be inappropriate for the Court to use the guideline range from the previous Plea Agreement as a benchmark, because he withdrew from that agreement and put the United States to its burden of proof at trial.  See Tr. at 46:22-47:8 (Baker).  It maintained that a life sentence remains an appropriate sentence and that there are no circumstances which would justify varying below the guideline range.  See Tr. at 47:19-48:2 (Baker).  The United States argued that it was offensive for Jim to question how Doe reacted to the rape, and that what Doe has done, in terms of her testimony and pursuit of this case, is extraordinary.  See Tr. at 48:3-15 (Baker).

## LAW REGARDING U.S.S.G. § 2A3.1(b)(1)

U.S.S.G. § 2A3.1 deals with "Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse."  The statutory provisions involved are 18 U.S.C. §§ 2241 and 2242.  Section 2241 of Title 18 of the United States Code, which involves the crime of aggravated sexual abuse, requires the

defendant to have knowingly caused another to engage in a sexual act: (i) by using force against that other person; or (ii) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping.  Section 2242 of Title 18, in contrast, defines sexual abuse as causing another person to engage in a sexual act by threatening or placing that other person in fear "other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping."

In United States v. Talk, the defendant was convicted of committing rape on Indian land in the United States District Court for the District of New Mexico.  The district court did not apply a 4-level upward adjustment for use of force in connection with the rape, because "the actions of the defendant were not at a level or degree that would justify a four-level adjustment pursuant to 2A3.1(b)(1)."  United States v. Talk, 13 F.3d at 372.  The district court interpreted U.S.S.G. § 2A3.1(b)(1) to mean that, even though a defendant is convicted under 18 U.S.C. § 2241, "an upward adjustment is warranted only if there existed some degree of force that exceeded the 'average' force necessary to rape someone."  United States v. Talk, 13 F.3d at 372.  The Tenth Circuit stated that while it

> emphathize[d] with the district court's efforts to fashion a just sentence, the official commentary to the Guidelines is clear: "The base offense level represents sexual abuse as set forth in 18 U.S.C. § 2242.  An enhancement is provided for use of force; threat of death, serious bodily injury, or kidnapping; or certain other means as defined in 18 U.S.C. § 2241."

United States v. Talk, 13 F.3d at 372 (quoting U.S.S.G. § 2A3.1, cmt. background).  The Tenth Circuit held that: "We read this commentary to mean that a four-level upward adjustment is mandatory for all defendants convicted under 18 U.S.C. § 2241."  United States v. Talk, 13 F.3d at 372 (citing United States v. Bordeaux, 997 F.2d 419, 420 (8th Cir. 1993)).  The Tenth Circuit then found that the district court had erred in failing to apply such a mandatory upward adjustment, and

-18-

remanded the case with instructions to vacate the sentence and resentence in accordance with the appellate opinion.  See United States v. Talk, 13 F.3d at 372.

In United States v. Pena, 216 F.3d 1204  (10th Cir. 2000), the defendant pled guilty to two counts of aggravated sexual abuse, and the Honorable C. LeRoy Hansen, Jr., United States District Judge, gave the defendant a sentence that included enhancements under the sentencing guidelines based on use of force.  See 216 F.3d at 1207.  The Tenth Circuit affirmed.  See United States v. Pena, 216 F.3d at 1212.  The Tenth Circuit held that application of enhancements for use of force did not constitute impermissible "double counting," because enhancements serve distinct purposes and are aimed at different harms.  United States v. Pena, 216 F.3d at 1209-10.

## LAW REGARDING U.S.S.G. § 2A3.1 AND SERIOUS BODILY INJURY

U.S.S.G. § 2A3.1, the guideline for "Criminal Sexual Abuse" also allows an enhancement for "serious bodily injury." U.S.S.G. § 2A3.1(b)(1). U.S.S.G. § 2A3.1(b)(4) states: "(A)If the victim sustained permanent or life-threatening bodily injury, increase by 4 levels; (B) if the victim sustained serious bodily injury, increase by 2 levels; or (C) if the degree of injury is between that specified in subdivisions (A) and (B), increase by 3 levels."   The application notes to U.S.S.G. § 2A3.1 state that, for purposes of this guideline, "'serious bodily injury' [has] the same meaning given those terms in Application Note 1 of the Commentary to § 1B1.1."  U.S.S.G. §1B1.1 cmt. n.1(L).  The application notes establish:

> Serious bodily injury means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. In addition, 'serious bodily injury' is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. 2241 or 2242 or any similar offense under state law.

U.S.S.G. § 1B1.1 cmt. n.1(L).  Before 1997, the commentary to U.S.S.G. § 2A3.1 cmt. n.1, stated

-19-

that: "'permanent or life-threatening bodily injury,' and 'serious bodily injury' have the meaning given those terms in Application Note 1 of the Commentary to § 1B1.1 (Application Instructions)." United States v. Peshlakai, 618 F.Supp.2d at 1315.  In 1997, the Committee added a sentence.  The application notes to U.S.S.G. § 2A3.1 now states that, for the purposes of the crime of aggravated sexual abuse, "'serious bodily injury' means conduct other than criminal sexual abuse, which already is taken into account in the base offense level under subsection (a)."  U.S.S.G. § 2A3.1, app. n. 1 (emphasis added).

    In United States v. Chee, the Tenth Circuit, without lengthy discussion, found that the district court did not err in applying the U.S.S.G. § 2A3.1(b)(4) enhancement, because a doctor and nurse testified that they found bruises and abrasions all over the victim's body, and because the "government introduced photographs showing the wounds into evidence."  1999 WL 261017, at *7. The Tenth Circuit did not, however, further describe the injuries that the victim suffered in that case or state whether an enhancement under U.S.S.G. § 2A3.1(b)(1) applied.  In United States v. Estep, 138 F.App'x 113 (10th Cir. 2005)(unpublished), the Tenth Circuit found that the district court did not err in applying the U.S.S.G. § 2A3.1(b)(4) enhancement, because "the record ma[de] clear the government introduced overwhelming evidence proving Mr. Estep caused his victim serious bodily injury by repeatedly striking her in the head with a rock."  United States v. Estep, 138 F.3d at 118. In United States v. Martin, 528 F.3d 746 (10th Cir. 2008), the Tenth Circuit affirmed the application of a 4-level enhancement pursuant to U.S.S.G. § 2A3.1(b)(4)(A), when the victim sustained permanent or life-threatening bodily injury, and held that "[t]he crime is using force to procure sex, so this enhancement includes injuries sustained because the rapist was beating the victim into submission."  528 F.3d at 755 (citing United States v. Bell, 367 F.3d 452, 470 (5th Cir. 2004)).

    In United States v. Guy, the Eighth Circuit found a district court had erred in using U.S.S.G.

-20-

§ 1B1.1 cmt. n.1(J), to enhance a defendant's sentence for aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(c) and 1153. See 282 F.3d at 992, 996. The victim in that case was raped, which resulted in a pregnancy. See United States v. Guy, 282 F.3d at 992. The Eighth Circuit noted that, in 1997, the Sentencing Commission amended U.S.S.G. § 1B1.1 cmt. n.1(J), "making it clear that the definition of serious bodily injury can now include a non immediate bodily or mental impairment resulting from a rape." United States v. Guy, 282 F.3d at 994. The Eighth Circuit also explained:

> The deeming provision, in combination with the restriction in § 2A3.1, appears to have been intended to make an enhancement for serious bodily injury automatically available if the offender's conduct underlying his conviction for another type of offense also involved criminal sexual abuse, but not if the conviction is for sexual abuse.

United States v. Guy, 282 F.3d at 996. The Eighth Circuit argued that "the Commission provided that the same conduct would not automatically determine both the base offense level for a criminal sexual abuse offense and an enhancement for serious bodily injury, a specific offense characteristic."

United States v. Guy, 282 F.3d at 996. The Eighth Circuit affirmed the district court's enhancement based upon serious bodily injury:

> We conclude that the extensive findings made by the district court on remand are supported by the evidentiary record and are more than sufficient to justify application of the serious bodily injury enhancement in § 2A3.1(b)(4)(B). The evidence shows that [the victim] suffered extreme physical pain during her labor and delivery which was made difficult by her small frame and resulted in a complete tear of the wall between the vagina and the rectum and severe hemorrhaging. Her depression and PTSD were well documented and lasted from the time of the rape in October 1999 until at least March 2001, constituting a protracted impairment of the function of her mental faculty. Since this evidence and these findings are sufficient to support the court's ultimate finding, that as a direct result of [the defendant]'s crime [the victim] suffered serious bodily injury within the meaning of § 1B1.1, we need not consider the other grounds relied on by the district court. We conclude that the district court did not err by applying the enhancement for serious bodily injury.

United States v. Guy, 340 F.3d at 658-659. The Eighth Circuit reiterated that "[c]ommentary by the Sentencing Commission makes it clear that provision [USSG § 1B1.1, comment. (n.1(j)June 21,

2012)] may not be used in sentencing a defendant for criminal sexual abuse if the same conduct that would support the enhancement has already been taken into account in setting the base offense level." United States v. Guy, 340 F.3d at 657 (alteration in original). The Eighth Circuit has held that, when the crime is sexual abuse, the United States Sentencing Commission's warning that it means "conduct other than criminal sexual abuse . . . does not mean that any injuries resulting from an episode of criminal sexual abuse are excluded." United States v. Long Turkey, 342 F.3d at 858-59. It has recognized that injuries related to the trauma of criminal sexual abuse, such as vaginal and perineal tears, are sufficient serious bodily injury to apply the enhancement in U.S.S.G. § 2A3.1(b)(4). See United States v. Kills in Water, 293 F.3d 432, 436 (8th Cir. 2002); United States v. Bruguier, 161 F.3d 1145, 1148, 1153 (8th Cir. 1998).

Although few circuits outside of the Eighth and the Tenth Circuits have more than one case discussing the application of U.S.S.G. § 2A3.1(b)(4), most of the cases that the Court located discussed serious bodily harm outside of the injuries associated with the physical penetration. In United States v. Bell, the United States Court of Appeals for the Fifth Circuit stated that, although it was unclear how to resolve the "inconsistency" between the application notes to U.S.S.G. § 2A3.1 and U.S.S.G. § 1B1.1, the § 2A3.1(b)(4) enhancement applied, because "there was additional evidence, other than the rape, that Jim's face was swollen as though he had been beaten." 367 F.3d at 470. In United States v. Scott, 434 F.App'x 155 (3d Cir. 2011)(unpublished), the United States Court of Appeals for the Third Circuit applied the enhancement where the defendant pled guilty to conspiracy and the record was "replete with testimony of victims who had broken bones, concussions, and deep lacerations from beatings they suffered at the hands of co-conspirator pimps." 434 F.App'x at 157. In United States v. Pleasant, 12 F.App'x 262 (6th Cir. 2001)(unpublished), the United States Court of Appeals for the Sixth Circuit affirmed a district court's application of the

U.S.S.G. § 2A3.1(b)(4) enhancement, based on "extreme physical pain," where photographs of Armstrong's bruises and testimony were introduced which "belie[d] defendant's claim that there was no evidence that Armstrong suffered extreme physical pain."  12 F.App'x at 269.

In United States v. Peshlakai, the Court narrowly interpreted U.S.S.G. § 2A3.1(b)(4) and held that courts should apply the enhancement when the serious bodily injury was "caused by conduct not involved in the sexual abuse."  618 F.Supp.2d at 1319.  Applying that standard to the facts before it, the Court found that the United States had failed to show, by a preponderance of the evidence, "that the victim's injury was the result of conduct after, or separate from, what constitutes the sexual abuse," and that the "beating and tackling appear[ed] to be the res gestae of the crime." United States v. Peshlakai, 618 F.Supp.2d at 1328.  The Court also rejected the more lenient standard advanced by the Eighth Circuit, which adopted a standard that allows an enhancement when the injury arises out of the conduct that gives rise to the sexual abuse.  See United States v. Peshlakai, 618 F.Supp.2d at 1319.

## CHALLENGES TO PRIOR CONVICTIONS AT SENTENCING

In Custis v. United States, 511 U.S. 485 (1994), the Supreme Court of the United States found that, for purposes of the penalty enhancements for prior convictions that the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e), imposes, a defendant in a federal sentencing proceeding has no right to collaterally attack the validity of his previous state convictions, with the sole exception of convictions obtained in violation of the right to counsel.  See Custis v. United States, 511 U.S. at 487.  The Supreme Court explained:

> There is thus a historical basis in our jurisprudence of collateral attacks for treating the right to have counsel appointed as unique, perhaps because of our oft-stated view that "the right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel."

511 U.S. at 494-95 (quoting Powell v. Alabama, 287 U.S. 45 (1932)).  In Burgett v. Texas, 389 U.S. 109 (1967), the Supreme Court held that the admission of a prior criminal conviction which is constitutionally infirm under the standards of Gideon v. Wainwright, 372 U.S. 335 (1963), is inherently prejudicial and that to permit use of such a tainted prior conviction for sentence enhancement would undermine the principle of Gideon v. Wainwright.  See Burgett v. Texas, 389 U.S. at 115 ("Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.").

In United States v. Garcia, 42 F.3d 573 (10th Cir. 1994), the Tenth Circuit, relying upon the Supreme Court's holding in Custis v. United States, held that, in a sentencing proceeding under the guidelines, a defendant may not collaterally attack a prior conviction except on the ground of a complete denial of counsel.  See 42 F.3d at 581.  The Tenth Circuit has since consistently held that, with the exception of a collateral attack based on complete denial of counsel, a district court cannot consider a collateral attack on a prior conviction when sentencing a defendant.  In United States v. Cousins, 455 F.3d 1116 (10th Cir. 2006), the Tenth Circuit stated:

> [A]n exception to this general rule [barring collateral attacks of prior convictions] at sentencing is that challenges to the constitutionality of a conviction based upon a violation of the right to counsel are permitted in sentencing proceedings, even though the defendant is attacking the prior state conviction collaterally in federal court.

455 F.3d at 1125.  See United States v. Delacruz-Soto, 414 F.3d 1158, 1167 (10th Cir. 2005)(holding that, "with the exception of a collateral attack based on the complete denial of counsel, a district court sentencing a defendant under 8 U.S.C. § 1326(b)(2) and U.S.S.G. § 2L1.2(b)(1)(A) cannot consider a collateral attack on a prior conviction"); United States v. Cruz-Alcala, 338 F.3d at 1197 (stating the holding of United States v. Garcia).

-24-

1.     __Waiver of the Right to Counsel__.

 It is well established that a defendant has a constitutional right to waive his right to counsel.

See United States v. Molina-Barajas, 47 F.App'x 552, 555 (10th Cir. 2002)(citing United States v.

Windle, 74 F.3d 997, 1001 (10th Cir. 1996)).  If a defendant validly waives his right to counsel, the

waiver precludes the defendant from collaterally attacking the conviction.  See United States v.

Molina-Barajas, 47 F.App'x at 555 ("Further, if defendant entered into a valid waiver [of his right

to counsel], the waiver precludes him from collaterally attacking the California conviction." (citing

United States v. Windle, 74 F.3d at 1001)).

The Tenth Circuit has consistently held:

> A defendant's waiver of his right to counsel is valid only if it is knowing and
> intelligent; the waiver is knowing and intelligent only if the trial court informs the
> defendant on the record of the nature of the charges against him, the possible
> punishments and defenses, and the dangers and disadvantages of self-representation.

Munkus v. Furlong, 170 F.3d 980, 983 (10th Cir. 1999)(citations omitted).  See United States v.

Willie, 941 F.2d 1384, 1388 (10th. Cir. 1991)("[T]o be valid, the trial judge must ensure that the

waiver . . . is an intentional relinquishment . . . of a known right . . . .  Ideally, . . . the record

[should] demonstrate that the defendant [knows] the nature of the charges, the range of allowable

punishments and possible defenses, and . . . the risks of proceeding pro se."); United States v.

Silkwood, 893 F.2d 245, 248 (10th Cir. 1989)(stating that, for a waiver of counsel to be knowing

and intelligent, the court must conduct a "comprehensive examination into the defendant's

apprehension of the nature of the charges, the statutory offenses included within them, the range of

allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation

thereof, and all other facts essential to a broad understanding of the whole matter.").

2.    **Presumption of Regularity.**

The Supreme Court has held that there is a "'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights."  Parke v. Raley, 506 U.S. 20, 29 (1992)(quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).  In Parke v. Raley, the defendant, who was charged as a persistent felony offender, argued that two of the convictions offered against him were invalid under Boykin v. Alabama, 395 U.S. 238 (1969), because the records for the convictions did not contain transcripts of the plea proceedings and therefore did not affirmatively show that his guilty pleas were knowing and voluntary.  See 506 U.S. at 23.  The Supreme Court stated:

> On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights.  In this situation, Boykin does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained.

Parke v. Raley, 506 U.S. at 30.  The Supreme Court thus found that, "even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." Parke v. Raley, 506 U.S. at 31 (citation omitted).

3.    **Overcoming the Presumption of Regularity.**

The Tenth Circuit in United States v. Duarte-Gutierrez, 129 F.App'x 440 (10th Cir. 2005)(unpublished) stated:

> Once the existence of a conviction is established, the presumption of regularity attaches and we assume that the convicting court complied with the law in all respects, including the requirements for establishing a waiver of the right to counsel. The government is not required to offer any evidence of compliance; Defendant must prove noncompliance.

-26-

129 F.App'x at 443.  "To overcome this presumption and bar the use of a prior conviction for sentence enhancement, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm."  United States v. Krejcarek, 453 F.3d 1290, 1297 (10th Cir. 2006)(citing United States v. Windle, 74 F.3d 997, 1001 (10th Cir. 1996)).  See United States v. Cruz-Alcala, 338 F.3d 1194, 1197 (10th Cir. 2003)("Once the prosecution establishes the existence of a conviction, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm." (emphasis in original)(internal quotation marks omitted)).

"[A] defendant may not simply point to a silent or ambiguous record, but must come forward with affirmative evidence establishing that the prior convictions were obtained in violation of the Constitution."  United States v. Cruz-Alcala, 338 F.3d at 1197.  "Self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded prior convictions."  United States v. Krejcarek, 453 F.3d at 1297 (quoting Cuppett v. Duckworth, 8 F.3d 1132, 1139 (7th Cir. 1993)(en banc)).  See United States v. Wicks, 995 F.2d 964, 978 (10th Cir. 1993)("Self-serving conclusory statements would be unavailing, of course.").  In addition, "[t]he fact one jurisdiction may utilize a different docketing or record keeping system than another does not prove by a preponderance of the evidence [that the defendant] did not waive his right to counsel."  United States v. Sanchez, 230 F. App'x 803, 807-08 (10th Cir. 2007).

In United States v. Wicks, the Tenth Circuit found that the defendant did not prove by a preponderance of the evidence that his "guilty pleas were actually involuntary or unknowing."  995 F.2d at 978 (emphasis in original).  The defendant did not submit proof that his plea was unknowing or involuntary -- except for proof that there was an incomplete record of the plea proceedings in state court.  See United States v. Wicks, 995 F.2d at 979.  The Tenth Circuit stated:

> At a minimum, . . . a defendant pointing to a silent or missing record of a prior plea proceeding must begin by also submitting an affidavit or its equivalent asserting that the defendant's plea was in fact not voluntary or was lacking the necessary understanding, and specifying in detail the factual support for such assertion. Self-serving statements would be unavailing, of course. Affidavits or testimony by judges, government and defense attorneys, probation officers, and others involved in and knowledgeable about the challenged proceedings, and directly supporting the defendant's position, would be probative.

United States v. Wicks, 995 F.2d at 978-79. The facts available to the Tenth Circuit showed that counsel represented the defendant, which the Tenth Circuit stated "strongly suggests an informed and voluntary plea." United States v. Wicks, 995 F.2d at 979. The Tenth Circuit found that the defendant's pleas were voluntary and knowing, based on the evidence before it, and on the defendant's failure to prove that his guilty pleas were unknowing and involuntary. See United States v. Wicks, 995 F.2d at 979.

In United States v. Quintana-Ponce, 129 F. App'x 473 (10th Cir. 2005)(unpublished), the Tenth Circuit found that the defendant did not meet his burden to overcome the presumption of regularity. See 129 F.App'x at 475. At his sentencing, the defendant offered testimony that he was not represented by counsel and did not knowingly waive his right to counsel in the state court proceedings at issue. See United States v. Quintana-Ponce, 129 F.App'x at 475. After considering the defendant's testimony, the district court implicitly found he was not credible and ruled that he had validly waived his right to counsel in the earlier cases, stating: "[T]aking [the defendant's] proffer at face value and weighing that against his significant history associated with the criminal courts in that area . . . I don't believe that he has overcome the presumption of regularity that attaches to final Judgments." United States v. Quintana-Ponce, 129 F.App'x at 475 (quoting the district court sentencing transcript). The Tenth Circuit deferred to the district court's credibility determination and found no error in the district court considering the conviction in the defendant's

criminal history.  See United States v. Quintana-Ponce, 129 F.App'x at 475.

In United States v. Cruz-Alcala, the Tenth Circuit found that the defendant "failed to establish that his prior . . . convictions [were] constitutionally infirm."  338 F.3d at 1197.  The record contained waiver forms for the defendant's convictions, which stated that the defendant understood that he had the right to be represented, and that he understood the dangers and disadvantages of giving up his right to a lawyer.  See United States v. Cruz-Alcala, 338 F.3d at 1198.  The defendant had initialed the waiver forms, and a translator had signed the forms, verifying that she translated the forms to the defendant.  See United States v. Cruz-Alcala, 338 F.3d at 1198.  In addition, the judge signed the forms, stating that the court reviewed the forms and found that the defendant "expressly, knowingly, understandingly and intelligently waived his . . . constitutional rights."  United States v. Cruz-Alcala, 338 F.3d at 1198.  The defendant's

> evidence that he did not waive his right to counsel in the prior proceedings consisted solely of his testimony at the sentencing hearing that he had neither seen nor signed the waiver forms for the DUI convictions (although he admitted he was guilty of those offenses and had used the name "Modesto Martinez" in the DUI proceedings); that an interpreter had never read those documents to him; and that no one had ever told him that he had the right to the assistance of counsel in the DUI cases. Defendant did not testify at all about the waiver of rights at the proceeding for the petty-theft conviction. After hearing all the evidence, the district court found that Defendant's testimony was not credible, and ruled that Defendant had validly waived his right to counsel in the earlier cases.

United States v. Cruz-Alcala, 338 F.3d at 1198.  The Tenth Circuit deferred to the district court's credibility determination and upheld the district court's use of the convictions to enhance the defendant's sentence.  See United States v. Cruz-Alcala, 338 F.3d at 1198.

## ANALYSIS

The Court will grant in part and deny in part the requests in the USA Memorandum.  The Court will overrule the United States Objection to the USPO's failure to apply an enhancement for

-29-

serious bodily injury.  The Court also will not sentence Jim to a lifetime sentence, because the 18 U.S.C. § 3553(a) factors do not support such a high sentence.  The Court will sustain in part and overrule in part Jim's objections to the factual allegations in paragraphs 8 to 33 of the PSR.  It will overrule Jim's objections to the USPO's calculation of his offense level and to his criminal history. The Court will decline to exercise its discretion to depart downwards regarding Jim's criminal history category.  The Court will not vary downward and will sentence Jim to 360-months imprisonment.

I.  **THE COURT WILL OVERRULE THE UNITED STATES' OBJECTION TO THE FAILURE TO APPLY A 2-LEVEL "SERIOUS BODILY INJURY" ENHANCEMENT.**

U.S.S.G. § 2A3.1, which covers criminal sexual abuse, provides that, "if the victim sustained serious bodily injury, increase by two levels."  U.S.S.G. § 2A3.1(b)(4)(B).  Application note 1 indicates that, for the purposes of this guideline, serious bodily injury means "conduct other than criminal sexual abuse, which is taken into account in the base offense level under subsection (a)." U.S.S.G. § 2A3.1 cmt. n.1.  In United States v. Peshlakai, the Court narrowly interpreted U.S.S.G. § 2A3.1(b)(4) and held that courts should apply the enhancement when the serious bodily injury was "caused by conduct not involved in the sexual abuse."  618 F.Supp.2d at 1319.  The Court also rejected the more lenient standard advanced by the Eighth Circuit, which adopted a standard that allows an enhancement when the injury arises out of the conduct that gives rise to the sexual abuse. See United States v. Peshlakai, 618 F.Supp.2d at 1319.  The Court wrestled with the wording of the application note to U.S.S.G. § 2A3.1, which provides that "'serious bodily injury' means conduct," U.S.S.G. § 2A3.1 cmt. n.1 (emphasis added), and the application note to U.S.S.G. § 1B1.1, which provides the definition for serious bodily injury and states that "'serious bodily injury' means injury," U.S.S.G. § 1B1.1 cmt. n.1 (emphasis added).  The Court found that U.S.S.G. § 2A3.1's

"focus on conduct is instructive," that such language excluded from the Court's consideration conduct "that constitutes the criminal sexual abuse," and that "serious bodily injury does not mean injury that is the result of the sexual abuse alone." United States v. Peshlakai, 618 F.Supp.2d at 1319-1320.

Further research into this issue has uncovered several cases from the Tenth Circuit that discuss the application of U.S.S.G. § 2A3.1(b)(4) and that the Court did not see before issuing its opinion in United States v. Peshalkai, or which the Tenth Circuit issued after the Court's decision in 2007. In United States v. Chee, the Tenth Circuit, without lengthy discussion, found that the district court did not err in applying the U.S.S.G. § 2A3.1(b)(4) enhancement, because a doctor and nurse testified that they found bruises and abrasions all over the victim's body, and because the "government introduced photographs showing the wounds into evidence." 1999 WL 261017, at *7. The Tenth Circuit did not, however, further describe the injuries that the victim suffered in that case or state whether an enhancement under U.S.S.G. § 2A3.1(b)(1) applied. In United States v. Estep, the Tenth Circuit found that the district court did not err in applying the U.S.S.G. § 2A3.1(b)(4) enhancement, because "the record ma[de] clear the government introduced overwhelming evidence proving Mr. Estep caused his victim serious bodily injury by repeatedly striking her in the head with a rock." United States v. Estep, 138 F.3d at 118. In United States v. Martin, the Tenth Circuit affirmed the application of a 4-level enhancement pursuant to U.S.S.G. § 2A3.1(b)(4)(A) when the victim sustained permanent or life-threatening bodily injury, and held that "[t]he crime is using force to procure sex, so this enhancement includes injuries sustained because the rapist was beating the victim into submission." 528 F.3d at 755 (citing United States v. Bell, 367 F.3d at 470). Although few circuits outside of the Eighth and the Tenth Circuits have more than one case discussing the application of U.S.S.G. § 2A3.1(b)(4), the cases that the Court located discussed

serious bodily harm outside of the injuries associated with the physical penetration.  See United States v. Bell, 367 F.3d at 470; United States v. Scott, 434 F.App'x at 157; United States v. Pleasant, 12 F.App'x at 269.

Given these cases from the Tenth Circuit, and other Circuit Courts, the Court finds that it must reconsider its opinion in United States v. Peshlakai.  The Tenth Circuit's decision in United States v. Martin, a case published after the Court's decision, held that the injuries sustained "because the rapist was beating the victim into submission" are appropriately considered when determining whether to apply an enhancement under U.S.S.G. § 2A3.1(b)(4).  528 F.3d at 755.  Accordingly, the Tenth Circuit's holding puts in doubt the Court's holding that the victim's injuries must "arise out of [an] incident or conduct that [is] not part of the sexual abuse."  United States v. Peshlakai, 618 F.Supp.2d at 1319.  Conduct which was intended to force the victim to submit to the criminal sexual abuse must, therefore, be part of the Court's analysis under U.S.S.G. § 2A3.1(b)(4).  The Court does not believe, however, that this provision goes as far as the Eighth Circuit has held or as the United States wishes.  The Eighth Circuit allows for any injury, including injuries directly related to the sexual contact -- which forms the basis for the offense level in U.S.S.G. § 2A3.1(a) and the enhancement under U.S.S.G. § 2A3.1(b)(1).  The Eighth Circuit has held that the application note to U.S.S.G. § 2A3.1 means "only that the act of sexual abuse is insufficient by itself to support a § 2A3.1(b)(4)(B) enhancement."  United States v. Long Turkey, 342 F.3d at 858-59.  Application note 1(L) to U.S.S.G. § 1B1.1 provides that "'serious bodily injury' is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any other similar offenses under state law."  The Court interprets note 1(L) to U.S.S.G. § 1B1.1 as establishing that, when an offense involves criminal sexual abuse, that conduct and injury is, per se, a serious bodily injury.  When a defendant is convicted of criminal sexual abuse, the application

note to U.S.S.G. § 2A3.1 provides that, "for the purposes of <u>this</u> guideline, 'serious bodily injury' means conduct <u>other than</u> criminal sexual abuse," because such conduct is "already" taken into account in the base offense level.  U.S.S.G. § 2A3.1 cmt. n.1 (emphasis added).  The Court interprets this provision as overriding the provision in U.S.S.G. § 1B1.1, because the base offense level already takes into account the injuries related to the sexual contact.  The Tenth Circuit separates the force used to procure the sexual contact from the act of criminal sexual abuse and has held that the force used to beat a victim into submission was "precisely the situation envisioned by the enhancement." <u>United States v. Martin</u>, 528 F.3d at 756.  It is difficult to separate the sexual contact and injuries related to it from the criminal sexual abuse, and the Court believes that, when the guidelines state that serious bodily injury means conduct other than criminal sexual abuse, it must also exclude from that definition injuries resulting from the criminal sexual abuse.  Without such a limiting principle, any forcible rape would seem to qualify for a serious bodily injury enhancement.  Any injuries resulting from the sexual contact are already taken into account in the base offense level for criminal sexual abuse.  The force used to accomplish the rape is conduct separate and apart from the criminal sexual abuse, and in most cases could likely form the basis for an assault charge.  For example, if a defendant hits the victim to force her to submit, that punch could separately be considered an assault and cause serious bodily injury.  The sexual contact used to accomplish the rape is, however, part of the offense, and it is difficult to separate from the criminal sexual abuse itself.  The Court does not believe it would be fair to say that it was considering conduct other than the criminal sexual abuse and then apply an enhancement for injuries stemming from the sexual contact.  To look at the sexual injuries that the criminal sexual abuse caused, the Court would be forced to consider the criminal sexual abuse conduct -- which the application notes assert is impermissible.

The Court also has difficulty believing that the Eighth Circuit's standard would not lead to double counting. The Tenth Circuit has held that impermissible double counting "occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes." United States v. Blake, 59 F.3d 138, 140 (10th Cir. 1995). Jim was convicted of an offense constituting criminal sexual abuse under U.S.S.G. § 2A3.1(a), and the application notes indicate that the criminal sexual abuse is "already taken into account in the base offense level under subsection (a)." U.S.S.G. § 2A3.1 cmt. n.1. Additionally, the PSR applies a 4-level enhancement, under U.S.S.G. § 2A3.1(b)(1), because the offense involved conduct described in 18 U.S.C. § 2241(a). See PSR ¶ 43, at 12. Aggravated sexual assault, under 18 U.S.C. § 2241(a), occurs when a defendant "knowingly causes another person to engage in a sexual act (1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." 18 U.S.C. § 2241(a). It would appear that adding an enhancement for injuries related to the sexual contact comes dangerously close to double counting, when the base offense already takes into account the criminal sexual abuse and another enhancement takes into account the force used. If a defendant must use force to commit an offense under § 2241(a) and is already subject to an enhancement for such force, the Court does not know what effect the application note has under the United States' interpretation of the enhancement. It seems to the Court that any sexual assault which involves force would create some injury related to the sexual contact, and that every sexual assault which qualified for an enhancement under U.S.S.G. § 2A3.1(b)(1) would also qualify for an enhancement under U.S.S.G. § 2A3.1(b)(4). The Court believes that this interpretation creates a danger of double counting, because the Court would be including in the base offense level the criminal sexual abuse and enhancing for the use of force

as well as the injury that the force would naturally cause -- injury related to sexual contact, such as the injuries to the genitals in this case.  The Court finds that, for the application note to have any meaning, serious bodily injury cannot mean "injury that is the result of the sexual abuse alone." United States v. Peshlakai, 618 F.Supp.2d at 1320.  The Court continues to believe that the natural reading of the application note to U.S.S.G. § 2A3.1 is to include the language "caused by or arising out of."  United States v. Peshlakai, 618 F.Supp.2d at 1319.  The Tenth Circuit appears to have only addressed and affirmed the application of this enhancement where there was an injury unrelated to the sexual contact or sexual penetration.  See United States v. Martin, 528 F.3d at 755 (applying an enhancement under U.S.S.G. § 2A3.1(b)(4)(A) where the defendant was "beating the victim into submission"); United States v. Estep, 138 F.App'x at 118 (applying an enhancement under U.S.S.G. § 2A3.1(b)(4)(B) where the defendant repeatedly struck the victim with a rock); United States v. Chee, 1999 WL 261017, at *7 (applying an enhancement under U.S.S.G. § 2A3.1(b)(4)(B) where the victim had bruises and abrasions all over her body and the United States introduced photographs of her "wounds").  Cases from other circuits also seem to focus on injuries other than those related to the sexual contact.  See United States v. Scott, 434 F.App'x at 157 ("[T]he record is replete with testimony of victims who had broken bones, concussions, and deep lacerations from beatings they suffered . . . ."); United States v. Bell, 367 F.3d at 470 ("Nonetheless, in the present case, there was additional evidence, other than the rape, that Jim's face was swollen as though he had been beaten and this is sufficient for the two-level enhancement."); United States v. Pleasant, 12 F.App'x at 269 ("Photographs of Armstrong's bruises that were introduced into evidence, and testimony by Armstrong and a police officer belie defendant's claim that there was no evidence that Armstrong suffered extreme physical pain.").

          Because the Court finds that the application note to U.S.S.G. § 2A3.1 requires that the Court

not consider injuries related to the sexual contact and because those injuries are already taken into account in the base offense level and U.S.S.G. § 2A3.1(b)(1) enhancement -- for conduct described in 18 U.S.C. § 2241(a) -- the Court will not consider the lacerations that Jane Doe suffered as a result of the sexual abuse for purposes of this enhancement.  This construction of the application note is also consistent with the USPO's interpretation of that provision.  In the PSR, the USPO stated that "[a]n enhancement may be appropriate if the victim's injuries are beyond what would normally be sustained from a forcible rape" and that the injuries "the victim sustained were a result of the forced rape, and are consistent with that forced act."  Addendum to the PSR at 1.  The United States argues that the "strange use of the word 'conduct' only is appropriate in this context because 'conduct' alone is enough to cause courts generally to deem that a rape victim suffered serious bodily harm."  United States' Sentencing Memorandum at 13.  The United States' proposed limiting principle would impose no limit at all, because a rape that involves any measure of force will likely leave an injury that causes extreme physical pain.  The United States also asserts that "an injury grounded solely on the fact that the defendant engaged in particular conduct -- alone cannot justify the two-level enhancement for 'serious bodily injury.'"  United States' Sentencing Memorandum at 13.  This statement closely resembles what the Court has said in United States v. Peshlakai, that "serious bodily injury does not mean injury that is the result of the sexual abuse alone."  618 F.Supp.2d at 1320.  Yet, the United States asserts that the lacerations to the genital area should be considered in determining whether to apply the enhancement.  See United States' Sentencing Memorandum at 8-9.  If the lacerations to the anus and genital are not "an injury grounded solely on the fact that the defendant engaged in particular conduct," then it is difficult to imagine what injury would qualify and when the enhancement would not apply.

The Court must therefore focus on the injuries to Jane Doe's head, and the bruises to her

arms, legs, and back to determine whether an enhancement under U.S.S.G. § 2A3.1(b)(4) applies. Serious bodily injury means "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(L). The injuries that Jane Doe suffered seem qualitatively different from the injuries listed in the application note. The United States focuses its argument on whether there was extreme physical pain. See United States' Sentencing Memorandum at 12. The Court does not believe, however, that the injuries that Jane Doe suffered, separate from the sexual contact, were extreme as the guidelines require. The United States argues that the Tenth Circuit recognized that bruising could be sufficient evidence to support the enhancement in United States v. Chee. See United States' Sentencing Memorandum at 9. In United States v. Chee, the Tenth Circuit found that there was sufficient evidence to support a finding that the victim suffered extreme pain where the victim had bruises and abrasions all over her body and the United States introduced photographs of her "wounds" into evidence. 1999 WL 261017, at *7. The Court does not believe that the injuries that Jane Doe suffered here rise to the same level as those discussed in United States v. Chee. Here, other than the lacerations related to the sexual abuse, Jane Doe did not suffer any abrasions or wounds. Moreover, while Jane Doe suffered from some bruising to her arms, legs, and back, none of those bruises appeared to be the cause of any extreme pain, which the guidelines require to apply the enhancement. The Court does not wish to minimize the harm that Jane Doe suffered. The Court has an obligation, however, to determine whether that harm qualifies as a "serious bodily injury" under the sentencing guidelines. If the Court were to enhance the offense level for serious bodily injury under the facts and circumstances of this case, it would be hard to imagine a rape case where it would not be available. The Court does not believe the intent of the guidelines is to allow an enhancement when there is

extreme pain and/or injuries resulting from the penetration.  Accordingly, the Court will overrule

the United States' objection to the USPO's failure to apply the 2-level enhancement for bodily harm.

## II.   THE COURT WILL SUSTAIN IN PART AND OVERRULE IN PART JIM'S OBJECTIONS TO PARAGRAPHS 8 TO 33, AND OVERRULE HIS OBJECTIONS TO PARAGRAPHS 41 TO 50.

Jim makes general objections to paragraphs 8 to 33 and to paragraphs 41 to 50.  See

Objections at 11, 12.  He also specifically objects to paragraph 43 and argues that this version of

events is incorrect, because he did not drag Doe to her bedroom.  See Objections at 12.  The Court

will sustain in part and deny in part Jim's factual objections, and will overrule his objections to the

guidelines' calculation.

### A.   THE COURT WILL SUSTAIN IN PART AND OVERRULE IN PART JIM'S FACTUAL OBJECTIONS.

Jim asserts that paragraphs 8 to 33 are "different from what defendant and undersigned

counsel recall the testimony to have been at trial."  Objections at 11.  "Rather than addressing each

paragraph, Defendant Mr. Jim, states that he testified truthfully and that the evidence, even

testimony from the government's witnesses, showed that he did not drag Ms. Tsosie from the living

room to the bed room."  Objections at 11.  Jim explains that "[t]he objection is that the government

has relied on its interpretation of trial testimony whereas Mr. Jim recall that night as he testified and

as he remembers it."  Objections at 11-12.

Rule 32 of the Federal Rules of Criminal Procedure provides that a court must, "for any

disputed portion of the presentence report or other controverted matter," rule on the dispute or

determine that a ruling is unnecessary either because the matter will not effect sentencing, or

because the court will not consider the matter in sentencing.  Fed. R. Crim. P. 32(i)(3)(B).  To

invoke a district court's rule 32 fact-finding obligation, a defendant is required to make "specific

allegations" of factual inaccuracy.  United States v. Rodriguez-Delma, 456 F.3d at 1253.  "The fact that a defendant has objected to the ultimate conclusions drawn by the PSR, however, does not necessarily imply that a 'controverted matter' exists."  United States v. Rodriguez-Delma, 456 F.3d at 1253 (citing United States v. Murray, 82 F.3d 361, 363 (10th Cir. 1996)).

    Furthermore, at the sentencing hearing, Jim conceded that his objections to paragraphs 8 to 33 would be satisfied if the Court added an additional paragraph stating that the Court relied on its interpretation of the trial testimony, but recognizes that Jim recalls the night as he testified at trial.  See Tr. at 20:17-21:4 (Court, Chacon).  The Court's addition of a paragraph describing Jim's position rendered Jim's remaining factual objections moot, because Jim agreed that the additional paragraph resolved those issues.  The Court will therefore overrule Jim's objections to paragraphs 8 to 33 as moot.  The Court notes, however, that the only specific allegation that Jim makes with respect to paragraphs 8 to 33 is that he did not drag Doe from the living room to her bedroom.  Accordingly, the only paragraph to which Jim makes a specific objection is paragraph 14.  Jim's other objections are insufficient to trigger the Court's duty under rule 32.  See United States v. Rodriguez-Delma, 456 F.3d at 1253.  When a defendant objects to a fact in the PSR, the United States has the burden of proving that fact by a preponderance of the evidence.  See United States v. Shinault, 147 F.3d 1266, 1278 (10th Cir. 1998).  At trial, Doe testified that Jim dragged her down the hallway into her bedroom.  See Trial Transcript at 118:14-21 (January 10, 2012)(Baker, Doe).  Jim testified, at trial, that he did not drag Doe down the hallway.  See Trial Transcript at 42:2-4 (January 13, 2012)(Chacon, Jim).  The Court notes that Jim's sworn testimony at trial contradicts his sworn statements in his Plea Agreement.  See Plea Agreement ¶ 8, at 3.  The Court held that it may rely on these statements.  See Memorandum Opinion and Order at 1, filed January 6, 2012 (Doc. 98).  The Court finds Doe's trial testimony credible and Jim's admissions in his Plea

Agreement credible.  Accordingly, the United States has established by a preponderance of the evidence that Jim dragged Doe down the hallway from the living room to the bedroom.

Because the Court's additional paragraph, noting that Jim recalls the night in question differently, addresses Jim's objections, the Court will sustain in part and overrule in part Jim's objections to paragraphs 8 to 33 as moot.

### B.      THE COURT WILL OVERRULE JIM'S OBJECTION TO PARAGRAPH 43.

Jim objects to paragraph 43, in which the USPO applies a 4-level enhancement pursuant to U.S.S.G. § 2A3.1(b)(1) based on the offense involving conduct described in 18 U.S.C. § 2241(a). See Objections at 12.  He asserts that "the version of events are incorrect."  Objections at 12.  The Court has, however, overruled Jim's objections to the underlying facts.  Furthermore, U.S.S.G. § 2A3.1(b)(1) provides that, "[i]f the offense involved conduct described in 18 U.S.C. § 2241(a) or (b), increase by 4 levels."  The Tenth Circuit has held that this provision "mean[s] that a four-level upward adjustment is mandatory for all defendants convicted under 18 U.S.C. § 2241."  United States v. Talk, 13 F.3d at 372.  Jim was convicted under 18 U.S.C. § 2241(a).  See Verdict at 1; Superseding Indictment at 1-2.  Accordingly, a 4-level enhancement under U.S.S.G. § 2A3.1(b)(1) is mandatory, and the Court will overrule Jim's objection to paragraph 43.

### C.      THE COURT WILL OVERRULE JIM'S REMAINING OBJECTIONS TO PARAGRAPHS 41 TO 50.

Jim does not explain why he objects to the USPO's guideline calculations in paragraphs 41 to 50.[2]  The Tenth Circuit has held that an "objection must be 'definite' enough to indicate to the

_____

[2]Paragraphs 41 to 50 are the USPO's "Offense Level Computations" which calculate Jim's base offense level and the applicable enhancements.  PSR ¶¶ 41-50, at 11-14.  Jim asserts that he addressed his objections to these paragraphs in the "body of his memorandum."  Objections at 12. The Court could not locate any provisions within Jim's Objections which addressed the guideline calculations and specifically objected to the application of various enhancement provisions.  The

district court 'the precise ground' for a party's complaint." United States v. Winder, 557 F.3d 1129,

1136 (10th Cir. 2009)(citing Neu v. Grant, 548 F.2d 281, 287 (10th Cir. 1977)).  The Court finds

that Jim's remaining objections to paragraphs 41 to 50 lack the specificity necessary.  The Court

indicated that it was inclined to overrule these objections at the sentencing hearing, and neither Jim

nor the United States objected to the Court overruling these objections.  See Tr. at 34:6-17 (Court,

Chacon, Baker).  Accordingly, the Court will overrule Jim's objections to paragraphs 41 to 50.

## III.   THE COURT WILL DENY JIM'S OBJECTIONS TO HIS CRIMINAL HISTORY CATEGORY AND WILL DENY HIS REQUEST FOR A DOWNWARD DEPARTURE BASED ON U.S.S.G. § 4A1.3.

Jim objects to case number M-147-DR-2003-00705 being assigned one criminal history

point, because his blood alcohol content was measured at .07 and .06, and because he was not

represented by counsel when he pled guilty.  See Objections at 13.  Jim also argues that the Court

should depart downward from a criminal history category of II to a criminal history category of I.

See Objections at 7-8.  He asserts that his two criminal history points arise from two DWI

convictions, which are relatively minor infractions.  See Objections at 8.  The Court will overrule

his objection and will decline to depart downward.

### A.   THE COURT WILL OVERRULE JIM'S OBJECTIONS TO HIS CRIMINAL HISTORY CATEGORY.

A presumption of regularity attaches to previous criminal convictions.  See Parke v. Raley,

506 U.S. at 29.  "To overcome this presumption and bar the use of a prior conviction for sentence

enhancement, the defendant must prove by a preponderance of the evidence that the conviction was

constitutionally infirm."  United States v. Krejcarek, 453 F.3d at 1297.  "[A] defendant may not

Court's believes that Jim is referring to his objections to the facts underlying the application of these enhancements.  The Court has, however, already addressed Jim's objections to those facts in its discussion of Jim's objections to paragraphs 8 to 33.

simply point to a silent or ambiguous record, but must come forward with affirmative evidence establishing that the prior convictions were obtained in violation of the Constitution." United States v. Cruz-Alcala, 338 F.3d at 1197.

Jim has not made any showing that his prior convictions were obtained in violation of the Constitution.  He has not even made any self-serving statements in an affidavit or at the hearing that his convictions were constitutionally infirm.  There is no indication that Jim's waiver of his right to counsel, with regard to case number M-147-DR-2003-00705, was unknowing or involuntary.  The burden is on Jim to come forward with some evidence to attack his prior criminal convictions.  See United States v. Krejcarek, 453 F.3d at 1297.  Jim may not simply rely on the fact that he did not have counsel to collaterally attack his convictions, without any further evidence that his lack of counsel violated the Constitution.  Because Jim has failed to prove by a preponderance of the evidence, or even argue, that his convictions were unconstitutional, the Court will overrule this objection.

**B.      JIM'S CRIMINAL HISTORY CATEGORY DOES NOT SUBSTANTIALLY OVER-REPRESENT HIS CRIMINAL HISTORY.**

U.S.S.G. § 4A1.3(b), which provides the standard for a downward departure under the Guidelines, states: "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."  U.S.S.G. § 4A1.3(b)(1).  Jim argues that his convictions were relatively minor misdemeanors and that "the seriousness of his criminal history is more accurately reflected by category I."  Objections at 7-8.

The Court disagrees with Jim's characterizations of his DWI convictions as minor and not serious.  The Tenth Circuit has held that "the risk of injury from drunk driving is neither conjectural

or speculative . . . .  Drunk driving is a reckless act that often results in injury, and the risks of driving while intoxicated are well known." United States v. Farnsworth, 92 F.3d 1001, 1008-09 (10th Cir. 1996).  In United States v. Angel-Guzman, 506 F.3d 1007 (10th Cir. 2007), the Tenth Circuit recounted the seriousness of a DWI conviction and noted that the defendant's repeated convictions for crimes involving alcohol showed that, despite repeated incarcerations, the defendant continued to drink and drive.  See 506 F.3d at 1019.  In United States v. Apodaca-Leyva, No. 07-1479, 2008 WL 2229550 (D.N.M. Feb. 13, 2008)(Browning, J.), the Court denied a motion for a downward departure, pursuant to U.S.S.G. § 4A1.3, because it found that the two crimes which accounted for the defendant's criminal history -- a DWI charge and a assault charge -- were serious criminal encounters, and the Court could not say that a criminal history category of III substantially over-represented the defendant's criminal history.  See 2008 WL 2229550, at *8.  The Court will also deny a downward departure here.  While a downward departure is authorized, the Court does not believe that a departure is justified under the facts and circumstances of this case.  It does not take much for a defendant to qualify for a criminal history category of II, and the Court has trouble distinguishing Jim's previous convictions from the defendants that the Court routinely sees with a criminal history category of II.  Jim has four criminal convictions, arising out of two separate incidents: (i) two DWI convictions; (ii) a conviction for Roadway Laned for Traffic; and (iii) Abandonment or Abuse of a Child.  See PSR ¶¶ 52-53, at 14-15.  To qualify for a downward departure, Jim's criminal history category must substantially overstate his criminal history or likelihood to commit crimes in the future.  See U.S.S.G. § 4A1.3.  Even if Jim's criminal history category might overstate his criminal history, the Court cannot say it substantially overstates it, and the crime for which the Court is sentencing Jim is another offense involving alcohol.  Given Jim's history of drinking and driving, and the facts of the case before the Court, the Court has does not

believe that a criminal history category of II overstates Jim's likelihood of re-offending or the seriousness of his past crimes. His past convictions demonstrate that Jim and alcohol provide a dangerous combination, and Jim's current conviction shows that he has yet to address his issues with alcohol. The Court concludes that Jim remains within the heartland of those cases, and, even though a departure is authorized, a departure is not warranted, and the Court will exercise its discretion not to depart.

## IV.    THE COURT WILL NOT VARY DOWNWARD AND WILL SENTENCE JIM TO 360-MONTHS IMPRISONMENT.

The Court has, as the record will reflect, carefully reviewed the PSR's factual findings, and with the paragraph that the Court will add to reflect Jim's position, the Court adopts those findings as its own. The Court has considered the PSR's guideline applications and, having overruled all objections to those calculations, will adopt the PSR's guideline applications as its own. The Court has also considered the factors set forth in 18 U.S.C. § 3553(a). Jim's offense level is 42, and his criminal history category is II, establishing a guideline imprisonment range of 360 months to life.

On August 13, 2010, Jim sexually assaulted Doe by engaging in two separate sexual acts, which consisted of forced contact between his penis, and Doe's vulva and her anus. The Court has considered the sentencing guidelines and briefing, but in arriving at its sentence, the Court has taken into account not only the guidelines, but other sentencing goals. Specifically, the Court has considered the guideline sentencing range for the applicable category of offense committed by the applicable category of defendant. After carefully considering the arguments before it, the Court believes that the punishment that is set forth in the guidelines is appropriate for this sort of offense. The Court has then considered the kinds of sentences and ranges established by the guidelines, and the Court believes that a sentence at the low end of the guideline range is appropriate for the crimes

for which Jim was convicted.

The Court will deny Jim's request for a downward variance, and the Court will also deny the United States' request for a lifetime sentence. The jury and the Court had physical evidence before them, something not often seen in a sexual abuse case. Moreover, at trial, Doe testified as to what happened to her, which substantially conformed with Jim's sworn statements during the plea colloquy and in the Plea Agreement. The standard at sentencing is a preponderance of the evidence, and the Court believes that the PSR accurately sets forth the facts of the case in paragraphs 8 to 33. Although these facts are favorable to the United States, the Court believes that those are the facts on which the jury relied in reaching its verdicts and that those facts are supported by a preponderance of the evidence. The Court also notes that, while it denied the serious-bodily-injury enhancement, Doe's injuries were serious, and the Court believes that she suffered extreme emotional and physical pain. The Court believes that the testimony from Doe and the doctors at trial establish that this was a particularly brutal rape. The Court also finds that Jim has a serious drinking problem. The Court gave some thought to whether Jim's problem with alcohol might justify a variance, but the Court is troubled that Jim's previous convictions also involved alcohol issues. Without any assurances that Jim has taken steps to address his alcohol problem, the Court does not believe that fact justifies a variance. The jury found, and the Court finds, that the evidence shows that Jim raped Doe vaginally and anally causing severe injuries, and he has not accepted responsibility for his conduct. Additionally, the evidence shows that, at some stage of the proceedings, Jim lied. The contrast between his statements to federal agents and his later testimony, and between his sworn plea statements and testimony at trial demonstrate that Jim has lied. By his own account at trial, he admits to lying at the plea colloquy, but the more fundamental concern for the Court is that Jim did not tell the truth at trial.

The Court gave serious consideration to the request for a variance, but it is difficult to justify when a defendant insists on a trial, when he continues to refuse to accept responsibility for his conduct, and where the are serious doubts about the veracity of the defendant's testimony. The Court agrees with the United States that a variance to Jim's requested sentence -- five years -- would not adequately reflect the 18 U.S.C. § 3553(a) factors. Additionally, varying to a sentence at or below the guideline range stipulated to in the Plea Agreement -- 151 to 188 months -- would be inappropriate. Jim withdrew his plea, an additional count was added in the Superseding Indictment, and Jim put the United States to its burden of proof at trial. While Jim has a protected right to a trial and should not be punished for exercising that right, he also should not exercise that right and then expect the bargain that he secured in his Plea Agreement. This process has been a nightmare for Doe, and the experience is still very raw for her. The high sentences that the guidelines establish and that Congress has approved were meant to protect women from this situation. The guideline range is high, but the Court does not believe that it is inappropriate. Rapes are particularly awful crimes, but the Court does not believe that the circumstances of this case are such that the Court should move higher within the guideline range. Ordinarily, the Court will sentence at the low end of the guideline range unless there is some particularly aggravating factor that forces the sentence up. The Court does not believe that such a factor is present here. Accordingly, the Court concludes that a sentence of 360 months adequately reflects the seriousness of the offense and promotes respect for the law. The Court believes that this sentence is a more just punishment than either a 5-year sentence or a lifetime sentence. The Court finds that it affords adequate deterrence at a specific and general level. Jim will be in his late fifties when he is released and will be less likely to re-offend. The Court believes that this sentence will protect the public, and, because the Court sentenced within the guideline range, the Court concludes that this sentence avoids unwarranted

sentencing disparities among defendants with similar records who have been found guilty of similar conduct.  The Court believes that it is particularly important when the guideline ranges are this high that the Court try to be consistent in how it sentences.  Additionally, because of some of the requirements that the Court will impose as part of supervised release, the Court believes that this sentence will effectively provide Jim with some needed education, training, and care to avoid this conduct in the future and to assist him with his alcohol problem.

The Court finds that this sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a).  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable, and reflects accurately the factors in 18 U.S.C. § 3553(a). Finally, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences Jim to 360-months imprisonment.

**IT IS ORDERED** that: (i) the requests in the United States' Sentencing Memorandum, filed April 5, 2012 (Doc. 149), are granted in part and denied in part; and (ii) the requests in the Sentencing Memorandum and Objections and Comments to the Presentence Report, filed May 1, 2012 (Doc. 151), are granted in part and denied in part.  The Court will overrule Plaintiff United States of America's objection to the United States Probation Office's ("USPO") failure to apply an enhancement for serious bodily injury.  The Court also will not sentence Defendant Derrick Ivan Jim

to a lifetime sentence, because the 18 U.S.C. § 3553(a) factors do not support such a high sentence. The Court will grant the United States' request that it not vary below the guideline range. The Court will sustain in part and overrule in part Jim's objections to the factual allegations in paragraphs 8 to 33 of the Presentence Investigation Report. The Court will overrule Jim's objections to the USPO's calculation of his offense level and to his criminal history. The Court will decline to exercise its discretion to depart downwards regarding Jim's criminal history category. The Court will not vary downward and will sentence Jim to 360-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Jack Burkhead
Mark T. Baker
  Assistant United States Attorneys
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Lawrence E. Chacon
Albuquerque, New Mexico

     *Attorney for the Defendant*