# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                             No. CR 10-2653 JB

DERRICK IVAN JIM,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Addendum to United States' Sentencing Memorandum, filed September 8, 2016 (Doc. 205)("United States' Motion"); and (ii) the Amendment to Sentencing Memorandum, filed March 10, 2017 (Doc. 222)("Jim's Motion"). The Court held an evidentiary and sentencing hearing on March 21, 2017. The primary issues are: (i) whether Jim should receive a 2-level enhancement pursuant to United States Sentencing Guidelines Manual § 2A3.1(b)(4) (U.S. Sentencing Comm'n 2018)("U.S.S.G.") for "serious bodily injury" based on injuries that Jane Doe sustained as a result of Jim's sexual abuse on August 12, 2010; (ii) whether the Court should impose a 4-level downward departure based on Jim's memory and comprehension issues; and (iii) whether the Court should grant a variance, because of the same memory and comprehension problems. The Court concludes that: (i) it will impose a 2-level enhancement for serious bodily injury, because Doe suffered twenty-five different lacerations to her genitals and anus as a result of Jim raping her, while also sustaining major bruising to her body and overwhelming pain; (ii) Jim's mild memory problems do not remove his case from the heartland of cases such that a downward departure is warranted; and (iii) the Court will not grant a downward variance, because the

factors that put downward pressure on the sentence do not outweigh the factors that put pressure to keep the sentence within the guideline range. Here, the factors that put downward pressure on the sentence do not outweigh the aggravating factors that put upward pressure on the sentence to keep it in the guideline range. On balance, a life sentence imposed by the guideline range is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and avoid sentencing disparities among defendants with similar records who are found guilty of similar offenses. The Court, accordingly, grants the United States' Motion and denies Jim's Motion.

## **FACTUAL BACKGROUND**

In 2003, Jim was convicted for driving under the influence of liquor or drug, as well as for a traffic violation, and sentenced to 90 days jail suspended. See Presentence Investigation Report ¶ 52, at 14 (disclosed March 9, 2012)("PSR").[1] In 2004, Jim was convicted of driving while intoxicated ("DWI") and abandonment or abuse of a child, and sentenced to 364 days in jail, with 320 days suspended. See PSR ¶ 53, at 14.

Jim first met Doe on August 12, 2010, at her home. See PSR ¶ 11, at 4. Jim, Doe, and Doe's friends gathered outside her home socializing and drinking alcohol. See PSR ¶ 11, at 4. As the night progressed, Doe's friends noticed that Jim was following Doe as she went in and out of her home. See PSR ¶ 12, at 4. Sometime shortly after 1:00 a.m., Doe went inside her home

---

[1]The PSR was never filed on the Court's docket. At the original sentencing, held May 16, 2012, the Court adopted the PSR's factual findings as its own, except that it added a paragraph 34 to reflect Jim's position on his trial testimony. See Draft Transcript of Sentencing Hearing at 49:5-11 (taken May 16, 2012)(Court). See also Memorandum Opinion and Order, at 38-41, 877 F. Supp. 2d 1018, 1041-43, filed June 22, 2012 (Doc. 164). The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited versions; any final transcript may contain slightly different page and/or line numbers.

and vomited.  <u>See</u> PSR ¶ 13, at 4.  When she emerged from the bathroom, she noticed Jim standing outside the bathroom door and then went to the couch to go to sleep.  <u>See</u> PSR ¶ 13, at 4.  She later opened her eyes, saw that the outside door was closed, and saw Jim standing over her.  <u>See</u> PSR ¶ 14, at 4.  Jim grabbed Doe's ankles and dragged her down the hall to her bedroom.  <u>See</u> PSR ¶ 14, at 5.  He removed her clothes, forced himself on her, and penetrated her vaginally and anally with his penis.  <u>See</u> PSR ¶ 14, at 5.  Doe testified that Jim caused her overwhelming pain, that she tried to fight him, and that the struggle moved from her bedroom to the laundry room.  <u>See</u> PSR ¶ 15, at 5.  Jim fled out the laundry room door and headed north. <u>See</u> PSR ¶ 16, at 5.

## <u>FINDINGS OF FACT</u>

Rule 12(d) of the Federal Rules of Criminal Procedure states: "When factual issues are involved in deciding a motion, the court must state its essential findings on the record."  Fed. R. Crim. P. 12(d).  There are factual issues involved in deciding the Motion.  Accordingly, the Court makes the following findings of fact in accordance with rule 12(d).

1.      In the early morning of August 13, 2010, Margaret Finnan -- a sexual assault nurse examiner -- performed an examination of Doe a few hours after she was raped.  <u>See</u> Transcript of Trial Proceedings at 50:13-15 (taken January 9, 2012), filed August 30, 2012 (Baker, Finnan)("Jan. 9 Tr."); <u>id.</u> at 54:4-8 (Baker, Finnan).

2.      During that examination, Doe told Finnan that, on a scale from zero to ten -- zero meaning no pain, and ten meaning the worst pain imaginable -- Doe felt a pain level of eight. <u>See</u> Jan. 9 Tr. at 68:21-24 (Finnan).

3.      Doe had bruises on her forearms, her back, and her knees.  <u>See</u> Jan. 9 Tr. at 69:5-7

(Finnan); id. at 69:17-70:20 (Baker, Finnan).

4.     Doe sustained eleven to thirteen lacerations to her vaginal area, some as large as 3.5 centimeters in length.  See Jan. 9 Tr. at 83:13-22 (Baker, Finnan).

5.     Doe sustained twelve lacerations to the area around her anus.  See Jan. 9 Tr. at 84:23-85:1 (Finnan).

6.     Graham Tull -- an emergency-room physician -- also examined Doe on August 13, 2010.  See Transcript of Trial Proceedings at 437:24 (dated January 11, 2012), filed August 30, 2012 (Tull)("Jan. 11 Tr."); id. at 439:20-24 (Baker, Tull).

7.     After examining her, Dr. Tull ordered a CT[2] scan of Doe's abdomen.  See Jan. 11 Tr. at 444:19 (Tull).

8.     Dr. Tull had never ordered a CT scan on a sexual assault victim's abdomen before, but ordered one on Doe, because "of the amount of pain and the distress that she seemed to be in."  Jan. 11 Tr. at 445:1-4 (Tull).

9.     In December, 2016, Susan Cave, a clinical and forensic psychologist, evaluated Jim.  See Sealed Forensic Evaluation Report at 1 (taken December 15, 2016)(dated January 11, 2017), filed February 16, 2017 (Doc. 220-1)("Report"); Draft Transcript of Sentencing Hearing at 5:25 (taken March 21, 2017)(Cave)[3] ("Tr.").[4]

---

[2]CT stands for computed tomography, and a CT scan reveals anatomic details of internal organs that X-rays cannot detect.  See Medical Definition of CT Scan at 1, https://www.medicinenet.com/script/main/art.asp?articlekey=2878.

[3]At the sentencing hearing, the Court credited Dr. Cave's determination that Jim "may have some mental conditions" and also credited her factual finding that "he's mildly impaired as far as memory."  Tr. at 52:1-12 (Court).  The Court recounts, accordingly, Dr. Cave's conclusions and factual findings.

10.     After performing an intelligent quotient ("IQ") test, Dr. Cave determined that Jim's performance IQ lands in the 66th percentile, which is above average, whereas his verbal IQ is in the 50th percentile.  <u>See</u> Tr. at 6:11-16 (Cave); Report at 5.

11.     Jim's combined IQ score is 104, which falls in the average range at the 61st percentile.  <u>See</u> Report at 5.

12.     Dr. Cave also performed a cognitive linguistic quick test, in which Jim scores within the normal range except that his memory "is mildly impaired."  Tr. at 7:3-4 (Cave).

13.     Cave determined that alcohol does not cause Jim's trouble remembering things, <u>see</u> Tr. at 7:12-16 (Cave); rather, she concluded that "multiple head injuries" sustained as a child likely cause his memory problems, Tr. at 7:19-21 (Cave).  <u>See</u> Report at 7.

14.     As an eight-year-old, Jim slipped on some gravel, struck his head, and fell unconscious.  <u>See</u> Report at 2-3.

15.     A year later, Jim fell unconscious again when he ran into a board.  <u>See</u> Report at 3.

## PROCEDURAL BACKGROUND

A grand jury indicted Jim on two counts of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a)(1), and 2246(2)(A).  <u>See</u> Superseding Indictment at 1-2, filed December 1, 2012 (Doc. 58)("Superseding Indictment").  Jim initially pled guilty, agreeing to a sentencing guideline range of 151-188 months.  <u>See</u> Plea Agreement at 4, filed February 8, 2011 (Doc. 25)("Plea").  Jim subsequently moved the Court to vacate his Plea, <u>see</u> Motion for an

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited versions; any final transcript may contain slightly different page and/or line numbers.

Order to Vacate the Sentencing and to Allow Defendant to Withdraw his Plea Agreement and to Proceed to Trial, filed September 19, 2011 (Doc. 48), and the Court granted the request, because it "doubt[ed] whether the plea was knowing and voluntary." Memorandum Opinion and Order at 16, 2011 WL 6013093, at *9 (D.N.M. 2011)(Browning, J.), filed November 22, 2011 (Doc. 53)("MOO"). The Court based that conclusion on Jim's statements that he did not understand that his Plea meant he waived his right to a jury trial and that the Honorable Richard Puglisi, then-Chief United States Magistrate Judge for the District of New Mexico, did not tell Jim during the plea colloquy that Jim was waiving his right to a jury trial. See MOO at 16-22, 2011 WL 6013093, at *9-13.

After a trial on the merits, a petit jury convicted Jim on both counts. See Verdict, filed January 13, 2012 (Doc. 136); Superseding Indictment at 1-2. The Court sentenced Jim to 360 months imprisonment. See Judgment at 2 (dated May 16, 2012), filed June 22, 2012 (Doc. 165). In sentencing Jim to 360 months imprisonment, the Court concluded that it could not, as a matter of law, apply the U.S.S.G. § 2A3.1(b)(4)(B) "serious bodily injury" 2-level enhancement based solely on Doe's injuries resulting directly from the sexual abuse underlying the conviction. See Memorandum Opinion and Order at 33, 877 F. Supp. 2d 1018, 1037 (D.N.M. 2012)(Browning, J.), filed June 22, 2012 (Doc. 164)("Sentencing MOO"). It so concluded because U.S.S.G. § 2A3.1, application note 1 "indicates that, for the purposes of this guideline, serious bodily injury means conduct other than criminal sexual abuse, which is taken into account in the base offense level under subsection (a)." Sentencing MOO at 30, 877 F. Supp. 2d at 1037 (citing U.S.S.G. § 2A3.1 cmt. n.1). The Court reasoned that, although the "serious bodily injury" definition from U.S.S.G. § 1B1.1 n.1(L) could include -- and indeed, would per se

include -- injuries stemming from the sexual contact underlying the offense, the Court concluded

that § 2A3.1, application note 1's explicit direction that "serious bodily injury means conduct

other than criminal sexual abuse," overrides "the provision in U.S.S.G. § 1B1.1, because the base

offense level already takes into account the injuries related to the sexual contact." Sentencing

MOO at 33, 877 F. Supp. 2d at 1039.

> It is difficult to separate the sexual contact and injuries related to it from the criminal sexual abuse, and the Court believes that, when the guidelines state that serious bodily injury means conduct other than criminal sexual abuse, it must also exclude from that definition injuries resulting from the criminal sexual abuse. Without such a limiting principle, any forcible rape would [s]eem to qualify for a serious bodily injury enhancement. Any injuries resulting from the sexual contact are already taken into account in the base offense level for criminal sexual abuse.

Sentencing MOO at 33, 877 F. Supp. 2d at 1039. Accordingly, the Court did not apply the 2-

level serious-bodily-injury enhancement. See Sentencing MOO at 38, 877 F. Supp. 2d at 1041.

The Court also denied "Jim's request for a downward variance." Sentencing MOO at 45,

877 F. Supp. 2d at 1046. The Court explained:

> The jury and the Court had physical evidence before them, something not often seen in a sexual abuse case. Moreover, at trial, Doe testified as to what happened to her, which substantially conformed with Jim's sworn statements during the plea colloquy and in the Plea Agreement. The standard at sentencing is a preponderance of the evidence, and the Court believes that the PSR accurately sets forth the facts of the case in paragraphs 8 to 33. Although these facts are favorable to the United States, the Court believes that those are the facts on which the jury relied in reaching its verdicts and that those facts are supported by a preponderance of the evidence. The Court also notes that, while it denied the serious-bodily-injury enhancement, Doe's injuries were serious, and the Court believes that she suffered extreme emotional and physical pain. The Court believes that the testimony from Doe and the doctors at trial establish that this was a particularly brutal rape. The Court also finds that Jim has a serious drinking problem. The Court gave some thought to whether Jim's problem with alcohol might justify a variance, but the Court is troubled that Jim's previous convictions also involved alcohol issues. Without any assurances that Jim has taken steps to address his alcohol problem, the Court does not believe that fact justifies a variance. The jury found, and the Court finds, that the evidence shows that Jim

raped Doe vaginally and anally causing severe injuries, and he has not accepted responsibility for his conduct. Additionally, the evidence shows that, at some stage of the proceedings, Jim lied. The contrast between his statements to federal agents and his later testimony, and between his sworn plea statements and testimony at trial demonstrate that Jim has lied. By his own account at trial, he admits to lying at the plea colloquy, but the more fundamental concern for the Court is that Jim did not tell the truth at trial.

The Court gave serious consideration to the request for a variance, but it is difficult to justify when a defendant insists on a trial, when he continues to refuse to accept responsibility for his conduct, and where there are serious doubts about the veracity of the defendant's testimony. The Court agrees with the United States that a variance to Jim's requested sentence -- five years -- would not adequately reflect the 18 U.S.C. § 3553(a) factors. Additionally, varying to a sentence at or below the guideline range stipulated to in the Plea Agreement -- 151 to 188 months -- would be inappropriate. Jim withdrew his plea, an additional count was added in the Superseding Indictment, and Jim put the United States to its burden of proof at trial. While Jim has a protected right to a trial and should not be punished for exercising that right, he also should not exercise that right and then expect the bargain that he secured in his Plea Agreement. This process has been a nightmare for Doe, and the experience is still very raw for her. The high sentences that the guidelines establish and that Congress has approved were meant to protect women from this situation. The guideline range is high, but the Court does not believe that it is inappropriate.

Sentencing MOO at 45-46, 877 F. Supp. 2d at 1046.

On appeal, the United States Court of Appeals for the Tenth Circuit affirmed the Court's decision to enforce Jim's rule 410 waiver, but disagreed with the Court's refusal to apply the 2-level serious-bodily-injury enhancement. See United States v. Jim, Nos. 12-2085 & 12-2120, Opinion at 20-26, 786 F.3d 802, 813-17 (10th Cir. 2015), filed June 3, 2015 (Doc. 190-1)("Jim"). The Tenth Circuit reasoned that the sentencing guidelines provide two definitions of "serious bodily injury," one of which could apply to Doe. Jim, Opinion at 21-22, 786 F.3d at 814.

Section 1B1.1's application notes provide two different definitions of "serious bodily injury." First, "'[s]erious bodily injury' means injury involving extreme physical pain or the protracted impairment of a function of a bodily member,

organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 app. n.1(L). Second, "'serious bodily injury' is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or [§] 2242 or any similar offense under state law." U.S.S.G. § 1B1.1 app. n.1(L).

That second definition of serious bodily injury cannot apply when the sentencing court is calculating the offense level for an 18 U.S.C. § 2241 offense like Jim's because the base offense level for that offense already takes into account the fact that the defendant's "offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241." U.S.S.G. § 1B1.1 app. n.1(L). It is for that reason that the application notes for U.S.S.G. § 2A3.1, the guideline specifically addressing sexual abuse convictions, provide that, "for purposes of this [sexual abuse] guideline, 'serious bodily injury' means conduct *other than* criminal sexual abuse, which is already taken into account in the base offense level under" § 2A3.1(a). U.S.S.G. § 2A3.1, app. n.1 (emphasis added). The two-level serious-bodily-injury enhancement can still apply to a sexual abuse offender, but it must be based on the fact that the victim's injuries meet the first definition of "serious bodily injury": "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 app. n.1(L).

Jim, Opinion at 21-22, 786 F.3d at 814 (emphasis in original). See id. at 25, 786 F.3d at 815 ("But the base offense level takes into account the offender's conduct in committing a sexual abuse offense, not the injuries the victim suffered.")(emphasis in original). Accordingly, the Tenth Circuit remanded to the Court to let it determine whether Doe's injuries "involve[e] extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty, or require[] medical intervention such as surgery, hospitalization, or physical rehabilitation." Jim, Opinion at 26, 786 F.3d at 816.

1.    **The United States' Motion.**

Plaintiff United States of America argues that U.S.S.G. § 2A3.2(b)(4)(B)'s 2-level enhancement applies, because the trial record "was replete with testimony concerning the

victim's extreme physical pain which required hospitalization." United States' Motion at 4. Specifically, the United States contends that, as a result of the sexual assault, the victim "suffered from bruising," more than "two dozen lacerations to her genitals and anus," and extreme physical pain. United States' Motion at 5. The United States concludes, accordingly, that the Court should apply the 2-level enhancement. <u>See</u> United States' Motion at 5.

### 2. **Jim's Motion.**

Jim concedes that the serious bodily injury enhancement applies. <u>See</u> Jim's Motion at 6. He argues, however, that the Court has yet to consider how Jim's "limited functioning and comprehension" should impact his sentence. Jim's Motion at 6. He contends that his memory issues warrant either a downward departure or a downward variance. <u>See</u> Jim's Motion at 6 (citing U.S.S.G. § 5H1.2; 18 U.S.C. § 3533).

### 3. **Jim's Supplemental Motion.**

Jim files a supplement, arguing that he did not fully elaborate his rationale for a downward departure or variance. <u>See</u> Supplement for Amendment to Sentencing Memorandum, at 2, filed March 17, 2017 (Doc. 223)("Jim's Supp. Motion"). He argues that he has severe mental limitations, learning disabilities, and memory deficits. <u>See</u> Jim's Supp. Motion at 2. He contends that, but for those characteristics, he would not have withdrawn his guilty plea. <u>See</u> Jim's Supp. Motion at 2. He concedes that, alone, those characteristics might not warrant a departure, but, taken together, they "make [his] case an exceptional one" worthy of departure or variance. Jim's Supp. Motion at 2. Accordingly, Jim requests that the Court sentence him to a range within 151-188 months, the same range to which he pled before rescinding his plea agreement. <u>See</u> Jim's Supp. Motion at 2.

4.      **Addendum to the Presentence Report.**

The United States Probation Office ("USPO") files an addendum to the presentence report, stating that a 2-level serious bodily injury enhancement applies.  See Third Addendum to the Presentence Report at 1-2, filed March 20, 2017 (Doc. 224)("PSR Addendum").  It concludes that a 2-level enhancement applies, because of the body bruises, the genital lacerations and "obvious distress and significant pain" that Doe suffered.  PSR Addendum at 1-2.  The USPO contends that the Court may not depart or vary downward under 18 U.S.C. § 3742(g)(2)(A)-(B), because "the Court shall not impose a sentence outside the applicable guidelines range that was not held by the Court of Appeals, in remanding the case, to be a permissible ground of departure."  PSR Addendum at 2.  According to the USPO, because the Tenth Circuit's remand "is limited to the application or non-application of USSG § 2A3.1(b)(4)(B)," the Tenth Circuit did not authorize any other downward departure or variance, so the Court is restricted to the guideline range.  PSR Addendum at 2.

5.      **Sentencing Hearing.**

The Court noted that, in the Sentencing MOO, although it held that the serious-bodily-injury enhancement did not apply, "the Court believes [Doe] suffered extreme emotional and physical plain.  The Court believes that the testimony from Doe and the doctors at trial establish that this was a particularly brutal rape."  Tr. at 23:15-20 (Court).  In light of the Tenth Circuit's remand, however, the Court concluded that the 2-level serious-bodily-injury enhancement applied, because: (i) of the bruising Doe suffered all over her body and the genital lacerations; and (ii) "Doe's overwhelming pain, estimated at an 8 out of 10 during her SANE[5] examination,

---

[5]SANE stands for Sexual Assault Nurse Examination.  See PSR Addendum at 2.

meets the definition of extreme physical pain." Tr. at 27:12-28:15 (Court)(citing <u>United States v. Chee</u>, 173 F.3d 864, 1999 WL 261017, at *7 (10th Cir. 1999)(unpublished); <u>United States v. Long Turkey</u>, 342 F.3d 856, 859 (8th Cir. 2003)). The Court also determined that it may, notwithstanding 18 U.S.C. § 3742(g)(2), downwardly depart or vary, because 18 U.S.C. § 3742(g)(2) is no longer valid after <u>United States v. Booker</u>. Tr. at 31:25-32:3 (Court)(citing <u>Pepper v. United States</u>, 131 S. Ct. 1229, 1243 (2011); <u>United States v. Booker</u>, 543 U.S. 220 (2005)). Both Jim and the United States agreed with the Court's interpretation of <u>United States v. Pepper</u> and <u>United States v. Booker</u>. <u>See</u> Tr. at 35:8-12 (Samore); <u>id.</u> at 35:15-19 (Spindle). Accordingly, the Court heard argument on a downward variance or departure. <u>See</u> Tr. at 36:1-2 (Court).

Jim argued that his memory impairments caused him to forego his plea bargain, which set a 188 month maximum prison sentence. <u>See</u> Tr. at 36:25-37:3 (Samore); <u>id.</u> at 37:15-16 (Samore)("[Jim's] appearances in Court other than the trial were entirely monosyllabic."). Jim argued that his memory problems make it difficult for him to make judgments, because he cannot fully reflect on all the relevant facts. <u>See</u> Tr. at 40:17-22 (Samore); <u>id.</u> at 41:6-7 (Samore)("[T]his gentleman has zero understanding of the importance of those kind of major decisions."). He contended that Jim's memory and understanding problems are exemplified by Jim's belief that his plea bargain did not waive his right to a jury trial. <u>See</u> Tr. at 38:20-22 (Samore). Jim also argued that he should not be given a life sentence for his previous counsel's mistakes. <u>See</u> Tr. at 41:16-19 (Samore)("[M]y client should get the [benefit] of the original bargain, [b]ecause that's the fault of counsel that did not help him under[stand] that."). Accordingly, Jim concluded that he should be granted either a downward variance or a departure

under U.S.S.G. § 5K2.0(b)-(c).  See Tr. at 43:9-13 (Samore); id. at 45:11 (Samore); id. at 46:6-8 (Court, Samore).

The United States responds that U.S.S.G. § 5K2.0(b) does not apply, because that subsection applies only when the U.S.S.G. does not already consider such factors, but, according to the United States, U.S.S.G. § 5H1.3 already takes into account mental impairments.  See Tr. at 46:22-47:6 (Spindle).  The United States adds that § 5H1.3 authorizes a downward departure only if the mental condition is unusually severe.  See Tr. 47:7-9 (Spindle).  The United States argues that, "in this case," Jim's memory problems are "not extraordinary" or "even unusual." Tr. at 47:13-14 (Spindle).  The United States argues that Jim's overall IQ is "104," which is "above average," and that Dr. Cave testified that Jim's memory is "only mildly impaired."  Tr. at 47:17-23 (Spindle).

The United States also argued that a downward variance is not warranted.  See Tr. 48:13-17 (Spindle).  It contended that, even taking Jim's mental condition into account, on balance, the other 18 U.S.C. § 3553(a) factors do not counsel toward a downward variance.  See Tr. at 48:17-20 (Spindle).

> As this Court noted and described earlier today, this was an unusually brutal rape.  This was a rape where the defendant planned it out, at least throughout the night.  They were strangers.  He hovered around the victim.  He waited until the victim's friends were outside and the victim passed out, before dragging her down the hall and into a bedroom and then brutally anally and vaginally rap[ed] her.  On top of that he, after causing all of this trauma to the victim, he fled the scene, and the victim was left in tears and a bloody mess on the floor, where her friends found her. . . .  This is certainly not the type of case where [the] 3553 factors warrant any variance.

Tr. at 48:20-49:11 (Spindle).  The United States added that, even if this case warranted a variance, the Court would have to vary downward several offense levels to fall within a guideline

range that did not have a life sentence as an appropriate sentence. See Tr. at 49:11-24 (Spindle).

Accordingly, it argued that the Court should impose a life sentence. See Tr. at 49:24-50:1

(Spindle).

The Court denied Jim's request for a departure. See Tr. at 51:5-6 (Court). The Court

credited Dr. Cave that Jim "may have some mental conditions," but it noted that they do not

appear to "an unusual degree." Tr. at 52:1-3 (Court).

> [H]e did finish high school, [he] had some college. His IQ is not nearly as low as
> many of the people I'm dealing with, and been dealing with the last couple of
> days. His verbal IQ is in the average rage, and while [the Court will] accept
> Dr. Cave's testimony that he is mildly impaired as far as memory, [the Court does
> not] think that falls into the extraordinary situation worthy of a downward
> departure.
>
> . . . .
>
> Unfortunately, our prisons contain many people who have had head injuries, some
> diminished capacity, and so I don't think [t]his situation, crediting Dr. Cave's
> testimony, takes him out of the heartland. . . . So even though a departure
> is . . . authorized under 5K2.0B and C of the guidelines, [the Court does not] think
> the facts of this case suggest that such a departure is warranted and [the Court]
> exercise[s its] discretion not to depart because [the Court] believe[s] the[] case
> remains in the heartland of cases.

Tr. at 52:4-53:12 (Court).

Jim argued that a variance was still warranted, because the Court has greater discretion to

vary than to depart. See Tr. at 53:18-22 (Samore). Jim contended that he scored so high on his

IQ, because of his spatial reasoning, but the important IQ factor is his comprehension, which is

lower. See Tr. at 54:23-55:1 (Samore). Accordingly, Jim asked the Court to vary downward

four levels. See Tr. at 55:5-8 (Samore).

The United States rejoined that Jim's actions are too heinous to warrant a variance. See

Tr. at 57: 2-3 (Spindle).

> This was a brutal rape. Even the one 3553 factor that the defense is arguing supports a variance, which would be the nature and circumstances of the offense and the history and characteristics of the defendant really doesn't weigh in favor of a variance. This was premedi[t]ated. This was callous. And the defendant did everything he could to avoid apprehension and conviction in this matter, from fleeing the scene, to taking the stand and lying. He actually committed perjury when he took the stand in this matter. Everything leans toward adherence to the guidelines and imposing a life sentence. . . . And I briefly addressed this during my departure argument, but the sentencing guidelines, which have to be considered under 3553, don't even go so far as to [offense] level 44. The Sentencing Guideline Commission didn't think that it was worth it to categorize behavior this extreme, because it was so unlikely to occur. And in this matter it occurred. We have somebody who, by definition, is worse than the Sentencing Commission ever thought they would see. Because of that, it's obviously taking into account that factor in 3553, th[at] life imprisonment is warranted.

Tr. at 57:3-58:6 (Spindle). Thus, the United States argued that to vary downward to the fifteen years Jim had in his original plea agreement would be unreasonable. See Tr. at 58:13-17 (Spindle). Accordingly, it asked the Court to adhere to the Guidelines and impose a life sentence. See Tr. at 59:7-8 (Spindle).

Before imposing a sentence, the Court noted that Jim had requested a variance in 2012, at his original sentencing, and that it had denied a variance then. See Tr. at 62:7-9. The Court recounted that it had previously considered whether Jim's alcohol problems warranted a variance in 2012, but the Court did not vary downwardly, because Jim's previous convictions also involved alcohol and Jim had not satisfactorily assured the Court that he had addressed his alcohol problem. See Tr. at 63:11-18 (Court). The Court also noted that Doe's rape was a particularly brutal one and that Jim had lied at some point in the proceedings. See Tr. at 63:18-24 (Court). Accordingly, it concluded that a variance "to a sentence at or below the guideline range stipulated in the plea agreement, 151 to 188 months, would be inappropriate." Tr. at 64:17-20 (Court).

The Court also noted that, in 2012, it did not impose on Jim a life sentence, even though that was in the upper end of the guideline range. See Tr. at 62:9-10. The Court typically sentences in the lower end of the guideline range, unless there is a particularly aggravating factor. See Tr. at 65:17-19 (Court). It had not found such an aggravating factor in 2012, but the Court concluded the situation had changed since 2012, because the offense level is now higher such that there is no range. See Tr. at 65:14-16 (Court). The Court noted that the 18 U.S.C. § 3553(a) factors counseled toward a guideline sentence in 2012 and concluded that they likewise counseled for a guideline sentence in 2017. See Tr. at 65:14-67:12 (Court); id. at 67:11-12 (Court)("[T]he factors [in 2012] were overwhelmingly in favor of a guideline sentence."). The Court noted that it had identified about fourteen factors that put downward pressure on the sentence. See Tr. at 67:14-15 (Court). The Court stated:

> Certainly we don't want to sentence anyone greater than is necessary, and we want the sentence to be reasonable and as I indicated back then I think I could do some things with supervised release such as with with alcohol that would reduce the risk [from] him. We . . . talked a great deal . . . [to]day[] about the procedures we used[;] whe[n] we review the entire Tenth Circuit opinion they put to rest any concern about their feeling of Mr. Jim's plea being voluntary and understand[ing] and knowing as they []pointed out [--] and I knew that [--] in the plea agreement itself, he waived clearly the right to a jury trial. So even though I credit what Dr. Cave says . . . today and I do think that it does put downward pressure and that he may not be the smartest person and even though I haven't departed and said that it justifies a downward departure, I do credit her testimony that he doesn't have the best memory and he may have difficulty with a non-Indian judicial system. And I also think the fact that this is a severe sentence regardless of what he gets put downward pressure on it in comparison with other crimes such as murder. I don't have any substantial disagreement with the way that counsel handled matters in this case. I think largely they were driven by Mr. Jim. So I don't think that that is necessarily something that puts downward pressure. But I will agree that maybe his comprehension is not as great as other defendant. But I think that he clearly was competent to both enter the plea and to conduct and help his counsel during trial. We certainly want a sentence that promotes respect for the law[,] that provides just punishment[, and] that affords adequate deterrence, but I think any

sort of sentence that we're talking about [--] on the specific or general level [--] is going to provide those.

Tr. at 68:16-70:1 (Court).

On the other hand, the Court noted some factors did not counsel toward a variance upward and put pressure to keep the sentence a guideline sentence.

> So [the Court] think[s] there is some downward pressure. But the factors that cause the Court not to vary from the guideline range also remain and they were overwhelming in the last case and many of them are back today, and some of them are here in a more emphatic form than they were even in 2012. One is the brutal factor of [--] the seriousness of this crime, the lying, the taking the stand, the Court does have to protect the public, and it doesn't have any assurance at the present time any more than it had in 2012. [The Court] think[s] that factor has to be emphasized. And also once again, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the sentence has to be sufficient to reflect the 3553(a) factor, both that the court identified in detail in 2012 and have been identified here today. Therefore the Court having considered the guidelines in arriving at its sentence, the Court has taken into account not only the guidelines but [also] carefully considered the other sentencing goals, specifically that the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant. And as [the Court] concluded in 2012, [the Court will] also conclude ag[ain] that the punishment set forth in the guidelines is appropriate for this sort of offense. [The Court] think[s] the factors that counsel for a guideline sentence today as in 2012 overwhelmingly counsel against a variance.

Tr. at 69:2-70:6 (Court). The Court, accordingly, imposed a life sentence on both counts to run concurrently. See Tr. at 70:6-12 (Court); id. at 71:2-4 (Court).

## LAW REGARDING THE UNITED STATES SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act of 1984 ("Sentencing Act"), as amended, 18 U.S.C.A. §§ 355-59, 3561-66, 3571-74, 3581-86, 3601-07, 3611-15, 3621-25, 3673, 3742; 28 U.S.C.A. §§ 991-98 (West 2016), thus making the Guidelines

effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the

Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect,

and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate

courts, as they have in the past, in determining whether a sentence is unreasonable."  United

States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater

than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C.

§ 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  Section 3551 provides that

> a defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to

consider: (i) the Guidelines; (ii) the nature of the offense as well as the defendant's history and

characteristics; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for

defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See

18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, because the Guidelines are one of several factors that 18 U.S.C. § 3553(a) enumerates, they are entitled to be considered. See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). The Guidelines are significant, because they "are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006). "This presumption, however, is an appellate presumption, not one that the trial court can or should apply." United States v. Chatto, No. CR 06-2561 JB, 2008 WL 4107149 (D.N.M. May 12, 2008)(Browning, J.). See Rita v. United States, 551 U.S. at 347-48; Gall v. United States, 552 U.S. 38, 40 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007). Instead, the trial court must undertake the § 3553(a) balancing of factors without any

presumption in favor of the advisory Guideline sentence.  See Rita v. United States, 551 U.S. at 347-48; Gall v. United States, 552 U.S. at 40; Kimbrough v. United States, 552 U.S. at 90-91.

## LAW REGARDING DOWNWARD DEPARTURES

The Guidelines "place essentially no limit on the number of potential factors that may warrant a departure."  Koon v. United States, 518 U.S. 81, 106 (1996).  See United States v. Coleman, 188 F.3d 354, 358 (6th Cir. 1999)(en banc)(stating that there are a "potentially infinite number of factors which may warrant a departure"); 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence").  A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline."  Koon v. United States, 518 U.S. at 92.  Accord United States v. Lewellen, No. CR 11-1524 JB, 2012 WL 2175769, at *5 (D.N.M. June 5, 2012)(Browning, J.).

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.  We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

Koon v. United States, 518 U.S. at 113.

For example, in United States v. Jim, No. CR 10-2563, 2012 WL 2574807 (D.N.M. June 22, 2012)(Browning, J.), the Court did not grant a defendant request for a downward departure under U.S.S.G. § 4A1.3(b), where the defendant argued that his criminal history category over-represented the seriousness of his criminal history and the likelihood that he would commit other crimes.  See 2012 WL 2574807, at *25.  The Court noted that Jim's criminal history included:

(i) two DWI convictions; (ii) a conviction for Roadway Laned Traffic; and (iii) Abandonment or Abuse of a Child. See 2012 WL 2574807, at *25. The Court concluded that a criminal history category of II did not over-represent Jim's criminal history, explaining that Jim's previous convictions involved alcohol and driving, demonstrating a pattern of aberrant use of alcohol also seen in the offense for which he was sentenced -- sexual assault -- as Jim asserted that both he and the victim were intoxicated at the time he assaulted the victim. See 2012 WL 2574807, at *3,*25. The Court noted that it "does not take much for a defendant to qualify for a criminal history category of II" and that the Court could not distinguish Jim's criminal history from that of other defendants that the Court regularly sees who also have a criminal history category of II, and thus denied Jim's request for a downward departure under U.S.S.G. § 4A1.3.2012 WL 2574807, at *25.

In United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), the Court denied a defendant's request for a downward departure, under U.S.S.G. § 5H1.11, based upon the defendant's eleven years of military service. See 2011 WL 831279, at *3. Even though Jager had received exemplary reviews in his performance reports, earning either the highest or second highest ratings possible, during his military career, the Court concluded that his service was not present in an unusual degree or distinguishable from other cases which the Guidelines cover. The Court noted that in many child pornography cases, such as Jager's, the defendant leads an exemplary life publicly, while engaging in a sordid secret life privately. Jager's case was thus not distinguishable from other defendants sentenced under the Guidelines. Additionally, Jager was not in intense combat during his military career, most of his time was spent in the support role of a mechanic. The Court concluded, thus, that Jager's

military service did not distinguish his case from those of many other defendants who commit child pornography, and the Court denied Jager's request for a downward departure. See 2011 WL 831279, at *10-*11.

## ANALYSIS

The Court will impose a 2-level enhancement for serious bodily injury, because Doe suffered twenty-five different lacerations to her genitals and anus as a result of Jim raping her, while also sustaining major bruising to her body and overwhelming pain. The Court will not downwardly depart from Jim's Guidelines sentence, because Jim's mild memory problems do not remove his case from the heartland of cases such that a downward departure is warranted. The Court will also not vary downward from Jim's Guidelines sentence, because the factors putting downward pressure on the sentence do not outweigh the factors putting pressure to keep the sentence within the Guideline range. On balance, a life sentence imposed by the Guideline range is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and avoid sentencing disparities among defendants with similar records who are found guilty of similar offenses.

## I.    THE COURT WILL APPLY THE 2-LEVEL ENHANCEMENT FOR "SERIOUS BODILY INJURY" UNDER § 2A3.1(b)(4).

Section 2A3.1(b)(4) enhances a sexual abuse defendant's offense level by two if his or her victim suffered "serious bodily injury," which § 1B1.1's application notes defines. U.S.S.G. § 2A3.1(b)(4); id. cmt. 1. Serious bodily injury is either: (i) "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation"; or (ii) "if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241

or [§] 2242 or any similar offense under state law." U.S.S.G. § 1B1.1 n.1(L). The second definition does not apply here. See Jim, Opinion at 22, 786 F.3d at 814 ("The second definition of serious bodily injury cannot apply when the sentencing court is calculating the offense level for an 18 U.S.C. § 2241 offense like Jim's."). Thus, the Court will apply the 2-level serious-bodily-injury enhancement only if Doe's injuries satisfy the first definition. See U.S.S.G. § 1B1.1 n.1(L).

The Court concludes that Doe's injuries "involve extreme physical pain" such that the 2-level enhancement applies. U.S.S.G. § 1B1.1 n.1(L). First, Doe's overwhelming pain -- which Doe attested during her SANE examination was an 8 out of 10 -- meets the definition of extreme physical pain sufficient for the enhancement to apply. See Jan. 9 Tr. at 68:21-24 (Finnan). Indeed, the verifiable injuries that she suffered corroborate the intensity of Doe's pain; (i) twenty-three to twenty-five different lacerations to her genitals and anus, some nearly 3.5 centimeters long; and (ii) bruising all over her arms, legs, and back. See Jan. 9 Tr. at 83:13-22 (Baker, Finnan); id. at 84:23-85:1 (Finann). Doe's pain was so severe that it prompted the emergency-room physician treating her, Dr. Tull, to recommend a CT scan to determine whether Doe had suffered a rectal wall rupture -- the only time that Dr. Tull had ever recommended such a scan in similar circumstances. See Jan. 11 Tr. at 444:19 (Tull); id. at 445:1-4 (Tull). The Court concludes that these injuries meet U.S.S.G. § 1B1.1 n.1(L)'s definition of "serious bodily injury."

The Court's conclusion aligns with holdings from both the Tenth and the United States Court of Appeals for the Eight Circuit. See United States v. Long Turkey, 342 F.3d 856, 859 (8th Cir. 2003)(upholding a serious-bodily-injury enhancement where the victim suffered rectal

laceration, a bruised scalp, had severe pain, and was hospitalized overnight); United States v. Chee, 173 F.3d 864, 1999 WL 261017, at *7 (10th Cir. 1999)(unpublished)(concluding that the 2-level enhancement for serious bodily injury is appropriate where a rape victim suffers bruises and abrasions all over her body). See also Jim, Opinion at 24, 786 F.3d at 815 (citing United States v. Long Turkey with approval). The Court also concludes, consistent with the Tenth Circuit's admonition in Jim, that these injuries are the "injuries the victim suffered," and are thus separate and distinct from the "offender's conduct in committing [the] sexual abuse offense." Opinion at 25, 786 F.3d at 815 (emphasis in original). Accordingly, the Court will apply the 2-level enhancement for serious bodily injury pursuant to § 2A3.1(b)(4)(B) and overrule Jim's objection to that enhancement.

## II.  NOTWITHSTANDING 18 U.S.C. § 3742(g)(2), THE COURT MAY CONSIDER WHETHER IT SHOULD DOWNWARDLY DEPART OR VARY.

The USPO contends that the Court cannot impose a sentence outside the applicable Guideline range "that was not held by the Court of Appeals, in remanding the case, to be a permissible ground of departure." PSR Addendum at 2 (citing 18 U.S.C. § 3742(g)(2)(A)-(B)). The Court disagrees with the USPO, because, after United States v. Booker, 18 U.S.C. § 3742(g)(2) is no longer valid. See Pepper v. United States, 562 U.S. at 494 ("§ 3742(g)(2) is invalid after [United States v.] Booker."). Under 18 U.S.C. § 3742(g)(2), when a sentence is set aside on appeal, the district court to which the case is remanded:

> shall not impose a sentence outside the applicable guidelines range except upon a ground that --
>
> > (A) was specifically and affirmatively included in the written statement of reasons required by section 3553(c) in connection with the previous sentencing of the defendant prior to the appeal; and

> (B) was held by the court of appeals, in remanding the case, to be a permissible ground of departure.

18 U.S.C. § 3742(g)(2). In operation, "§ 3742(g)(2) restricts the discretion of a district court on remand by precluding the court from imposing a sentence outside the Guidelines range except upon a 'ground of departure' that was expressly relied upon in the prior sentencing and upheld on appeal." Pepper v. United States, 562 U.S. at 494. The Supreme Court explained that, because 18 U.S.C. § 3742(g)(2) "requires district courts effectively to treat the Guidelines as mandatory," the reasoning from United States v. Booker that invalidated 18 U.S.C. § 3553(b)(1) and § 3742(e) applies with equal force to 18 U.S.C § 3742(g)(2). Pepper v. United States, 562 U.S. at 495. Accordingly, 18 U.S.C. § 3742(g)(2) does not bind the Court, and the Court may properly consider Jim's request for a downward departure or variance.

## III.     THE COURT WILL NOT DOWNWARDLY DEPART.

Jim contends that the Court should downwardly depart under U.S.S.G. § 5K2.0(b) & (c), because of his memory impairments. See Tr. at 36:25-37:3 (Samore). The Court declines to downwardly depart. First, under U.S.S.G. § 5K2.0(b),

> the sentencing court may impose a sentence below the range established by the applicable guidelines only if the court finds that there exists a mitigating circumstance of a kind, or to a degree, that --
>
> (1)     has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, United States code, taking account of any amendments to such sentencing guidelines or policy statements by act of Congress;
>
> (2)     has not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines; and
>
> (3)     should result in a sentence different from that described.

U.S.S.G. § 5K2.0(b).   See United States v. Sierra-Castillo, 405 F.3d 932, 939 (10th Cir.

2005)("If a particular factor is already fully taken into account by the Guidelines, a downward

departure based on that factor is inappropriate.").   U.S.S.G. § 5K2.0(b)'s Application Note 4

clarifies that, to meet § 5K2.0(b)(1)'s "affirmatively and specifically identified" requirement,

"any mitigating circumstance that forms the basis for such a downward departure be

affirmatively and specifically identified as a ground for downward departure in this part (i.e.,

Chapter Five, Park K)."   U.S.S.G. § 5K2.0(b) n.4(B)(i).   After examining Chapter 5, Part K of

the Guidelines, the Court concludes that none of U.S.S.G. § 5K's subsections "affirmatively and

specifically identif[y]" memory impairment as a permissible ground for downward departure.

U.S.S.G. § 5K2.0(b) n.4(B)(i).[6]   The only two subsections that could, at first glance, apply are:

(i) diminished capacity; and (ii) specific offender characteristics as grounds for downward

departure in child crimes and sexual offenses.     See U.S.S.G. §§ 5K2.13; 5K2.22.    The

diminished capacity subsection applies, however, only if "the defendant committed the offense

while suffering from a significantly reduced mental capacity" and "the significantly reduced

mental capacity contributed substantially to the commission of the offense."   U.S.S.G. § 5K2.13.

Jim's contention does not fit the mental-capacity subsection, because he does not assert that his

_____

[6]U.S.S.G. § 5K identify the following as permissible grounds of departure: (i) substantial
assistance to authorities; (ii) death; (iii) physical injury; (iv) extreme psychological injury;
(v) abduction or unlawful restraint; (vi) property damage or loss; (vii) weapons and dangerous
instrumentalities; (viii) disruption of governmental function; (ix) extreme conduct; (x) criminal
purpose; (xi) victim's conduct; (xii) lesser harms; (xiii) coercion and duress; (xiv) diminished
capacity; (xv) public welfare; (xvi) voluntary disclosure of offense; (xvii) semiautomatic
firearms capable of accepting large capacity magazine; (xviii) violent street gangs; (xix) aberrant
behavior; (xx) dismissed and uncharged conduct; (xxi) specific offender characteristics as
grounds for downward departure in child crimes and sexual offenses; (xxii) discharged terms of
imprisonment; (xxiii) commission of offense while wearing or displaying unauthorized or
counterfeit insignia or uniform; and (xxiv) early disposition programs.

memory impairment contributed to the rape he committed; rather, he argues that his memory problems contributed to his lack of understanding during the trial proceedings, i.e., it caused him to make the disastrous decision to withdraw his plea agreement. See Jim's Supp. Motion at 2; Tr. at 38:20-22 (Samore). U.S.S.G. § 5K2.22 is inapplicable too, because that subsection does not include memory impairment as a reason for departure; instead, it specifies that: (i) "[a]ge may be a reason to depart downward only if and to the extent permitted by § 5H1.1"; (ii) "[a]n extraordinary physical impairment may be a reason to depart downward only if and to the extent permitted by § 5H1.4"; and (iii) "[d]rug, alcohol, or gambling dependence or abuse is not a reason to depart downward." U.S.S.G. § 5K2.22. Accordingly, because there are no § 5K subsections that "affirmatively and specifically identif[y]" memory impairment as a reason to downwardly depart, the Court concludes that it cannot properly depart under U.S.S.G. § 5K2.0(b). U.S.S.G. § 5K2.0(b) n.4(B)(i).

Before proceeding to U.S.S.G. § 5K2.0(c), the Court notes that Jim's downward departure argument finds its most hospitable home in U.S.S.G. § 5H1.3. See U.S.S.G. § 5H1.3 ("Mental and emotional conditions may be relevant in determining whether a departure is warranted."). A downward departure is warranted under that subsection when such mental or emotional conditions "individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. See Koon v. United States, 518 U.S. at 92 (stating that a departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline").

The Court concludes that Jim's memory problems do not take this case out of the heartland of cases such that a departure is warranted. While the Court concludes that a departure based on loss of memory is authorized under the Guidelines and the applicable case law, the Court also concludes that a departure is not warranted on those bases given this case's facts. The Court is having trouble squaring Jim's allegation of memory loss with his seemingly lucid conduct in hearings over the years. In any case, the Court chooses not to depart, because it does not believe departure is warranted under the facts and circumstances here. Unfortunately, the nation's federal prisons contain many inmates who have diminished capacity, and many have diminished capacity because of traumatic head injuries. See Center for Disease Control, Traumatic Brain Injury in Prisons and Jails: An Unrecognized Problem at 1, https://www. cdc.gov/traumaticbraininjury/pdf/Prisoner_TBI_Prof-a.pdf ("25-87% of inmates report having experienced a head injury or TBI as compared to 8.5% in a general population reporting a history of TBI."). The Court concludes that Jim's alleged memory loss does not distinguish his case from the heartland of cases that the Court and other federal courts regularly see, and so the Court will not downwardly depart under U.S.S.G. § 5H1.3 on that basis.

Jim also asserts that he has difficulty comprehending complex concepts. See Jim's Motion at 3. According to Jim, this difficulty stems from a variety of sources, including his traumatic head injuries, post-traumatic stress disorder, and poor education. See Jim's Motion at 1-4. The Court concludes that this difficulty does not warrant a departure based on this case's facts. Although suffering head injuries as a child, experiencing trauma, and receiving a poor education represent meaningful life challenges, they do not distinguish Jim from many other disadvantaged defendants before the Court and other federal courts. Likewise, Jim's apparent

difficulty comprehending complex concepts and related overreliance on authority figures, <u>see</u> Jim's Motion at 3, does not remove this case from the heartland of other cases before the Court and other federal courts.

U.S.S.G. § 5K2.0(c) permits Courts to depart from the Guideline range "based on the combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure." U.S.S.G. § 5K2.0(c). The Court concludes that there is no sound basis for departure even when considering Jim's alleged memory loss problems and challenges comprehending complex concepts. Section § 5K2.0(c) permits departure on multiple circumstances only if the multiple circumstances or offender characteristics "make the case an exceptional one," and each circumstance or characteristic "is present to a substantial degree." U.S.S.G. § 5K2.0(c)(1)-(2). The Court concludes that, even considered together, Jim's memory and cognitive deficiencies do not make his case an exceptional one, given that the Court often sees defendants with similar mental and cognitive challenges. Moreover, the case's facts do not suggest that either of these challenges are present to a substantial degree. For instance, although he has trouble comprehending language, he nonetheless scored roughly average on an IQ test, and the Court, in its previous interactions with Jim, has not sensed that he was not of sound mind. <u>See</u> Jim's Motion at 3. Although he has memory loss problems, they do not appear to substantially impair Jim's ability to function.

**IV.    THE COURT WILL NOT VARY JIM'S SENTENCE DOWNWARD.**

18 U.S.C. § 3553(a) "sets forth numerous factors that guide sentencing." <u>United States v. Booker</u>, 543 U.S. at 261. In that provision, Congress directs courts to impose sentences "sufficient, but not greater than necessary" to comply with four statutorily defined purposes

enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D). When performing that task, courts need to consider: (i) the Guidelines; (ii) the nature of the offense as well as the defendant's history and characteristics; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

The Court has considered these factors and concludes that a life sentence is reasonable, meaning sufficient, but not greater than necessary, to comply with the four purposes that 18 U.S.C. § 3553(a)(2) enumerates.

When the Court sentenced Jim in 2012, it concluded that the Guidelines had made an appropriate calculation and that the factors favored remaining within the Guideline's range. This time around, Jim has presented a few additional factors, but the Court, once again, concludes that the factors do not call for the Court to do a downward variance. The fourteen factors that the Court has identified as placing a downward pressure on Jim's sentence include the following. First, the Court always wants to work hard to impose a sentence that is not greater than necessary to promote the § 3353(a) factors. Second, while the task of the Court, as a district court, is not to come up with a reasonable sentence -- it is to arrive at a sentence that accurately reflects the

§ 3353(a) factors, see United States v. Conlan, 500 F.2d 1167, 1169 (10th Cir. 2007)("'A district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).'" (quoting United States v. Wilms, 495 F.3d 277, 280 (6th Cir. 2007))); United States v. Elliott, No. CR 09-0749 JB, 2010 WL 3086325, at *9 (D.N.M. July 16, 2010)(Browning, J.)("While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a) . . . ." (citing United States v. Martinez–Barragan, 545 F.3d 894, 904-05 (10th Cir. 2008))), the Courts' overall goal of trying to end up with a reasonable sentence also puts downward pressure on the sentence. Third, the Court can use -- and should use -- supervised release, not incarceration, to address some of Jim's problems, such as his struggles with alcohol. Fourth, the Court has discretion after United States v. Pepper, 562 U.S. 476, and United States v. Booker, 543 U.S. 220, to grant a downward variance on resentencing. Fifth, the sad procedure in this case -- where Jim withdrew his plea agreement while suffering under all these mental health problems -- puts downward pressure on the sentence. Sixth, while the Court has decided not to depart on U.S.S.G. § 5K2.0(b) & (c) grounds, the Court still recognizes that Jim is not the smartest defendant, does not have the best memory, and has difficulty communicating and dealing with non-Indians; these problems put downward pressure in the variance calculus, even if not to the level to justify a departure. Seventh, whether the Court imposes a 360-month sentence or a life sentence, any sentence that the Court is likely to impose will be severe. Eighth, when the Court compares any sentence in this case with the sentences that other New Mexicans receive after serious crimes, such as murder, the sentence here is likely to be greater than what the New

Mexico state courts give. Ninth, while the Court does not have any great disagreement with the way Jim's prior counsel handled matters, the guilty plea/colloquy and withdrawal of the plea puts downward pressure on the sentence. Tenth, while the Court concludes that Jim's comprehension problems are not great enough to justify a departure; his comprehension difficulties put downward pressure on the sentence. Eleventh, while the Tenth Circuit agreed with this Court that Jim entered the guilty plea knowingly and voluntarily, Jim might not have received notice from the Magistrate Judge about waiving his right to a jury trial. Twelfth, any sentence must promote respect for the law, and sentences that are too severe for the crime do not. Thirteenth, any sentence must provide a just sentence, and if the sentence is too long for the crime, the sentence will not be just. Fourteenth, the sentence must afford adequate deterrence, both at a specific and general level; both sentences being considered will probably satisfy this factor, thus putting downward pressure on any sentence.

Other factors -- and at least eight -- continue to counsel against issuing a downward variance. First, the seriousness of this crime -- the brutality -- is a factor that weighs heavily in favor of a life-time sentence. Second, following the crime, Jim made statements implicating himself. Third, Jim took the stand in a federal courthouse and lied. Fourth, the sentence must promote respect of the law, and the brutality and lying do not counsel for a variance. Fifth, the sentence must provide a just sentence and provide adequate deterrence, both at a specific and general level; given that Jim is now in denial, will not accept responsibility for his crime, and is willing to lie about what he did that night, he needs to be deterred, and men tempted to brutalize and rape women must be deterred, too. Sixth, the sentence needs to protect the public, both by incapacitating Jim, who will not accept responsibility, and by discouraging others from

committing similar crimes. Seventh, the Court should not create an unwarranted sentencing disparity among similar defendants who committed similar crimes; this factor counsels that the Court give him a Guideline range. Eighth, the Court must fashion a sentence that is sufficient to promote the § 3553(a) factors.

In many cases, the many downward factors would overrule the fewer factors that lead the Court to give a Guideline sentence. But all factors are not created equal. The Court concluded in 2012, when it first sentenced Jim, that a Guideline sentence was needed. The Court again concludes that a Guideline sentence is needed. The brutality of Jim's crime and his lying have not changed. He still should receive a Guideline sentence.

**IT IS ORDERED** that: (i) the request in Plaintiff's Addendum to United States' Sentencing Memorandum, filed September 8, 2016 (Doc. 205), is granted; and (ii) the requests in Defendant's Amendment to Sentencing Memorandum, filed March 10, 2017 (Doc. 222), are denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
   United States Attorney
Jack Burkhead
Joseph Michael Spindle
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

John F. Samore
Samore Law
Albuquerque, New Mexico

      *Attorney for the Defendant*